Michael R. Mills, ABA No. 8911074
Wendy E. Leukuma, ABA No. 0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501-5907
Telephone: (907) 276-4557
Facsimile:  (907) 276-4152

Attorneys for Manumitted Companies, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MANUMITTED COMPANIES, INC.<br><br>  Plaintiff,<br><br>vs.<br><br>TESORO ALASKA COMPANY,<br><br>  Defendant. | Case No. 3:05-cv-185-TMB<br><br>**MANUMITTED'S MOTION TO COMPEL** |

Manumitted Companies, Inc. ("Manumitted") moves to compel full and meaningful disclosure from Tesoro Alaska Company ("Tesoro") under Federal Civil Rules 26 and 37. Despite entry of a Protective Order drafted by Tesoro, Tesoro refuses to produce a number of relevant documents it deems "too confidential" or "too proprietary." In addition, Tesoro has made wide-sweeping assertions of attorney-client privilege that do not withstand even minimal scrutiny. While Manumitted has endeavored in good faith to resolve this discovery dispute without seeking Court action, it has become evident that Tesoro will not abide by its discovery obligations without this Court's intervention.[1]

---

[1] See Affidavit of Counsel in Support of Manumitted's Motion to Compel ("Aff. of Counsel"), filed herewith.

## I.     BACKGROUND FACTS

Until recently, Manumitted operated a Tesoro branded gas station in Valdez. Following Tesoro's assistance in upgrading Manumitted's sole competitor (also a branded Tesoro dealer) — Captain Joe's — and Manumitted's predictable demise, Manumitted filed this action against Tesoro for breach of contract, breach of the implied covenant of good faith and fair dealing, unfair trade practices, and price discrimination in violation of the Robinson-Patman Act, among other things. On Tesoro's motion, this action was subsequently removed to federal court.

In keeping with the pre-trial order, on September 14, 2005, the parties advised the Court that they had met and conferred under Rule 26(f), but that they needed additional time to submit a joint planning report as to discovery needs while awaiting an order permitting Tesoro to pursue its counterclaims from the bankruptcy court. [Docket No. 10-1] The next day, Manumitted served its first set of discovery requests on Tesoro. [Aff. of Counsel, ¶ 2.] All of these discovery requests related to Manumitted's claims for relief. [Id.]

The parties exchanged initial disclosures in January 2006. [See Exs. 1 & 2] In its disclosures, Tesoro claimed attorney-client privilege with respect to 36 of the 37 current and former Tesoro employees identified as "likely to have discoverable information" in support of its claims or defenses. F.R.Civ.P. 26(a)(1)(A); Ex. 2 at 2-6, 9, 10-11. In addition to its former "Senior Vice President" and "General Manager of Tesoro Alaska Company", Tesoro's assertion of attorney-client privilege included the "Vice President of Light Products", "Marketing Manager", "Manager of Economics", and "project engineer", as well as a handful of persons listed only as current or former "employees". [See id. at 5, 6, 11.]

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

At the same time, Tesoro provided Manumitted with a 14-page privilege log and a proposed protective order. [See Letter from F. Odsen to M. Mills, dated January 6, 2006, filed herewith as Ex. 3]  The privilege log contained numerous entries for documents that were widely disseminated throughout Tesoro (and beyond) on the basis of "attorney-client" and "work product" privilege. [Id. at 3-18.]  The log did not, however, provide any information regarding the basis for Tesoro's asserted privilege. [Id.]  The log also contained several entries where the entry in the "Privilege Claimed" column indicated that the material was withheld because it lacked relevance and was considered "proprietary information".  [See id. at 8 (Tesoro's Privilege Log at 4).]

With respect to the proposed protective order, Tesoro explained that its "main concern" was that "in the context of the litigation some materials may bear upon the rights and entitlements of third parties or contain potential propriety information that should not be disseminated." [Ex. 3 at 2.]  Tesoro indicated, however, that it was prepared to produce these documents subject to the terms of the protective order. [Id.]  Tesoro also advised Manumitted that, regardless of the protective order, it planned to redact any proprietary information not related to this lawsuit. [Id.]  At Manumitted's suggestion and with Tesoro's consent, the proposed protective order was amended to include protection for any confidential documents produced by non-parties. [See Letter from M. Mills to F. Odsen, dated January 10, 2006, filed herewith as Ex. 4.]

