## TESORO INTERNAL E-MAILS RELATIVE TO THE NEGOTIATION AND PREPARATION OF THE SERVICE OIL & GAS, INC. DISTRIBUTOR ASSISTANCE AGREEMENT ARE PRIVILEGED

Certain e-mails in the privilege log pertain to the Distributor Assistance Agreement dated January 1, 2003 between Tesoro and Service Oil & Gas, Inc.  The signed agreement has been produced to Manumitted, TAC-102915 – TAC-102925. Manumitted seeks to compel production of e-mails between Tesoro's in house counsel, principally Mr. Scott Rammell, and the Tesoro business executives involved in the transaction.  Those communications include principally 102961-102962, 102963,102964, 102967,    102972-102973,    102980,102083-102987,102988,    103019-103024,103026, 103040-103041.  The e-mails pertain to the terms and drafting of the Agreement by the in house lawyers. The communications are between Mr. Rammell and his office, former in house Anchorage counsel Mr. Noel, and managers or executives including Mr. Jeff Evans, the Area Marketing Manager of Light Products, responsible for marketing activities in Alaska, Mr. Don Sorensen at that time the Vice President for Marketing and Light Products, Don Groscost the Vice President – Light Products responsible for supervising the wholesale marketing and sale of light petroleum products in the Pacific Northwest States, including Alaska, and Donald Reese, the General Manager, Marketing Services.  These communications are protected under the attorney-client privilege as communications between representatives of Tesoro and in-house counsel.  Although the agreement itself is not protected (and has been produced), the communications between

in-house counsel and the client including comments, opinions and deal points are protected. Also included in some of the e-mails were Kathy Slaton and Annette O'Neil who provided administrative support to Mr. Rammell as the former Branded Jobber/Dealer Services Coordinator and Contracts Specialist, respectively. See Affidavit of Donald Reese. Support activities for in-house counsel are no different than support activities for a law office including secretarial support or paralegal services. See American National Watermattress Corporation v. Manville, 642 P.2d 1330, 1334 (Alaska 1982).

Manumitted is essentially seeking to compel the production of documentation and attorney work product with regard to an agreement prepared by in house counsel. Such documentation and work product is subject to the attorney client or work product privileges when prepared by in house counsel just as if it had been prepared by outside counsel. The information pertaining to the internal preparation of the pertinent agreement by in house legal staff is not properly discoverable.

## TESORO PROPERLY WITHHELD OR REDACTED MATERIALS THAT CONTAINED INFORMATION ABOUT THIRD PARTIES OR CUSTOMERS THAT IS NOT RELEVANT TO THE MANUMITTED LITIGATION

Some of the documentation produced by Tesoro included information about other parties or customers that is not relevant to Manumitted. For example, 102773-102776 included a report of automatic clearing house payments returned for lack of sufficient funds which included Manumitted, but also other customers. 100030-100047

included a Dunn and Bradstreet report pertaining to Harbor Fuel Co., Inc., Manumitted's predecessor, which is dated. Tesoro would, however, be willing to produce it. The document also contains, however, financial information about former guarantors of Manumitted debt who were released at the time of the 1999 restructure. That information is dated, but rather personal information and is not of relevance. 102779 pertains to information Tesoro received regarding efforts by Petro Star to convince other Tesoro dealers to debrand and become Petro Star dealers.

As noted above, of course, Tesoro is prepared to immediately submit any or all of the contested documents to the court for *in camera* review.

## TESORO'S REFUSAL TO PRODUCE
## PROPRIETY INFORMATION IS JUSTIFIED

Manumitted is incorrect in asserting that Tesoro lacks the right to withhold proprietary and commercially sensitive information in the circumstances of this case. The dispute revolves around Manumitted's desire to obtain information from Tesoro about the price charged to Gas, Inc., d/b/a Captain Joe's for Tesoro petroleum products and the volume of such products sold to Captain Joe's. Captain Joe's is a Tesoro branded dealer that operates under the auspices of Service Oil & Gas, Inc., a Tesoro branded distributor. See Affidavit of Don Groscost. As such, Tesoro does not sell products directly to Captain Joe's. Tesoro does not have information as to the prices charged by Service Oil & Gas, inc. to Captain Joe's. See Affidavit of Mr.Groscost. Tesoro has not

