Michael R. Mills, ABA No. 8911074
Wendy E. Leukuma, ABA No. 0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501-5907
Telephone: (907) 276-4557
Facsimile:  (907) 276-4152

Attorneys for Manumitted Companies, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MANUMITTED COMPANIES, INC.<br><br>Plaintiff,<br><br>vs.<br><br>TESORO ALASKA COMPANY,<br><br>Defendant. | Case No. 3:05-cv-185-TMB<br><br>**MANUMITTED'S SECOND<br>MOTION TO COMPEL** |

## I.   INTRODUCTION

Pursuant to Federal Civil Rules 26(b)(1), 34, and 37, Manumitted Companies, Inc. ("Manumitted") moves to compel production of all "proprietary" documents responsive to Manumitted's First Discovery Requests to Tesoro. Although these documents are also the subject of Manumitted's pending motion to compel full and meaningful disclosure from Tesoro Alaska Company ("Tesoro"), filed May 2, 2006, Tesoro has now identified these documents as responsive to specific discovery requests, triggering an even more expansive production obligation under the discovery rules.[1] Despite the broader

---

[1] As explained in Manumitted's first Motion to Compel, notwithstanding this expansion, Tesoro is already obliged to turn over the "proprietary" documents identified in its initial and supplemental disclosures. [See Manumitted's Motion to Compel at 6-7, 9-14, Docket No. 23 (noting Tesoro's obligation under Rule 26(a)(1)(B) to disclose and make available for inspection and copying all documents identified in its initial disclosures or,
(continued)

obligation set forth under Rule 26(b)(1), Tesoro continues to maintain that the documents are not discoverable.[2] Because these documents unquestionably contain information highly relevant to Manumitted's price discrimination, unfair trade practice, and implied covenant claims, as well as Tesoro's affirmative defenses and reserved counterclaims, Manumitted again has no choice but to seek this Court's intervention. Informal attempts to resolve this seemingly straightforward discovery issue have failed; Tesoro continues to stonewall. Therefore, Manumitted now asks this Court to compel discovery and sanction Tesoro for forcing Manumitted to move for valid discovery…yet again.

## II.     BACKGROUND

As this Court is becoming increasingly aware, discovery in this case has progressed on an extremely slow and litigious basis. Manumitted's efforts to obtain discovery from a non-party, Gas, Inc., were halted following entry of an order unexpectedly quashing Manumitted's subpoena in January 2006, and directing Manumitted to first seek discovery from Tesoro. While Manumitted had already served its first discovery requests on Tesoro in September 2005, per the parties' agreement, Tesoro's 30-day deadline for responding was not triggered until the parties exchanged initial disclosures on January 6, 2006. [Ex. 1 at 1 (letter from F. Odsen to M. Mills, dated October 14, 2005).] This exchange ultimately resulted in Manumitted's first Motion to Compel, filed in May 2006, based on Tesoro's Rule 26 "disclosure" of a staggering

---

(continued)
alternatively, seek protection from the Court under Rule 26(c)); Manumitted's Reply to Tesoro's Opposition to Motion to Compel at 2-7, Docket No. 43 (same).]

[2] As evidenced by the Affidavit of Counsel filed herewith, Manumitted has made a good faith effort to resolve this discovery dispute without court action. See Affidavit of Counsel in Support of Manumitted's Second Motion to Compel, ¶¶ 1-9.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

number of documents it refused to produce on the basis of its asserted attorney-client, work product, and proprietary "privileges."

In the meantime, despite having had Manumitted's discovery requests since September 2006, Tesoro requested and obtained several extensions of time for responding. [Aff. of Counsel, ¶ 3.] Even then, Tesoro failed to respond in a timely manner, responding only after Manumitted advised Tesoro that it would file a motion to compel if it did not receive Tesoro's responses by April 19, 2006. [See id.; Ex. 2 at 4-5 (letter from M. Mills to F. Odsen, dated April 11, 2006); Ex. 3 at 17 (Responses to Plaintiff's First Discovery Requests Propounded to Defendant (Non-Environmental Related Requests), dated April 19, 2006).]

