

**HUGHES BAUMAN PFIFFNER**
**GORSKI & SEEDORF, LLC**
ATTORNEYS AT LAW
Est. 1939

RECEIVED
JUN 0 2 2006
DORSEY & WHITNEY L.L.P
ANCHORAGE

May 31, 2006

Direct Dial:
**(907) 263-8255**
E-Mail: **FJO@hbplaw.net**

Michael R. Mills                                   <u>**Via Telecopy**</u>
Dorsey & Whitney LLP
1031 W. 4th Avenue, Suite 600
Anchorage, AK  99501

RE:   Manumitted Companies, Inc. v. Tesoro Alaska Company
      Our File No. 462-76

Dear Mike:

  I am writing in response to your letter of May 11, 2006.  I will respond substantively to your points as to the various discovery requests.  Suffice it to say, however, that I do disagree with your characterization of Tesoro's responses as being untimely.  At the time of the meeting pursuant to Rule 26(f) the parties discussed and agreed that Tesoro's responses to the initial discovery requests would not be due until thirty (30) days after both parties had completed their initial disclosures.  That understanding is recited in my letter to you dated October 14, 2005 a copy of which is enclosed.  We also enclosed an initial response to the requests for admission recognizing the fact that the date the discovery responses were due was something of a moving target.  It is Tesoro's view that Manumitted has not properly completed its initial disclosures for the reasons set forth in my letter to you of May 5, 2006.  Notwithstanding the above, Tesoro has endeavored with diligence and good faith to respond to the discovery requests.  Its responses have been far more extensive and detailed than anything received to date from Manumitted by way of initial disclosures or otherwise.

  While our clients appear have some disagreements relative to the scope of the attorney client and work product privileges, it is not fair (for Manumitted in particular) to paint Tesoro as recalcitrant or unresponsive in the circumstances of this case.

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW

Michael R. Mills
May 31, 2006
Page 2

_____

Turning to the substance of your letter (and without waiving any attorney client or work product privileges or rights to withhold or condition the disclosure of proprietary information) let me make the following comments:

Request for Production No. 1.  One of your requests is that Tesoro identify the documents pertinent to the questions in the Request.  Without conceding that it has failed to properly respond in these circumstances Tesoro offers the following:

As to the request for all documents since January 1, 1999 relating to Manumitted's branded Tesoro station, it is the case that virtually all of the documents provided with the initial disclosures (as well as all the supplements) come within that category.  To the extent that some of the documents may relate to the first bankruptcy reorganization and the like, they are dated before January 1, 1999 and can be as easily located by you as by us.

Manumitted has also requested documents relating to "Tesoro's consideration and acceptance of the upgrading of Captain Joe's Tesoro branded station in Valdez…."  Subject to Tesoro's objection in its responses as to the assertion that Tesoro considered and accepted an upgrading, the documents included in the production that pertain to Captain Joe's include TAC-105101 through TAC-105207 (pertaining to Tesoro Image Guidelines, Version 1.8, August 2001), all documents referred to in the Supplement to Tesoro Alaska Company's Initial Disclosures dated March 27, 2006, TAC-102913-TAC-102914; TAC-102915-TAC-102934; 102935; 102936-102944; TAC 102945-102946; TAC-102948; 102949-102951; TAC-102952; TAC-102954-102597; TAC-102958-102959; TC-102960; TAC 102965; TAC-120966; TAC-102968; TAC-102969-102970; TAC-102971; TAC-102981-102982; TAC-102981-102982; TAC-103012; TAC-103013-103018; TAC-103027-103029; and TAC-103038-103039.  In addition, as you know, Tesoro and Manumitted have a dispute as to the discoverability of the documents relating to Captain Joe's with respect to which Tesoro has asserted the attorney client or work product privileges.  They include the documents noted in the Supplement to Tesoro Alaska Company's Initial Disclosures dated March 27, 2006 in paragraphs (a), (b) and (c).  In addition, I am preparing, as requested by you, an amended privilege log that will identify what documents pertain to Captain Joe's with respect to which Tesoro asserts the attorney client or work product privileges.