On January 23, 2006, the Court accepted on the parties' proposed protective order, which extended to any information designated as confidential "based on a good faith belief that the information consists of proprietary business information or customer-related information **not normally available to the public or to persons or entities outside the producing entity**." [Docket No. 15 (emphasis added)]  This language and

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

the restrictions contained in the protective order were intended to solve any concerns over confidential and proprietary materials.

In the meantime, Manumitted granted Tesoro several extensions of time to respond to its discovery requests. In an attempt to obtain documents relevant to its claims, Manumitted served a subpoena *duces tecum* on Gas, Inc., doing business as Captain Joe's. This subpoena was subsequently quashed following the Court's determination that the subpoena arguably reached some confidential, proprietary information not relevant to this action and that Manumitted should seek discovery from Tesoro before approaching third parties.[2] [Docket No. 21]

On March 28, 2006, two months after entry of the Protective Order, Tesoro supplemented its initial disclosures by producing a number of documents designated as "confidential" under the Protective Order. [Ex. 5.] At the same time, and despite its acknowledgement that the documents were "properly subject to the protective order", Tesoro refused to produce a number of documents within its custody, possession, and control based on the fact that the documents contained proprietary, confidential, and/or other internal financial information. [Id. at 2.] The identified documents seemingly fit squarely within the bounds and purposes of the protective order proposed by Tesoro, accepted by Manumitted and adopted by the Court.

---

[2] In its Order, the Court observed that:

> [S]everal of the items sought by Plaintiff may well be discoverable from Tesoro, a party to this case. Plaintiff has neither indicated that it has subpoenaed the documents from Tesoro directly, nor provided any explanation as to why a non-party should be required to provide the information at its own expense. No allowance has been made in the subpoena to reimburse the non-party for time and expenses incurred in accumulating the requested materials.

(continued)

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S MOTION TO COMPEL                    *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 4 of 15                                                                Case No. 3:05-cv-185-TMB

On April 5, 2005, Manumitted contacted Tesoro regarding its outstanding discovery requests and Tesoro's far-reaching assertion of attorney-client privilege as well as its refusal to produce documents it deemed "too proprietary". [Aff. of Counsel, ¶ 3.] Tesoro responded by explaining that it believed it was entitled to assert attorney-client privilege with respect to every correspondence to which an attorney was privy regardless of who otherwise might have been in the chain of communication. [Id., ¶ 4.] Tesoro also indicated that, despite the Protective Order, it had a right to withhold information regarding volume of gasoline sales and gasoline prices, as well as certain information relating to its relationship with Captain Joe's because such information was "proprietary" and not subject to disclosure for the same reasons employed by the Court when quashing the subpoena issued to Gas, Inc. [Id.]

Despite Tesoro's seemingly entrenched position, Manumitted made a good faith effort to obtain full and meaningful disclosure without Court action. In a follow-up letter on April 11, 2006, Manumitted formally requested full and meaningful disclosure under Rule 26(a)(1). [See Affidavit of Counsel, ¶ 5; Ex. 6.] In this letter, counsel for Manumitted explained in detail the problems with Tesoro's assertions of privilege and warned that if full and meaningful disclosure was not received by April 19, 2006, Manumitted would have no choice but to file a motion to compel. [Ex. 6 at 5.]

Tesoro responded to this letter by formally responding to Manumitted's outstanding discovery requests, served September 15, 2005. [Affidavit of Counsel, ¶ 6.] The cover letter accompanying the discovery responses did not, however, address any of the other concerns raised by Manumitted. [Id.] In a follow-up phone conversation,

---

(continued)
[Docket No. 21 at 2.]

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S MOTION TO COMPEL    MANUMITTED COMPANIES v. TESORO ALASKA CO.
Page 5 of 15                     Case No. 3:05-cv-185-TMB

Tesoro's counsel indicated that he had been focusing on responding to Manumitted's discovery requests and would get back to Manumitted on the remaining issues. [Id. ¶ 7.] When pressed, he agreed that the parties had substantial differences that would need to be addressed by the Court. [Id.] In particular, Tesoro was not willing to produce any of the "proprietary" or "attorney-client" privileged documents previously withheld. [Id.] Tesoro has yet to provide any additional response to Manumitted's April 11, 2006 letter. [Id. ¶ 8.]