withheld such pricing information.  It does not have it.  Tesoro does, however, have some information from Service Oil & Gas, Inc. as to physical volumes of petroleum products sold by Service Oil & Gas, Inc. to Captain Joe's.  <u>See</u> Affidavit of Mr. Groscost.  This is so because of a Distributor Equipment Assistance Agreement dated January 1, 2003 between Tesoro and Service Oil & Gas, Inc. as distributor.  Captain Joe's is a dealer of Service Oil & Gas, Inc. who operates under a Distributor Agreement between Tesoro and Service Oil & Gas, Inc.  Captain Joe's is not a party to the Distributor Equipment Assistance Agreement.  Captain Joe's, an existing Tesoro dealer, decided in the 2002 time frame to upgrade its facilities.  Tesoro did not provide financial or other assistance with regard to that undertaking.  Under the Distributor Equipment Assistance Agreement, Tesoro agreed to assist its distributor, Service Oil & Gas, Inc. (based principally in Glennallen) in procuring signage and trade dress for use by Captain Joe's as a dealer authorized under the auspices of Service Oil & Gas, Inc. to sell Tesoro branded products. Under the Distributor Equipment Assistance Agreement, Tesoro agreed to make distributor equipment assistance payments to Service Oil & Gas, Inc. in an aggregate amount of $54,724.  As such the aggregate amount of such distributor equipment assistance payment is capped.  The distributor equipment assistance payments are made over time, not in a lump sum advance.  The payments are made quarterly in the form of rebates to Service Oil & Gas, Inc. tied to the amount of petroleum products sold by Service Oil & Gas, Inc. to its dealer Captain Joe's.  The rebate is based upon one and one

half cents per gallon of eligible product sales.  The maximum annual aggregate amount of such distributor assistance payment is $13,681.  Tesoro does get information from Service Oil & Gas, Inc. relative to the physical volume of such sales by Service Oil & Gas, Inc. to Captain Joe's so it can calculate the rebate.[1]

  Tesoro has withheld the documentation it has relating to such product sales volumes.  That documentation includes credit memos based on such volumes that give rise to rebates under the Distributor Equipment Assistance Agreement.  TAC-102947 - TAC-103011.  Tesoro has also withheld the Authorization for Expenditure dated December 19, 2002 and supporting documentation pertaining to the Distributor Equipment Assistance Agreement for two reasons founded upon proprietary information. See Affidavit of Don Groscost.  First, the supporting documentation contains information about projected average volumes of product sold by Gas, Inc. d/b/a Captain Joe's during the period of the Distributor Equipment Assistance Agreement.  Second, the supporting documentation contains propriety margin data relative to the cost incurred by Tesoro to produce and sell its products, the disclosure of which could be used by a competitor to Tesoro's disadvantage.  See Affidavit of Don Groscost.  Specifically, that documentation

---

[1] Manumitted argues that because it has brought an action against Tesoro for alleged price discrimination (the validity of which Tesoro denies), Manumitted is entitled to information about prices paid by Captain Joe's and volumes of product purchased.  As noted above, Tesoro does not have such pricing data.  Pricing data wasn't even requested in Manumitted's first discovery requests in any event**.**  Manumitted certainly does not have the right to compel the production of pricing date it did not seek and which Tesoro does not have.

contains information about marketing margins, with regard to gasoline and diesel sales. The marketing margin is the difference between the internal transfer price of product from Tesoro's refinery and Tesoro's wholesale price of product supplied to its customers. A competitor could use such data for purposes of setting its prices so as to better compete with Tesoro. The marketing margin data is not relevant to Manumitted's case.