Tesoro's responses, served by mail on April 19, 2006, were, for the most part, evasive and wholly incomplete. For example, in many instances, rather than respond to Manumitted's requests for production by identifying previously produced documents, Tesoro simply referred Manumitted to its "initial disclosures." [See Ex. 3 at 2, 3, 4 (Tesoro's Responses to Request for Production Nos. 1, 2, 5, 6, 7).] In addition, Tesoro responded to Request for Production Nos. 2 and 5 by refusing to produce "documents or information in its files, if any,[3] that pertain to the volumes of Tesoro petroleum products sold to Captain Joe's" on the grounds that such information was "proprietary" and therefore not discoverable per the rationale employed by the Court's order quashing the subpoena issued to Gas, Inc. [See id. at 3; Ex. 4 at 1 (letter from F. Odsen to W. Leukuma, dated July 12, 2006, at 1.] Other than its objection to any implication that

---

[3] In an affidavit filed in support of Tesoro's Opposition to Motion to Compel, Tesoro acknowledged that it does possess documentation pertaining to the volumes of Tesoro petroleum products sold to Captain Joe's. [See Affidavit of Don Groscost, dated June 14, ¶¶ 3-6, Docket No. 49-2.]

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S SECOND MOTION TO COMPEL   *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 3 of 17                                                                                      Case No. 3:05-cv-185-TMB

"Tesoro considered and accepted any upgrading of the Captain Joe's station" and Manumitted's "characterization of the reimaging of Captain Joe's", Tesoro made no additional objections to these requests for production.  [See Ex. 3 at 2, 3.]

On May 11, 2006, Manumitted sent Tesoro a five-page letter, specifically identifying the deficiencies in Tesoro's responses and advising Tesoro of its intent to file a motion to compel if Tesoro did not withdraw its proprietary objections and fully and meaningfully respond to its discovery requests by May 19.  [Ex. 5 (letter from M. Mills to F. Odsen, dated May 11, 2006).]  At Tesoro's request, this deadline was extended to May 31.  [Aff. of Counsel, ¶ 4.]  At that time, Tesoro responded by indicating that all documents previously withheld under the guise of a "proprietary" privilege were responsive to Manumitted's Request for Production Nos. 1, 2, and 5.  [Ex. 6 at 2, 4 (letter from F. Odsen to M. Mills, dated May 31, 2006).]  Tesoro did not, however, produce these documents or even address Manumitted's contention that no such privilege existed and that these documents were relevant and discoverable.  [See id. at 1-8.]

In early July, Manumitted made a final, good faith attempt to obtain the requested "proprietary" documents without court intervention.  [See Ex. 7 (letter from W. Leukuma to F. Odsen, dated July 5, 2006).]  This time, Tesoro flatly refused to produce the documents.  [Ex. 4 at 1 (Letter from F. Odsen to W. Leukuma, dated July 12, 2006).]  Manumitted remains perplexed by Tesoro's refusal to disclose allegedly "proprietary" information in light of the Protective Order already in place — a protective order proposed by Tesoro in anticipation of this very concern.

## III.   ANALYSIS

The scope of permissible discovery is governed by Federal Civil Rule 26(b), which provides that, in general, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party…."  Fed. R. Civ. P. 26(b)(1).  In addition, for good cause, a party may obtain "discovery regarding any matter

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

relevant to the subject matter involved in the action." Id. As explained by the Ninth Circuit in Shoen, the scope of permissible discovery under Rule 26(b) is extremely broad because "wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." Shoen v. Shoen, 5 F.3d 1289, 1292 (9th Cir. 1993); see also Hickman v. Taylor, 329 U.S. 495, 507 (1947) (explaining that the federal rules "are to be accorded a broad and liberal treatment"). Accordingly, if no claim of privilege applies, discovery may be had with respect to all information "relevant to the subject matter involved in the action" or "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); Shoen, 5 F.3d at 1292.