Your letter also complains that Tesoro's responses with reference to the Captain Joe's reimaging are incomplete.  You argue that "[w]hen Tesoro acquired

EXHIBIT 6
Page 2 of 10

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW

Michael R. Mills
May 31, 2006
Page 3

_____

the Newtown Chevron in 1995, Tesoro actively sought information regarding projected gasoline sales and other information regarding projected gasoline sales and other economic information related to its purchase of the station and lease to Manumitted. It is inconceivable that Tesoro would enter into any sort of a distributorship assistance agreement with Service Oil and Gas without some analysis of the impact on Tesoro, to include the impact on Manumitted—a nearby Tesoro branded station."

Recall that the Distributor Equipment Assistance Agreement involved signage and trade dress equipment assistance payments to a distributor in an aggregate amount of $54,724; an amount far less than the sums involved in purchasing the Newtown Chevron and leasing it to Manumitted, then named Harbor Fuel Co., Inc. Also, Tesoro was not buying any assets from Captain Joe's to lease to Manumitted, but was assisting an existing distributor in a limited manner to provide signage and trade dress to an existing Tesoro branded dealer. Tesoro did prepare the Authorization of Expenditure dated on or about December 19, 2002 (TAC-102974-102979) which is, as you know, in part the subject of the Motion to Compel. Tesoro advises us, however, that it did not undertake an analysis of the impact, if any, of the Captain Joe's reimaging on Manumitted's Valdez station. The owners of Captain Joe's made an independent decision to remodel or upgrade their station and Tesoro was not involved in those decisions.

<u>Request for Production No. 2</u>. As to Request for Production No. 2, you request that Tesoro identify which documents in its initial disclosures relate to the "upgrade of Captain Joe's Tesoro branded station to the new logo, including any documents exchanged between Tesoro, Service Oil & Gas, Jeff and Laura Saxe, and Captain Joe's Tesoro." Tesoro objected in its response to any assertion that Tesoro considered or accepted any such upgrading. The documents pertaining to Captain Joe's are identified above with reference to Request for Production No. 1.

You also assert with reference to Request for Production No. 2 that Tesoro's response is incomplete. Tesoro disagrees. Your letter notes that Tesoro has produced an e-mail dated May 6, 2003 from Mr. Donald Reese to Mr. Jeff Evans, Ms. Kathy Slaton and Mr. Don Groscost requesting a journal tape with dispenser totalizer readings for "the first date the facility operated under the new contractual relationship." From that you infer that Captain Joe's was required to enter into a new dealer agreement to obtain the new logo. As far Tesoro is concerned, my understanding is that no such new dealer agreement (or any dealer agreement )

EXHIBIT 6
Page 3 of 10

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW

Michael R. Mills
May 31, 2006
Page 4

exists between Tesoro and Captain Joe's. My understanding is that the new contractual relationship to which Mr. Reese was referring was the Distributor Equipment Assistance Agreement.

Your letter also alleges that "Tesoro required SOG to enter into an agreement containing certain terms and conditions with Captain Joe's—an agreement that required Tesoro's approval." You refer to TAC-102920, which is page 6 of the Distributor Equipment Assistance Agreement. That provision of the Agreement basically says that Service Oil & Gas, Inc. shall comply with the specified conditions of Paragraph 12 of the Agreement. Paragraph 12(B) specifies Tesoro's right to condition the Distributor Equipment Assistance Agreement on the pertinent distributor and the facility having entered into "applicable written agreements in a form which are satisfactory to Tesoro and which are consistent with the terms of this Agreement and the Distributor Agreement."

Paragraph 12(B) grants Tesoro the power to condition the Distributor Equipment Assistance Agreement upon the Distributor and the Facility entering into other agreements acceptable to Tesoro, but insofar as I am aware, Tesoro didn't place any such conditions on Service Oil & Gas, Inc.'s obligations under the Distributor Equipment Assistance Agreement. The language appears to be a boilerplate type of provision like you might see in a loan agreement that was not specifically implemented in the Service Oil & Gas, Inc.—Captain Joe's situation.