## II.   APPLICABLE LAW OF PRIVILEGE

Tesoro removed this action from state court on diversity grounds and because the action raised claims related to Manumitted's bankruptcy proceeding. [Docket No. 1-1.] Under these circumstances, the Court is required to apply state law to determine the validity of any asserted claim of privilege. See Star Editorial, Inc. v. United States Dist. Court for the Central Dist. of California, 7 F.3d 856, 859 (9th Cir. 1993) (applying state privilege law where action was removed from state court on diversity grounds); California Public Util. Comm'n v. Westinghouse Elec. Corp., 892 F.2d 778, 781 (9th Cir. 1989) (same).

## III.  ANALYSIS

Rule 26(a)(1)(B) of the Federal Rules of Civil Procedure requires Tesoro to disclose all documents, data compilations, and tangible things that it may use to support its claims or defenses. Manumitted therefore assumes that all documents identified in Tesoro's initial and supplemental disclosures, as well as its accompanying privilege log, go directly to the heart of the matters in dispute and might very well be used by Tesoro to support its case. Despite this, Tesoro has refused to produce a staggering number of

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S MOTION TO COMPEL         MANUMITTED COMPANIES v. TESORO ALASKA CO.
Page 6 of 15                                                   Case No. 3:05-cv-185-TMB

documents asserting that the documents are attorney-client privileged, contain work product,[3] and are "too proprietary" to disclose despite the carefully tailored Protective Order already in place. While Manumitted understands Tesoro's reluctance to divulge information "prejudicial" to its defense, it cannot do so by cloaking every internal communication copied or conveyed to in-house counsel as attorney-client privileged or work product. Nor can it avoid disclosure by unilaterally designating certain "proprietary" information as beyond the scope of the protective order. Each of these issues will be addressed in turn.

### A.   Overbroad Assertion of Attorney-Client Privilege

In Alaska, the attorney-client privilege extends only to confidential communications between members of a corporation's control group and its attorney. See Alaska R. Evid. 503; Langdon v. Champion, 752 P.2d 999, 1002 (Alaska 1988) (explaining that the "control group" test governs the assertion of attorney-client privilege in Alaska). By definition, members of a corporation's "control group" are limited to those individuals who have "authority to obtain professional legal services and to act on advice rendered pursuant thereto, on behalf of the [corporation]." Alaska R. Evid. 503(a)(2). Accordingly, the attorney-client privilege does not extend to a corporate employee simply because the employee is in a management position or because the

---

[3] With the exception of one document, literally every document withheld on the basis of attorney-client privilege has also been withheld on the basis of work product. To ensure that both parties were working within the same definitional framework, Manumitted requested that Tesoro affirm that it was only asserting the work product rule with respect to (1) documents and things, (2) prepared in anticipation of litigation or for trial, (3) by or for Tesoro or its counsel. [Ex. 6 at 3, citing Wright, Miller, and Marcus, FEDERAL PRACTICE AND PROCEDURE, § 2024, at p. 336.] Tesoro has yet to respond to Manumitted's request for clarification.

DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S MOTION TO COMPEL         *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 7 of 15                                      Case No. 3:05-cv-185-TMB

employee relays information to corporate counsel.  See National Tank Co. v. Brotherton, 851 S.W.2d 193 (Tex. 1993) (explaining that under "control group" test only statements by upper echelon of corporate management are protected); see also City of Philadelphia v. Westinghouse Electric Corp., 210 F. Supp. 483, 485 (E.D. Pa. 1962) (distinguishing work product doctrine from attorney-client privilege).

Application of Alaska's "control group" test demonstrates that Tesoro's assertion of attorney-client privilege is overbroad.  First, Tesoro has asserted attorney-client privilege with respect to 36 of the 37 current and former Tesoro employees identified in its initial disclosures.  Although several of these employees may very well be in the "upper echelon" of Tesoro's corporate management, most do not appear to fall within the ambits of Alaska's "control group" test and, in fact, many of these employees clearly do not.  For example, Stan Baltzo is listed as a former marketing representative, Jeff Evans as "Marketing Manager", Bill Hamilton as a project engineer, and Rob Donovan, Wade Rogers, Raymond Measels, Ron Maybruck, Terry Houtchens, Terry Kruger, Steven Goff, and Cindy Hughes are simply listed as "employees".  [Ex. 2 at 5, 6, 10.]