**NOTWITHSTANDING THE EXISTENCE OF THE
PROTECTII ORDER, THE PRODUCT SALES
<u>VOLUME AND MARGIN DATA MUST NOT BE DISCLOSED</u>**

As noted above at page 7, Tesoro did not by virtue of propounding the Protective Order waive all objections to the production of trade secrets, proprietary or sensitive information. Further, as observed in the Order Re: Motion to Quash, the existing Protective Order does not fully protect Captain Joe's from the risk that Manumitted might reopen the station or sell it to a competitor, and the information could one way or another make its way into the hands of a competitor of either Captain Joe's or Tesoro. This is not a situation were a protective order can be crafted to limit information to a select few in Manumitted's organization, since the Plaintiff is an entity solely owned by Mr. Olds, its principal. Hence whatever is produced he will know. As this court observed with regard to Captain Joe's motion to quash, Manumitted could use or disclose the information to the benefit of a competitor including a possible purchaser of the station. The disclosure could be intentional or inadvertent. In <u>Fresnius Medical Care Holding, Inc. v. Baxter International, Inc.</u>, 224 F.R.D. 644 (N.D. Cal. 2004) cited by

Manumitted, the parties both appeared to be large enterprises with various divisions operating in multiple locations.  A carefully crafted protective order could work in that setting.  That is not the case here.  Manumitted as a corporation cannot receive the information in such a fashion that it would remain protected.  Tesoro's reluctance to disclose sensitive information to Manumitted is also highly understandable given Manumitted's material breaches of its Dealer Agreement  with Tesoro, and product adulteration as described in the November 13, 2004 letter, attached as Exhibit A. Manumitted's ability to stand accountable for damages flowing from a breach of confidentiality is also questionable given its Chapter 11 proceeding and credit history. The concept is similar to the adage that once a bell has been rung it can't be unrung.  In such circumstances, it is appropriate that Tesoro not be compelled to disclose such documentation or information.[2]

---

[2] Tesoro finds itself between the horns of a dilemma in the sense that by producing the information it would on the one hand be clearly going against the wishes and expectations of a Tesoro branded dealer operating under its distributor, Service Oil & Gas, Inc., which have been found justifiable and legitimate by the court; while on the other hand, Tesoro is facing Manumitted's motion to compel the disclosure of the same information.  In addition it is being asked to produce documents involving sensitive business information that is kept confidential as a matter of Tesoro policy.  Some of that information pertains solely or principally to Tesoro's business interests, and some pertains to third parties like Service Oil & Gas, Inc. and Captain Joe's, as well as others.

## Conclusion

For the foregoing reasons, Tesoro respectfully requests that the court deny Manumitted's motion to compel.  The sum total of the documents that are subject to the Motion to Compel amounts to a stack of paper (mainly e-mail printouts) less than two (2) inches thick.  Tesoro is strongly of the view that they are protected by the attorney-client or work product privileges, or otherwise not required to be disclosed based on the proprietary information therein contained.

As noted above, of course, Tesoro is prepared to immediately submit all of the documentation to the Court for its *in camera* review.

DATED this 2nd day of June, 2006.

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
Attorney for Defendant,
Tesoro Alaska Company


By:    s/ Frederick J. Odsen
        Frederick J. Odsen
        ABA No. 7906043
        3900 C Street, Suite 1001
        Anchorage, AK  99503
        Telephone Number:  (907) 274-7522
        Facsimile Number:  (907) 263-8320
        Email:  FJO@hbplaw.net

246844.2

I hereby certify that a true
and correct copy of the fore-
going was served via the court's
ECF system on the 2nd day of
June, 2006 to:

Michael R. Mills
Wendy E. Leukuma
Dorsey & Whitney LLP
1031 W. 4th Avenue, Suite 600
Anchorage, AK  99501


    s/ Frederick J. Odsen
_____

**EXHIBITS**

Exhibit A          Notice of Breach of Contract Dealer Agreement to Manumitted dated November 13, 2003

Exhibit B          Letter from Frederick J. Odsen to Michael R. Mills dated October 14, 2005

Exhibit C          Initial Objections and Responses to Plaintiff's First Discovery Requests propounded to Defendant dated October 14, 2005

Exhibit D          Manumitted's initial disclosures dated January 6, 2006

Exhibit E          Manumitted's supplement to disclosures dated April 28, 2006

Exhibit F          Letter from Frederick J. Odsen to Michael R. Mills dated May 5, 2006

Exhibit G          Letter from Frederick J. Odsen to Michael R. Mills dated January 6, 2006

Exhibit H          Amended Privilege Log