Rule 26(c) provides the only means for resisting discovery of relevant information. See Fed. R. Civ. P. 36(c). Under this rule, a party resisting discovery may move for a protective order to limit or prevent disclosure of information that constitutes a "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(7). In moving for a protective order, the party resisting discovery of a trade secret or other commercially sensitive information must (1) establish that the information sought comes within the parameters of the rule and is therefore entitled to protection; and (2) "show good cause for restricting dissemination on the ground that it would be harmed by disclosure." 8 C. Wright, A. Miller, & R. Marcus, FEDERAL PRACTICE & PROCEDURE § 2043 at 555, 556 (2d ed. 1994 & Supp. 2006). Even then, disclosure will be ordered if the discovery is necessary and relevant for fair adjudication of the claims and defenses asserted. Id. at 560-62.

When a party fails to appropriately respond to a request for production under Federal Civil Rule 34, the party seeking discovery may move for an order compelling production. Fed. R. Civ. P. 37(a)(2)(B). Rule 37 further provides:

> If the motion is granted or if the disclosure or requested discovery is provided after the motion was filed, the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in making the motion, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the disclosure or discovery without court action, or that the disclosing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(4)(A).

Significantly, failure to produce documents pursuant to Rule 34(a) "may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has a pending motion for a protective order as provided by Rule 26(c)." See American Rock Salt Co., LLC v. Norfolk So. Corp., 228 F.R.D. 426, 466 (W.D.N.Y. 2004) (quoting Fed. R. Civ. P. 37(d)) (observing that, in resisting the discovery of confidential agreements with nonparties that purportedly contained "proprietary" information, defendants failed to move for a protective order or otherwise establish that "that they would suffer annoyance, embarrassment, oppression, or undue burden, if required to produce the agreements"). Here, no such motion has been filed by Tesoro. Nor has Tesoro moved to amend the existing Protective Order.

### A. Tesoro's Outright Refusal to Produce "Proprietary" Documents is Spurious, Particularly in Light of the Protective Order Already Entered by the Court.

Application of the foregoing demonstrates that Tesoro has no legitimate basis for its outright refusal to produce certain documents it has unilaterally deemed too "proprietary" or "confidential" to produce. Included within these documents are the Authorization for Expenditure ("AFE") and supporting documentation used by Tesoro to determine whether to enter into the Distributor Equipment Assistance Agreement directly benefiting Captain Joe's, the credit invoices reflecting the rebates it paid to Service Oil & Gas under the Distributor Equipment Assistance Agreement, and the documents on which the credit invoices are based, which reflect Captain Joe's sales volumes. According to

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S SECOND MOTION TO COMPEL    *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 6 of 17                                              Case No. 3:05-cv-185-TMB

Tesoro, each of these documents contain "confidential" or "proprietary" information too sensitive to disclose under any circumstance.[4] Tesoro is mistaken for several reasons.

### 1.   There is no such thing as a "proprietary" privilege

First, as explained in Manumitted's first motion to compel, there is no such thing as a "proprietary" privilege.[5] While the Federal Rules do provide an avenue for limiting the disclosure of relevant "proprietary" information per Rule 26(c), "[i]t is well settled that there is no absolute privilege [that attaches to] trade secrets and similar confidential information; the protection afforded is that … proper safeguards will attend disclosure." 8 Wright, Miller, Marcus, § 2043 at 554. Thus Tesoro has no basis for simply refusing to disclose relevant[6] information it deems too "proprietary" or "confidential" to disclose. Rather, to the extent Tesoro believes the existing Protective Order is insufficient, its

---

[4] [Ex. 3 at 2-3 (Tesoro's Responses to Request for Production Nos. 2, 5); Ex. 6 at 2-4 (identifying all of the documents produced in Tesoro's initial and supplemental disclosures as responsive to Manumitted's Request for Production Nos. 1, 2, and 5); Ex. 4 at 1 (explaining that Tesoro "continues to be of the view that the information being sought is confidential and proprietary and should not be required to be produced for the reasons articulated in Tesoro's opposition to the motion to compel. As set forth in the court's ruling relative to Captain Joe's motion to quash, this is not a case in which a protective order would be adequate to protect Tesoro from the prejudice or damage it would incur in the event of disclosure of such information.").