Request for Production No. 5. Your letter notes that Request for Production No. 5 requests documents relating to Tesoro's "assessment and decision-making process related to Tesoro's authorization for the upgrading of Captain Joe's gas station (i.e., authorization for use of the new logo)." Tesoro objected and continues to object to the assertion that it authorized an upgrading of Captain Joe's gas station, as it didn't do that. As to its assessment and decision making process related to the reimaging and the Distributor Equipment Assistance Agreement, Tesoro would refer you to the documents referred to with regard to Request for Production No. 1.

Request for Production No. 6. You requested that Tesoro specify letters or evidence of other type of communications from 1999 in which Tesoro asserted that Manumitted was in default of its obligations to Tesoro. In that regard see in particular TAC-102602-102603, the Notice of Breach of Contract Dealer Default dated November 13, 2003, TAC-101157-101158, a letter dated May 4, 2004 advising

EXHIBIT 6
Page 4 of 10

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW

Michael R. Mills
May 31, 2006
Page 5

---

Manumitted of its default under the pertinent Promissory Note, TAC-101283-101299, notice of default under the Dealer Agreement, and the pertinent recorded Notice of Default and Sale with reference to the non-judicial foreclosure, TAC-101564-101566. Other documents which evidence defaults by Manumitted include TAC-103142-103145 (e-mail information indicating Manumitted is procuring non-Tesoro branded product), TAC-103174, and TAC-103182 pertaining to evidence of the sale of non-Tesoro branded products. Other pertinent documentation includes TAC-103196-103198 (regarding past due balance and cash in advance terms), TAC-103199 (e-mail in which Manumitted admits to purchase of non-Tesoro branded product), TAC-102700 (e-mail in which Manumitted acknowledges receipt of May 4, 2004 letter advising of note default), TAC-102714-102713 (article re: Manumitted's non-compliance with environmental requirements), TAC-102718 (January 20, 2004 e-mail detailing non-Tesoro product purchases by Manumitted); TAC-102721 (January 9, 2004 e-mail re: sales of non-Tesoro branded product to Manumitted); TAC-102739-102740 (photos of non-Tesoro product deliveries); TAC-102746 (December 9, 2003 e-mail to Manumitted re: placement on DEC "Do Not Deliver" list); TAC-102755 (December 4, 2003 e-mail re: Manumitted's admission that it purchased non-Tesoro branded fuel); TAC-102773 (October 31, 2003 ACH insufficient funds reports); TAC-102774 (October 28, 2003 ACH insufficient funds reports); TAC-102775 (September 30, 2003 ACH insufficient funds reports); TAC-102776 (September 29, 2003 ACH insufficient funds reports); TAC-103108 (January 20, 2004 e-mail indicating Manumitted is receiving non-Tesoro product); TAC-103109-103111 (January 9, 2004 e-mail re: DEC No Not Deliver status of Manumitted); TAC-103120, TAC-103149-103150 (regarding sales of non-Tesoro branded product); TAC-103154-103155, TAC-103167-103168 (November 10, 2003 e-mail re: evidence that North Pacific Fuels is providing product to Manumitted); TAC-103174 (November 6, 2003 e-mail concerning commingling product); TAC-103178 (November 3, 2003 e-mail concerning evidence of commingled product); TAC0103182-103183 (e-mails re 9/21/03 ACH insufficient funds); TAC-103185 (e-mail re: 9/26/03 ACH insufficient funds).

Request for Production No. 7.: You request that Tesoro specify documents that discuss or relate in any way to Manumitted's proposed sale of the property to Petro Star. I would observe that in general Tesoro did not receive much at all in the way of specific information or documentation from Manumitted in regard to a possible sale to Petro Star or anyone else. What information it does have is reflected in documents including TAC-102697-103042 (e-mail dated May 17, 2004 from Mr. Olds referring to a possible lease of the station on unspecified terms to an