Second, review of Tesoro's privilege log reveals that Tesoro has either redacted or withheld a number of documents that were either authored by a non-control group member or distributed beyond Tesoro's "control group", thereby destroying the confidential nature of the communication.  [See, e.g., Ex. 3 at 6, 7.]

Finally, it appears as though Tesoro's assertion of attorney-client privilege extends far beyond those communications that are truly privileged.  Tesoro previously represented that it believed it was entitled to assert attorney-client privilege with respect to all emails and communications copied to counsel.  [Aff. of Counsel, ¶ 4.]  However, not all communications are protected by the attorney-client privilege, however, just because counsel was included.  Such an exception could be easily manipulated.  Rather,

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

to be protected, the communication must "specifically be made for the purpose of obtaining legal services" for the corporation. See Alaska R. Evid. 503, cmt. b, ¶ 3. In other words, a corporation cannot cloak every communication as attorney-client privileged by simply having a standing policy of cross-copying an attorney with all emails. See United States Postal Svc. v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994) (explaining that "the mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean the communication is necessarily privileged"); International Tel. and Tel. Corp. v. United Tel. Co., 60 F.R.D. 177, 184-85 (M.D. Fla. 1973) (noting potential for abuse in asserting privilege with respect to in-house counsel and holding that mere attendance of attorney at a meeting, even when held at his insistence, did not render everything said or done at meeting privileged).

Manumitted addressed each of these concerns in its April 11, 2006 letter, requesting that Tesoro identify the members of its control group, withdraw its assertion of privilege in certain circumstances, and amend its privilege log to provide sufficient information to evaluate the validity of any remaining assertions of privilege. [Ex. 6 at 2-3.] Despite this, Tesoro has taken no action and made no effort to respond to Manumitted's requests.

### B.     Assertion of Non-Existent "Proprietary" Privilege

Relying in part on the rationale employed by this Court in quashing the subpoena issued to Gas, Inc., Tesoro has also withheld a number of documents on the grounds that

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S MOTION TO COMPEL             MANUMITTED COMPANIES v. TESORO ALASKA CO.
Page 9 of 15                                                                Case No. 3:05-cv-185-TMB

such documents contain confidential, proprietary, or internal financial information.[4]  In particular, Tesoro has withheld the following documents, notwithstanding the Protective Order already in place:

> (a)     TAC-102974 – TAC-102979 pertaining to Tesoro's Authorization for Expenditure dated December 19, 2002 with reference to the Captain Joe's reimaging project on the grounds that it contains confidential and proprietary and other internal financial information.
>
> (b)     TAC-102947, Invoice No. SO-J505-2Q04-RBT issued to Service Oil and Gas, Inc. on the ground that it contains proprietary information including the volume of product sold by Service Oil & Gas, Inc. to Captain Joe's.
>
> (c)     TAC-102991 – 103011 which include a set of invoices to Service Oil and Gas, Inc. and summaries of the volume of product sold by Service Oil and Gas, Inc. to Captain Joe's, on the ground that such information is proprietary.

[Ex. 5, at 2.]  According to Tesoro, this information is so "confidential" or "proprietary" that Tesoro is entitled to unilaterally withhold the information because the current Protective Order is insufficient to adequately protect Tesoro's interests.

Tesoro has absolutely no basis for withholding such information.  Neither Alaska nor federal law recognizes any such privilege.  See Alaska R. Evid. 503-508 (summarizing recognized privileges); Wright, Miller, and Marcus, FEDERAL PRACTICE AND PROCEDURE, § 2020, at pp. 312-313 (outlining traditional privileges recognized by federal courts); see also Gabianelli v. Azar, 777 P.2d 1167, 1169 (Alaska 1989) (explaining that Alaska does not recognize an accountant-client privilege and that a party is entitled to discover any relevant unprivileged matter).

---

[4] Tesoro's privilege log also asserts that some of the documents contain information that is both irrelevant and proprietary.  [See, e.g., Ex. 3 at 7.]  Tesoro has not explained how documents directly addressing Captain Joe's expansion or the financing arrangement with
(continued)

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S MOTION TO COMPEL                    MANUMITTED COMPANIES v. TESORO ALASKA CO.
Page 10 of 15                                                                       Case No. 3:05-cv-185-TMB