[5] [See Manumitted's Motion to Compel at 10, Docket No. 23; Manumitted's Reply to Tesoro's Opposition to Motion to Compel at 3-5, Docket No. 43]

[6] Tesoro did not object to the production of the allegedly "proprietary" information on relevancy grounds in its initial or supplemental response to Request for Production Nos. 1, 2, and 5. [See Ex. 3 at 2-3 (Tesoro's Responses to Request for Production Nos. 1, 2, 5; Ex. 6 at 2-4 (letter from F. Odsen to M. Mills, dated May 31, 2006).] It was only in response to Manumitted's final good faith attempt to obtain production without court intervention that Tesoro indicated that "*some* of the information in the authorization for expenditure and supporting documentation, such as the product margin data, is not relevant to the issues in litigation or likely to lead to the discovery of admissible evidence." [Ex. 4 at 1 (letter from F. Odsen to W. Leukuma, dated July 12, 2006) (emphasis added)].

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

remedy lies in proposing additional protective measures to Manumitted and then, if the parties disagree, seeking further protection from the Court pursuant to Rule 26(c). Even then, Tesoro cannot completely avoid disclosure of relevant "proprietary" information. See id. at 554-557.

### 2. Tesoro's reliance on the court's former order quashing the subpoena issued to Gas, Inc. is misplaced

For similar reasons, Tesoro's reliance on this Court's Order, quashing the subpoena to Gas, Inc., a non-party, is misplaced. While Tesoro seems to think that the Order absolutely bars Manumitted from discovering any "proprietary" information at all, even the most creative reading of the Order does not go so far. Rather, the Order instructs Manumitted to first seek discovery from Tesoro before approaching a non-party. [Order Re: Motion to Quash at 4, Docket No. 21.] This ordering is appropriate, given the fact that non-party status is a relevant factor when determining whether the proposed discovery imposes an undue burden on the person or entity being asked to produce documents and Captain Joe's specifically argued that the subpoena imposed an undue burden on its operations. See American Elec. Power Co., Inc. v. United States, 191 F.R.D. 132, 136 (S.D. Oh.1999) (observing that status as a non-party is a factor that weighs against disclosure); Solarex Corp. v. Arco Solar, Inc., 121 F.R.D. 163, 179 (E.D.N.Y. 1988) (explaining that non-party status is a significant factor in "determining whether compliance [with a discovery demand] would constitute an undue burden") (internal quotes omitted, brackets in original).

Moreover, although the Order does suggest that the scope of Manumitted's subpoena was overly broad in that it appeared to reach some non-relevant proprietary information belonging to Gas, Inc., the Order does not specify what proprietary information the Court considered non-relevant. Nor does it preclude Manumitted from seeking relevant proprietary information from Gas, Inc. at a later date. To the contrary,

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S SECOND MOTION TO COMPEL   *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 8 of 17                                                          Case No. 3:05-cv-185-TMB

the Order specifies that Manumitted is not precluded from pursuing discovery from Gas, Inc. in the future. [Order Re: Motion to Quash at 4, Docket No. 21.]  Consistent with the broad discovery rights afforded by the federal rules, therefore, the Order implicitly recognizes that even non-parties may be required to disclose highly confidential proprietary information when necessary for purposes of establishing or refuting a claim or defense.  See, e.g., M.D.K., Inc. v. Mike's Train House, Inc., 27 F.3d 113 (4th Cir. 1994) (holding that discovery order compelling discovery from non-party company was not appealable, even though it ordered disclosure of trade secrets and observing that "trade secrets have widely been held to be discoverable upon appropriate findings and with an appropriate protective order"); United States v. American Optical Co., 39 F.R.D. 580 (N.D. Cal. 1966) (holding that defendant in antitrust action was entitled to production by non-party competitors of documents showing sales in units and dollars, price lists, off-list pricing, profit and loss statements, and balance sheets); Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 997-99 (10th Cir. 1965) indirectly overruled on other grounds in United States v. Ryan, 402 U.S. 530 (1971) as recognized in FTC v. Alaska Land Leasing, Inc., 778 F.2d 577, 578 (10th Cir. 1985) (finding no abuse of discretion where non-parties were required to respond to subpoena duces tecum requesting trade secrets relating to price, cost, and volumes of sales of gasoline in case involving alleged violations of antitrust laws).