EXHIBIT 6
Page 5 of 10

Michael R. Mills
May 31, 2006
Page 6

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW

unspecified party); TAC-102700 (e-mail of May 11, 2004 which Mr. Olds purports to have a lease purchase with an unnamed party); TAC-102705 (e-mail of April 6, 2004 indicating Mr. Olds has indicated he is negotiating with an unidentified buyer); TAC-102706, TAC-103095 (March 17, 2004 e-mail from Mr. Olds, indicating his asking price directed to Tesoro is $840,000 but not identifying any prospective buyer); TAC-103096 (March 1, 2004 e-mail to Mr. Olds inquiring as to his asking price); TAC-101246 (September 24, 2004 letter from Bill Bankston to me with unsigned apparent draft Lease Agreement). Of course, you and Carl Bauman of our office have exchanged correspondence relative to the matter of Petro Star's possible interest in the Manumitted property, and as you know, a Rule 30(b)(6) deposition of Petro Star is being scheduled in that regard. Mr. Bauman has also subpoenaed Petro Star's records in that regard in an effort to discover pertinent facts not presently known to Tesoro.

Interrogatory No. 2. You letter requests that Tesoro identify those individuals within the Tesoro organization "who were responsible for authorizing the upgrading of the Captain Joe's Tesoro branded station (i.e. authorizing use of the new logo)." Tesoro objected and continues to object to the characterization of the reimaging of Captain Joe's as an upgrading and to the assertion (which Tesoro denied and continues to deny) that Tesoro authorized any such upgrading.

That said, the individuals who would appear to most closely come within the scope of the interrogatory insofar as the Captain Joe's reimaging and the Distributor Equipment Assistance Agreement are, according to our understanding, Mr. Jeff Evans, Mr. Don Groscost, Mr. Eric Warnat and Mr. Donald Sorensen. Tesoro continues to assert the attorney client privileges with regard to those executives (or former Project Engineer in the case of Mr. Warnat). Mr. Evans, the Area Marketing Manager of Light Products for Tesoro Alaska is located at Tesoro's offices in Anchorage, and can be reached through me. Mr. Groscost is the Vice President— Light Products for Tesoro Companies, Inc. He is located in Auburn, Washington can be reached through the offices of Tesoro in-house counsel, Scott Rammell, Esq. whose address is 3450 South 344th Way, Suite 201, Auburn, WA 98001. Mr. Rammell's phone number is 253-896-8884. Mr. Sorensen was formerly the Vice President for Marketing and Light Products for Tesoro Alaska Company, and is currently the Vice President and Manager of the Salt Lake City Refinery for Tesoro Companies, Inc. Mr. Warnat is a former Project Engineer employed by Tesoro whose office was in Auburn, Washington. My understanding is that he is no longer

EXHIBIT 6
Page 6 of 10

**Hughes Bauman Pfiffner**
**Gorski & Seedorf, LLC**
ATTORNEYS AT LAW

Michael R. Mills
May 31, 2006
Page 7

---

employed by Tesoro. I am informed he is employed in Western Washington. Mr. Sorensen can be reached through Mr. Rammell's offices.

<u>Interrogatory No. 3</u>. You next assert in your letter and complain that Tesoro has allegedly not explained "the reason the reason the price of Tesoro gasoline sold to Manumitted increased from April 1999 forward from near or below Anchorage posted rack prices to approximately $.05 per gallon above Anchorage posted rack prices at the time of Manumitted's station closure in January 2004."

Tesoro strongly disagrees and denies that its answer to Interrogatory No 3 was or is "completely unresponsive" as you assert. The price charged Manumitted by Tesoro did not increase in the manner that the question asserts, or assumes. In its interrogatory response Tesoro has not explained the alleged price increase because the alleged price increase didn't happen. As Tesoro stated in its response, since 1999 the price charged Manumitted has at all times been as specified in Exhibit A to the Dealer Agreement dated April 23, 1999 between Tesoro and Manumitted. That Agreement specifies that the price charged will be the Anchorage posted dealer rack price plus freight from Anchorage to Valdez. My understanding is that the prices that Manumitted has been charged have since 1999 been consistent with that definition or formula. I don't know how Tesoro can make it any clearer than that. Manumitted has its facts wrong insofar as I can discern.