Moreover, the information Tesoro seeks to "protect" is information that goes directly to the matters in dispute in this case. Among other things, Manumitted has alleged that Tesoro engaged in price discrimination in violation of the Robinson-Patman Act. Tesoro's initial disclosures indicate that Tesoro supported Captain Joe's expansion by working hand in hand with Service Oil and Gas, Inc. ("SOG") to help finance the deal. [See, e.g., Ex. 7.] Internal Tesoro emails confirm that Tesoro provided Captain Joe's with materials needed for its expansion and then invoiced those amounts to SOG. [See Ex. 8 at TAC-102954 to TAC-102959; see also Ex. 9 at TAC-102948 (identifying Invoice No. SO-J505-1Q03-RBT, also not produced, as a "Rebate for Captain Joe's").] As part of the deal, Tesoro agreed to provide SOG with a per gallon "rebate" based specifically on the volume of gas sold by Captain Joe's. [Ex. 7 at TAC-102916.] This rebate was subject to being lost if Captain Joe's stopped selling Tesoro product within 10 years. [Id. at TAC-102916, TAC-102918.] Tesoro now refuses to produce the underlying invoices or any information related to the volume of gas sold because such information is "proprietary".

Tesoro's attempt to invoke the Court's rationale used in connection with the Gas, Inc. motion to quash cannot serve as a basis for Tesoro to withhold relevant information that goes to the heart of Manumitted's case. First, this Court based its ruling regarding the motion to quash, in part, by requiring Manumitted to first seek discovery of relevant documents from Tesoro. Manumitted is attempting to do so but is being thwarted by Tesoro. Second, the protections included in the Protective Order were specifically

---

(continued)
SOG could have any information unrelated to this suit and Manumitted cannot fathom any plausible explanation.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

tailored to address the confidentiality and proprietary concerns Tesoro now seeks to use to justify withholding disclosure of documents relevant to Manumitted's case.  Finally, Tesoro cannot argue that turnover of any of this documentation to Manumitted provides the basis for any competitive threat (either to Tesoro, SOG, or Gas, Inc.) since (a)  is in Chapter 11 with minimal funds, (b) there is no evidence that the information Tesoro seeks to protect (sales price and volume) would give Manumitted any sort of competitive edge, and (c) the terms of the Protective Order prevent Manumitted from using or disclosing any information it receives.  It is clear from information transmitted from Manumitted to Tesoro back in 1994, that information relating to sales volumes is not so confidential or competitively sensitive that its disclosure would enable Manumitted to gain any advantage in the local Valdez Market.[5]  [See Ex. 1 to Affidavit of Benjamin H. Olds in Support of Motion to Compel ("Olds Aff."), filed herewith, at M 000333 to M000336.]  Thus Manumitted is entitled to receive from Tesoro all documents that relate in any manner to the allegations that have been made by Manumitted.  Otherwise, Tesoro has effectively stonewalled Manumitted's ability to develop its case, which is contrary to the liberal discovery rules included in the Federal Rules of Civil Procedure.

---

[5] Manumitted transmitted identical volume information to Tesoro in 1996 to encourage Tesoro to acquire the station known as Newtown Chevron and then lease it back to Manumitted in conjunction with closing the Valdez Tesoro, then owned by Manumitted. Manumitted's proposal was ultimately accepted by Tesoro, resulting in the elimination of one of three downtown stations, leaving only Manumitted and Captain Joe's.  Now, there is only one station — Captain Joe's.  Since Valdez has not undergone any major expansion or economic changes, there is no indication that the total volume in downtown sales has changed much since 1994.  How information relating to Captain Joe's sales volumes can be so "confidential" or "proprietary" as to give Manumitted a competitive advantage is unknown.  See Olds Aff. ¶¶ 2-5, filed herewith.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

Given the presence of a Protective Order specifically drafted by Tesoro, Tesoro's conduct calls for the imposition of sanctions. As explained by one court, in a patent infringement action involving "highly sensitive competitive information," "[Tesoro] is, of course, free to designate this information as confidential and restrict access under the Protective Order governing this litigation. [Tesoro] may not, however, withhold these documents under a claim of privilege merely because they are confidential business documents." Fresenius Medical Care Holding, Inc. v. Baxter Int'l, Inc., 224 F.R.D. 644, 654 n.3 (N.D. Cal. 2004) (compelling disclosure where documents were withheld, among other reasons, because they contained "highly sensitive competitive information").