In keeping with the Court's Order, Manumitted attempted to do exactly as instructed — pursue discovery from Tesoro.  To the extent Tesoro believed that Manumitted sought "proprietary" information too sensitive to disclose under the terms of the existing Protective Order, Tesoro was obliged to seek additional protection from the Court.  Tesoro could not, however, simply rely on the rationale employed by this Court in quashing the subpoena issued to Gas, Inc. to refuse to produce documents it unilaterally deems too "confidential" or "proprietary" to disclose.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

### B. The Documents Tesoro Refuses to Produce Contain Information Essential to Many of the Claims and Defenses Asserted in this Case.

Significantly, even if Tesoro had moved for a protective order and met its burden of proof under Rule 26(c), Tesoro would not have been able to avoid production altogether. The "proprietary" information Tesoro seeks to protect falls into two basic categories: (1) information related to Captain Joe's sales volumes;[7] and (2) internal financial information related to Tesoro's anticipated and actual profit or marketing margins. [See Affidavit of Don Groscost, filed in support of Tesoro's Opposition to Motion to Compel, ¶¶ 5, 6, Docket No. 34; Ex. 8 at 2, filed herewith (Supplement to Tesoro's Initial Disclosures, dated March 27, 2006, describing content of certain documents withheld from Tesoro's supplemental disclosures because they purportedly contained "confidential and proprietary and other internal financial information").] Despite Tesoro's protest, this information is essential to a number of the claims and defenses asserted in this case. Accordingly, these documents are discoverable by Manumitted regardless of whether they contain "confidential" or "proprietary" information and are therefore deserving of some protection.

---

[7] Notably, Tesoro has never asserted that disclosure of Captain Joe's sales volumes would injure *Tesoro*, as required by Rule 26(c). See 8 Wright, Miller, & Marcus, § 2043 at 556-57 ("Besides showing that the information qualifies for protection, the moving party must also show good cause for restricting dissemination on the ground that *it* would be harmed by disclosure."); accord American Rock Salt Co. v. Norfolk So. Corp., 228 F.R.D. 426, 466-67 (W.D.N.Y. 2004) (compelling discovery of "confidential" agreement purportedly containing "proprietary" information of nonparties from defendant where defendant failed to establish by specific reference to a provision in their agreements with nonparties that the documents were to be treated as confidential and not subject to disclosure in whole or part in response to a discovery request or court order, and further failed to establish that the confidentiality provisions in place were enforceable).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S SECOND MOTION TO COMPEL    *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 10 of 17                                              Case No. 3:05-cv-185-TMB

### 1. Captain Joe's anticipated or actual sales volumes

As this Court is well aware, Manumitted initiated this action against Tesoro following Tesoro's assistance in upgrading Manumitted's sole competitor (also a branded Tesoro dealer) — Captain Joe's — while simultaneously withdrawing benefits and support from Manumitted, resulting in Manumitted's foreseeable demise. Among other things, Manumitted contends that Tesoro's conduct violated the Alaska Unfair Trade Practices Act as well as the express and implied terms of Manumitted's dealer agreement.

It is Manumitted's position that any increase in gasoline sales by Captain Joe's came at Manumitted's expense, as the Valdez retail gasoline market is relatively constant and, at the time, Manumitted was Captain Joe's sole retail competitor. [See Manumitted's Reply to Tesoro's Opposition to Motion to Compel at 6, Docket No. 43.] A comparison of Manumitted's versus Captain Joe's historical sales should therefore demonstrate a strong and direct correlation between the gasoline sales gained by Captain Joe's, following its expansion, and Manumitted's loss in gasoline sales. Information related to Captain Joe's sales volumes is therefore necessary and relevant for purposes of establishing both causation and damages with respect to nearly all of Manumitted's claims. The fact that this information is necessary for establishing the extent of Manumitted's damages is significant since the discovery of information related to damages serves a core purpose of discovery: facilitation of settlement. "Discovery on damages not only assists the parties in preparing for trial, it also educates each party on the other's view of the damages, which, in turn, assists each party in evaluating essential elements of the matters in issue and in assessing the risks associated with an adverse decision in the action." Johns Hopkins Univ. v. Cellpro, 160 F.R.D. 30, 35 (D. Del. 1995).