<u>Request for Admission No. 2</u>. In your letter you next complain about Tesoro's statement that it isn't precisely certain of the distance between the Manumitted facility and Captain Joe's facility. Tesoro did not deny knowing generally where the location of Manumitted's facility is and where Captain Joe's facility is. Tesoro, as it stated in its responses, does not believe the distance between the two stations is less than two blocks, but neither Tesoro nor we are precisely certain of the distance. Looking at the map set forth on TAC 103014 it looks like Captain Joe's is at least two streets south and a further distance west of the Manumitted station. Based on the map, an argument appears plausible that its necessary to travel two blocks north just to get to the cross street on which Captain Joe's is located. From a geographical and physical point of view the distance is what it is, and for Tesoro to refuse to admit a fact about which it is not precisely certain in these circumstances is appropriate. The distance and the definition of the distance would seemingly require the input of an expert to be correct and precise. I don't think the language of the request for admission itself is sufficiently clear to require an answer different from that which was given by Tesoro.

EXHIBIT 6
Page 7 of 10

Michael R. Mills
May 31, 2006
Page 8

**HUGHES BAUMAN PFIFFNER**
**GORSKI & SEEDORF, LLC**
ATTORNEYS AT LAW

_____

      This letter, I trust and believe, is responsive to your inquiries in your May 11, 2006 correspondence. I shall at your request, seek to procure signed, written respective interrogatory responses from Tesoro consistent with my comments above. I recognize the parties disagree relative to the scope of the attorney client and work product privileges as articulated in the context of the pending Motion to Compel, and I acknowledge the resolution of those issues may affect the discovery responses (or the supplementation thereof) to the extent applicable. Any further motion to compel, however, will be appropriately opposed by Tesoro. Should you have any questions, or wish to discuss the matter further, feel free to inquire of me.

      Sincerely,

      HUGHES BAUMAN PFIFFNER
      GORSKI & SEEDORF, LLC

By    *[signature]*
      Frederick J. Odsen

FJO:247300

cc:   Scott Rammell

EXHIBIT 6
Page 8 of 10



# HUGHES BAUMAN PFIFFNER
## GORSKI & SEEDORF, LLC
### ATTORNEYS AT LAW

Est. 1939

October 14, 2005

Direct Dial:
**(907) 263-8255**
E-Mail: **FJO@hbplaw.net**

Michael R. Mills
Dorsey & Whitney LLP
1031 W. 4th Avenue, Suite 600
Anchorage, AK  99501

RE:  Manumitted Companies, Inc. v. Tesoro Alaska Company
     Our File No. 462-76

Dear Mike:

Enclosed for purposes of the record at this juncture is a set of Initial Objections and Responses to Plaintiff's First Discovery Requests Propounded to Defendant in the referenced matter. As we have discussed, our client, Tesoro Alaska Company, under the rules and by virtue of our discussions, is not required to respond to the plaintiff's First Discovery Requests Propounded to Defendant dated September 15, 2005 until thirty days after the parties have exchanged initial disclosures. In accordance with the discussions at our meeting, we are anticipating that initial disclosures will be exchanged thirty days after the filing of a scheduling and planning conference report. That scheduling and planning conference report, in turn, is not due until ten days after the court grants relief from the stay to allow Tesoro to assert counterclaims. We did, however, want to have the enclosed initial objections and responses of record if for no other reason because of the "moving target" aspect of the discovery response date.

With regard to the relief from stay motion, I don't believe I have received any objections except the debtor's objection to relief from stay to the extent it seeks permission to foreclose founded upon a lack of insurance. I have also been informed that the continued hearing on the dismissal motion has been set for Wednesday, October 19, 2005 at 10:00 a.m. I will forward your proposed form of relief from stay order which we received by e-mail today, as well as the insurance information to our client for its input and get back to your shortly.

Michael R. Mills
October 14, 2005
Page 2

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW

Should you have any questions, please feel free to call.

Sincerely,

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC

By *[signature]*
Frederick J. Odsen

FJO:pab:238907
Enclosure

cc:  Scott Rammell
     Carl Bauman

EXHIBIT 4
Page 10 of 10