To the extent Tesoro believes the current protective order is insufficient, its remedy lies in proposing additional protective measures to Manumitted and then, if the parties disagree, seeking further protection from the Court — not in unilaterally withholding such information. See Fed. R. Civ. P. 26(c); Fresenius, 224 F.R.D. at 654 n.3. Tesoro's refusal to produce such information based on its fear that Manumitted will violate the protective order represents an attempt to circumvent the civil rules governing discovery. Manumitted is entitled to full and meaningful disclosure. Hence, the basis for the Protective Order. Tesoro has a multitude of remedies available in the unlikely event the Protective Order is violated. Tesoro cannot, however, refuse to produce information that bears directly on the matters in dispute. Federal law prohibits price discrimination. When accepted at face value, Tesoro's claim of "proprietary privilege" would effectively prevent Manumitted — and any other plaintiff pursuing a Robinson-Patman claim — from pursuing discovery in support of its claim. This Court must therefore compel Tesoro to produce the documents identified as TAC-102974 – TAC-102979; TAC-102947; and TAC-102991 – 103011, as well as all other documents withheld on the basis of a non-existent "proprietary privilege."

MANUMITTED'S MOTION TO COMPEL   MANUMITTED COMPANIES v. TESORO ALASKA CO.
Page 13 of 15   Case No. 3:05-cv-185-TMB

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

### C. Inadequate Privilege Log

As alluded to above, Tesoro's privilege log is so vague that it provides no real basis for assessing the validity of Tesoro's claims of privilege. [See Ex. 3] At a minimum, Tesoro's privilege log should include: (1) the subject-matter(s) of the redacted material or withheld document, (2) all persons or entities known by Tesoro to have been furnished the document or informed of its substance, and (3) a detailed, specific explanation of why the document is privileged or immune from discovery. See Harper v. Auto-Owners Ins. Co., 138 F.R.D. 655, 664 (D.C. Ind. 1991). Without this information, neither Manumitted or the Court is in a position to determine the validity of the asserted privilege or whether an *in camera* review is merited.

### IV. REQUEST FOR RELIEF

Based on the foregoing, Manumitted respectfully requests entry of an order compelling Tesoro to, within 10 days of entry of the order,

(1) amend its initial disclosures to withdraw its assertion of attorney-client privilege with respect to all current and former employees that do not meet Alaska's "control group" test;

(2) withdraw its assertion of attorney-client privilege and produce all redacted or withheld documents that were either (a) authored by a non-control group member, or (b) distributed to a non-control group member;

(3) produce all documents withheld or redacted simply because the communication was made, distributed, or copied to counsel;

(4) amend its privilege log to include (a) the subject-matter(s) of the redacted material or withheld document, (b) all persons or entities known by Tesoro to have been furnished the document or informed of its substance, and (c) a detailed, specific explanation of why the document is privileged or immune from discovery; and

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S MOTION TO COMPEL        *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 14 of 15                                          Case No. 3:05-cv-185-TMB

(5) produce all documents withheld because they contain proprietary, confidential, or internal financial information, including document nos. TAC-102974 – TAC-102979; TAC-102947; and TAC-102991 – TAC-103011.

Manumitted also respectfully requests that this Court award Manumitted its reasonable expenses incurred in making this motion, including reasonable attorney's fees, pursuant to Federal Civil Rule 37(a)(4).

DATED this 2nd day of May, 2006, at Anchorage, Alaska.

>DORSEY & WHITNEY LLP
>Attorneys for Manumitted Companies, Inc.
>
>By: s/Wendy E. Leukuma
>    Michael R. Mills, ABA No. 8911074
>    Wendy E. Leukuma, ABA No. 0211048
>    DORSEY & WHITNEY LLP
>    1031 West 4th Avenue, Suite 600
>    Anchorage, Alaska 99501
>    Phone: 907-276-4557
>    Fax: 907-276-4152
>    Email: mills.mike@dorsey.com
>    Email: leukuma.wendy@dorsey.com

CERTIFICATE OF SERVICE

This certifies that on this 2nd day of May, 2006,
a copy of the foregoing was served on the
following electronically, with the exception of Exhibits 7
through 9, which were served by first-class mail:

Frederick J. Odsen
Hughes Bauman Pfiffner Gorski & Seedorf, LLC
3900 C Street, Suite 1001
Anchorage, Alaska  99503

        s/Wendy Leukuma

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MANUMITTED'S MOTION TO COMPEL         *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 15 of 15                                              Case No. 3:05-cv-185-TMB
4845-0377-9328\4\476962\00001