In addition, discovery of Captain Joe's sales volumes is critical with respect to establishing Manumitted's price discrimination claim. It is widely recognized that, "[t]he

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

wholesale price and volume of admitted competitors directly pertain to … the *Robinson-Patman Act charges* and to the defenses asserted against those charges." See American Optical, 39 F.R.D. at 584 (quoting Covey Oil Co., 340 F.2d at 997) (emphasis supplied in American Optical) (ordering production of price lists and information relating to sales and financial success of defendant's competitor based on determination that such information was "highly material and relevant" for purpose of countering plaintiff's charges of suppression of competition and inability to compete under both the Sherman Act and the Robinson-Patman Act).

As explained in Manumitted's Reply to Tesoro's Opposition to Motion to Compel, Captain Joe's anticipated sales volumes, as reflected in Tesoro's Authorization for Expenditure, are also highly relevant for purposes of establishing Tesoro's knowledge of the impact of its actions on Manumitted, as well as Tesoro's motivation and purpose for entering into the Distributorship Equipment Assistance Agreement in the first place. [See Manumitted's Reply to Tesoro's Opposition to Motion to Compel at 6, Docket No. 43.] All of this information is therefore directly related to Manumitted's unfair trade practices, implied covenant, and punitive damage claims.

Moreover, given Tesoro's resistance to the discovery of these projections, it appears likely that Tesoro took into account Manumitted's historical sales when determining the Valdez market's potential for growth, if any.  Because Tesoro's conduct effectively deprived Manumitted of the benefit of its bargain with Tesoro, and because a reasonable person would not regard Tesoro's conduct as fair — particularly if Tesoro used Manumitted's "confidential" and "proprietary" information in Tesoro's possession (due to Tesoro's contractual relationship with Manumitted) for its own gain — information related to Captain Joe's anticipated sales, as projected by Tesoro, is absolutely relevant and discoverable for purposes of establishing Manumitted's breach of implied covenant claim. See Hawkin Northwest, Inc. v. State Dept. of Admin., 76 P.3d

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

371, 381 (Alaska 2003) (explaining that subjective prong of the implied covenant "prohibits one party from acting to deprive the other of the benefits of the contract", while the objective prong "requires both parties to act in a way that a reasonable person would consider fair"); RESTATEMENT (SECOND) OF CONTRACTS § 205 (1981) ( "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.").

### 2. Tesoro's marketing margins

Information related to Tesoro's marketing margins is likewise relevant with respect to each of the foregoing claims for purposes of establishing Tesoro's motivation and purpose for entering into the Distributorship Equipment Assistance Agreement. Indeed, detailed information related to marketing margins, price lists, and rebating is commonly disclosed in antitrust cases as it forms a crucial piece of the evidence necessary to both prosecute and defend against price discrimination and similar claims. See, e.g., American Optical, 39 F.R.D. at 583-87 (holding that defendant in antitrust action was entitled to production by nonparty competitors of documents showing sales in units and dollars, price lists, off-list pricing, profit and loss statements, and balance sheets); Covey, 340 F.2d at 997-99 (finding no abuse of discretion where nonparties were required to respond to subpoena duces tecum requesting trade secrets relating to price, cost, and volumes of sales of gasoline in case involving alleged violations of antitrust laws). In addition, because this information offers insight into Tesoro's motivation for entering into the Distributorship Equipment Assistance Agreement, this information is relevant for purposes of establishing Manumitted's entitlement to punitive damages. See AS 09.17.020 (outlining burden of proof necessary to establish entitlement to punitive damages).

Notably, Tesoro does not contend that the AFE actually contains its "marketing margins," only that the AFE contains information which a competitor could use to

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

determine Tesoro's marketing margins.[8]  [Aff. of D. Groscost, ¶ 5, filed in support of Tesoro's Opposition to Motion to Compel, Docket No. 34.]  Regardless of the truth of this assertion, the AFE thus appears to contains information regarding Tesoro's actual costs versus price charged (i.e., profit margins) when selling gasoline directly to Manumitted (a Tesoro-branded dealer) as opposed to Service Oil & Gas (a distributor), who, in turn, sold to Gas, Inc. (Captain Joe's), Manumitted's sole competitor.  This information is undeniably critical to Manumitted's price discrimination as well as its unfair trade practice and implied covenant claims. The information goes to the heart of why Tesoro favored one gasoline purchaser over another and why Tesoro entered into an agreement favoring one Tesoro-branded dealer over another.

Manumitted has alleged that Tesoro violated Section 2(a) of the Robinson-Patman Act based on discriminatory gasoline pricing practices, which resulted in Manumitted's inability to compete in the marketplace.  [Complaint ¶¶ 69, 70.]  Manumitted's claim is based on the belief that Captain Joe's was always able to undercut Manumitted's prices because it obtained gasoline at a more favorable price than Manumitted.  [Complaint, ¶ 69; Affidavit of Benjamin H. Olds, dated August 3, 2006, ¶¶ 3,4, filed under seal herewith.]  Tesoro has denied any knowledge of the prices charged to Captain Joe's, asserting that Captain Joe's purchased its Tesoro-branded gasoline from Service Oil & Gas, its distributor.  [Ex. 9 at 2 (Excerpt from Responses to Manumitted's Second Discovery Requests to Tesoro, dated June 12, 2006).]  Based on the limited discovery provided thus far, it appears as though Tesoro charged Manumitted one price and Service

---

[8] Since Tesoro regularly discloses its refining and marketing margins to the public in its 10Q filings with the SEC, Manumitted assumes that the marketing margins Tesoro seeks to protect are specific to the Valdez area. <u>See</u>, e.g., Tesoro's Form 10-Q for the quarterly period ending March 31, 2006, available at http://www.sec.gov/Archives/edgar/data/50104/000095013406008807/d35662e10vq.htm#107 (last visited August 1, 2006).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED'S SECOND MOTION TO COMPEL   *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 14 of 17                                                                Case No. 3:05-cv-185-TMB

Oil & Gas another.  [Compare Ex. 10 (Dealer Agreement between Tesoro and Manumitted) with Ex. 11, filed under seal (Distributorship Agreement and Addendum thereto between Tesoro and Service Oil & Gas).]  In addition, Tesoro provided Service Oil & Gas with a rebate that was directly linked to Captain Joe's sales volumes.  [Ex. 12, filed under seal (Distributorship Equipment Assistance Agreement between Tesoro and Service Oil & Gas).]  Under this set of facts, the relevant inquiry is whether Tesoro had a legitimate basis for the difference in price charged to Manumitted as opposed to Service Oil & Gas.  See Hasbrouck v. Texaco, Inc., 842 F.2d 1034, 1039 (9th Cir. 1988) (explaining that a Section 2(a) violation may occur where an oil company sells gasoline at a reduced price to its distributors if (1) the discount was not cost-based, and (2) the discount was passed on by the distributors to customers who competed with retailers who purchased their gasoline directly from the oil company).  Answering this question necessarily requires inquiry into Tesoro's actual costs and prices charged, among other things.

Finally, Manumitted is entitled to obtain discovery relating to Tesoro's marketing margins (at least with respect to Captain Joe's) in order to properly evaluate Tesoro's claim for an unspecified amount of damages based on Manumitted's alleged, very limited sale of non-Tesoro-branded products, as well as Tesoro's affirmative defense that Tesoro is "entitled to an offset against Plaintiff's claims in an amount to be proven at trial."  [See Answer ¶ 8 (asserting offset as an affirmative defense); Reservation of Rights to Assert Counterclaims, ¶¶ 3, 4 (asserting claim for unspecified amount of damages in conjunction with its Reserved First Claim for Relief (Breach of Dealer Agreement)).]  Margin information is needed because, at the time of the alleged sales by Manumitted, Tesoro was no longer delivering gasoline to Manumitted.  [Olds Aff. ¶ 8.]  Accordingly, any offset for damages suffered by Tesoro must be based on sales of non-Tesoro gasoline by Manumitted which reduced the sale of Tesoro-brand gasoline by Captain Joe's.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

Ironically, Tesoro's claimed offset appears premised on a cornerstone concept underlying Manumitted's damage claim — i.e., the direct correlation between the gasoline sales of Manumitted and Captain Joe's; what one gains, the other loses.  Therefore, Tesoro's offset, if any, requires disclosure of Tesoro's margins for gasoline sold to Service Oil & Gas and distributed to Captain Joe's.

### C.     Tesoro Should be Sanctioned for Refusing to Provide Discovery.

As described above, Tesoro has refused to produce clearly relevant information, has procrastinated for months and months in tendering its responses, and has engaged in various other actions to prevent meaningful discovery from proceeding.  Tesoro's staunch refusal to produce information going to the heart of Manumitted's price discrimination, unfair trade practice, and implied covenant claims, as well as Tesoro's own claim for damages, is unheard of.  While a producing party may sometimes withhold discovery while working out the details of a protective order, a protective order is already in place, and Tesoro has not responded to Manumitted's offer to consider additional protective measures other than to indicate that any disclosure would be harmful.  [See Ex. 2 at 3-4 (letter from M. Mills to F. Odsen, dated April 11, 2006); Ex. 4 at 1 (letter from F. Odsen to W. Leukuma, dated July 12, 2006).]  Moreover, as demonstrated by the foregoing analysis, Tesoro cannot have a good faith basis for simply refusing to produce documents and information it has unilaterally deemed too "proprietary" or "confidential" to produce.

Rather than use discovery as intended, Tesoro has used the discovery process to increase dramatically and vexatiously the costs of this litigation.  While those costs may be incidental to a large oil company, they are not insignificant to a small Alaska-based company currently in the throes of bankruptcy (due to the large oil company's actions).  This Court should therefore award Manumitted its reasonable expenses incurred in making this motion, including its reasonable attorney's fees pursuant to Rule 37(a)(4)(A).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

## IV. CONCLUSION

Based on the foregoing, Manumitted respectfully requests that this Court require Tesoro to produce all "proprietary" documents responsive to Manumitted's First Discovery Requests to Tesoro, including, without limitation the Authorization for Expenditure ("AFE") and supporting documentation used by Tesoro to determine whether to enter into the Distributor Equipment Assistance Agreement directly benefiting Captain Joe's, the credit invoices reflecting the rebates it paid to Service Oil & Gas under the Distributor Equipment Assistance Agreement, and the documents on which the credit invoices are based, which reflect Captain Joe's sales volumes.

Manumitted also respectfully requests that this Court award Manumitted its reasonable expenses incurred in making this motion, including its reasonable attorney's fees pursuant to Rule 37(a)(4)(A) of the Federal Rules of Civil Procedure.

DATED this 3rd day of August, 2006, at Anchorage, Alaska.

DORSEY & WHITNEY LLP
Attorneys for Manumitted Companies, Inc.

By: s/Wendy E. Leukuma
   Michael R. Mills, ABA No. 8911074
   Wendy E. Leukuma, ABA No. 0211048
   DORSEY & WHITNEY LLP
   1031 West 4th Avenue, Suite 600
   Anchorage, Alaska 99501
   Phone: 907-276-4557
   Fax: 907-276-4152
   Email: mills.mike@dorsey.com
   Email: leukuma.wendy@dorsey.com

CERTIFICATE OF SERVICE

This certifies that on this 3rd day of August, 2006, a copy of the foregoing was served on the following electronically:

Frederick J. Odsen
Hughes Bauman Pfiffner Gorski & Seedorf, LLC
3900 C Street, Suite 1001
Anchorage, Alaska  99503

      s/Wendy E. Leukuma

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MANUMITTED'S SECOND MOTION TO COMPEL    *MANUMITTED COMPANIES v. TESORO ALASKA CO.*
Page 17 of 17                            Case No. 3:05-cv-185-TMB