Michael R. Mills, ABA No. 8911074
Wendy E. Leukuma, ABA No. 0211048
DORSEY & WHITNEY LLP
1031 West 4th Avenue, Suite 600
Anchorage, Alaska 99501-5907
Telephone: (907) 276-4557
Facsimile: (907) 276-4152

Attorneys for Manumitted Companies, Inc.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| MANUMITTED COMPANIES, INC.<br><br>                    Plaintiff,<br><br>vs.<br><br>TESORO ALASKA COMPANY,<br><br>                    Defendant. | Case No. 3:05-cv-0185-TMB<br><br>**AMENDED COMPLAINT** |

    Plaintiff, Manumitted Companies, Inc., by and through counsel, Dorsey &

Whitney LLP, hereby complains and alleges as follows:

### JURISDICTION AND VENUE

    1.    This court has jurisdiction over this proceeding under and by virtue of 28

U.S.C. § 1331 (actions arising under the laws of the United States).  The District of

Alaska is the appropriate venue for this action, because all parties are residents of the

State of Alaska. 28 U.S.C. § 1391.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

**PARTIES**

2.     Plaintiff, Manumitted Companies, Inc. ("Manumitted") is an Alaska corporation with its principal place of business in Valdez, Alaska.  Manumitted's principal shareholder is Mr. Benjamin Olds ("Olds").[1]

3.     Defendant, Tesoro Alaska Company ("Tesoro") is a Delaware corporation doing business in Alaska.

**ALLEGATIONS**

4.     Tesoro sells petroleum products in the stream of interstate commerce, refining, importing and selling motor fuels for use by visitors driving private motor vehicles to and from Alaska, and by commercial vehicles, marine traffic and air traffic used in interstate commerce.  Tesoro sells fuel both through distributors and directly to service stations.  As described herein, Tesoro sold fuel to its distributor, Service Oil and Gas ("SOG"), and directly to the Manumitted service station.

5.     From approximately 1985 through 1992, there were two service stations in the downtown Valdez area: Manumitted's branded Tesoro station and a branded Chevron station.  In 1992, another Tesoro-branded service station known as "Captain Joe's" was built adjacent to a downtown recreational vehicle (RV) park.  It was rudimentary, consisting only of a gravel pad and pumps dispensing fuel; it had no canopy, no car wash, no service bays, no convenience store.

6.     In 1994, Tesoro purchased the Valdez Chevron station and re-branded it a Tesoro station by leasing it to Manumitted as part of a transaction whereby Manumitted

---

[1] Prior to May 1999 Manumitted was known as "Harbor Fuel Company."  For convenience, the company is referred to consistently herein as "Manumitted," regardless of the time period discussed.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

closed down the station it had originally occupied.  With the conversion of the Chevron station to a Tesoro station, (and the shutting down of Manumitted's original station), Tesoro established a monopoly on branded motor vehicle fuel available in the downtown Valdez area.  That situation remains.

7.    The Manumitted station and the Captain Joe's station are located within close proximity in downtown Valdez where as many as five RV parks are located.  On knowledge and belief, the sale of fuel to RVs makes up the great bulk of service station summer sales and is indispensable for the commercial survival of a downtown Valdez service station.  Downtown Valdez constitutes a distinct market for retail gasoline and diesel fuel sales.

8.    For many years, the Valdez outskirts, about 5 miles from downtown, contained a single "card lock" station, consisting only of pumps on a gravel pad dispensing Tesoro-branded gasoline to credit card users and providing no services to RVs or otherwise.  Since there is little overhead, the card lock typically charged about $.05 per gallon less than the downtown stations.  In recent years a "mom and pop" grocery store located near the card lock station added gasoline pumps on a gravel pad, similarly with no canopy and no services for RVs or otherwise.   The five cent price differential continued since the mom and pop was competing with the card lock.

9.    As noted above, Manumitted and Tesoro agreed that Manumitted would shut down its original service station in 1994-95, and instead lease and operate what had previously been the Chevron station.  Manumitted entered into a lease of the following described real property from Tesoro, pursuant to a Distributor Lease Agreement dated May 31, 1995, to be used as a Tesoro branded gas station:

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

Lot 1A, Block 33, MINERAL CREEK SUBDIVISION, SOUTH PORTION, according to the official plat thereof, filed under Plat Number 93-10, Records of the Valdez Recording District, Third Judicial District, State of Alaska (the "Property").

10.     This action reduced the total number of downtown Valdez service stations to two—the Manumitted station and the Captain Joe's station.

11.     From May 31, 1995 through April 23, 1999 Manumitted operated the Property under a lease as a Tesoro branded service station. Manumitted also operated a wholesale Tesoro fuel distributorship, a home heating oil business and a propane business ("Fuel Distribution Business").

12.     In February, 1998, one month after a balloon payment was due, Tesoro declared Manumitted in default of certain obligations related to the Fuel Distribution Business, and based upon a cross-default provision, also declared Manumitted in default of its agreements related to the service station business.  Tesoro declared this default knowing that the value of the assets of the Fuel Distribution Business was larger than the debt, and also knowing that Manumitted had paid all periodic obligations due to Tesoro.

13.     After declaring Manumitted in default (and cross-default) Tesoro proposed a deal to Manumitted:  Tesoro would allow Manumitted to retain its service station in return for relinquishing control of its Fuel Distribution Business to Tesoro it could simultaneously transfer the Fuel Distribution Business to SOG.  The terms of this transfer remain undisclosed.

14.     Tesoro's declarations of default (and cross default) were asserted in bad faith and appear to be a calculated attempt to divest Manumitted of the Fuel Distribution Business so that Tesoro could transfer it to SOG as part of an overall effort by Tesoro to consolidate its fuel distributorships statewide.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

15.     As part of a settlement with Tesoro of these issues, Tesoro allowed Manumitted to exercise a purchase option for the service station property on or about April 23, 1999.

16.     The purchase of the Property by Manumitted was subject to the terms of the following documents executed by Manumitted, Tesoro and Olds (the "Parties") in conjunction with the conveyance documents: (1) a Promissory Note in the amount of $570,914.92 in favor of Tesoro, (2) a Settlement and Conveyance Agreement ("Settlement Agreement'); (3) a Mutual Hazardous Materials Indemnification Agreement covering the Property ("Indemnification Agreement"), and (4) a Dealer Agreement which required Manumitted to operate the Property as a Tesoro branded station ("Dealer Agreement").  The documents were all of even date (the "Settlement Documents").

17.     The effect of the Settlement Agreement and the Settlement Documents was to divest Manumitted of its Fuel Distribution Business and transfer it to SOG.  Tesoro thus used the leverage it had over Manumitted through the default to unfairly obtain the Fuel Distribution Business for its favored distributor, SOG under favorable terms.

18.     Manumitted was left with only the service station, restricted by (a) a Dealer Agreement requiring Manumitted to buy fuel exclusively from Tesoro, (b) a right of first refusal in favor or Tesoro, and (c) an environmental cleanup under the responsibility and direction of Tesoro.  As part of the enticement to Manumitted to enter the Settlement Agreement, Tesoro made certain representations to Olds concerning its pledge to support the service station in good faith so that Olds would be able to support himself.

19.     The 1999 Dealer Agreement set the price Manumitted would pay Tesoro for gas at the periodically posted Anchorage wholesale ("rack") price, plus $.10 per

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

gallon to cover transportation and delivery.  Manumitted purchased this fuel directly from Tesoro.  SOG delivered this fuel, for which it received a cartage fee.

20.    SOG distributed fuel to the Captain Joe's station allowing SOG to charge a markup and reap a profit above its wholesale price.

21.    At the same time Tesoro enticed Olds to transfer his Fuel Distribution Business to SOG, Tesoro modified and greatly expanded its existing distributor agreement with SOG ("1999 SOG discounting agreement"), providing SOG an additional, significant $.06 per gallon discount[2] below SOG's already existing distributor discount of $.05 per gallon less than Anchorage rack prices, for a total discount of $.11 below Anchorage rack prices—a spread of $.21 per gallon below Manumitted's total wholesale price.  On knowledge and belief, this spread enabled SOG to subsidize or otherwise support the Captain Joe's station by providing it the ability to purchase fuel for less than Manumitted could purchase it.  Due to its lower cost of fuel, the Captain Joe's station was always able to undersell Manumitted.

22.    The $.06 discount provided to SOG was very large by industry standards. For purposes of calculating internal rate of return, Tesoro sacrificed a sizable portion of its gross margin for fuel sales.

23.    The additional $.06 discount applied to all SOG purchases of fuel from Tesoro in excess of a certain threshold, and the extended arrangement lasted for five years nine months, providing a large cash incentive for SOG to increase its fuel volumes, which most importantly for this dispute, gave SOG a significant incentive to take actions

---

[2]  In Fairbanks, the additional discount was $.05 off the Fairbanks rack price.

MANUMITTED COMPANIES, INC. v. TESORO ALASKA COMPANY,

A05-185 CIV

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

to increase volumes at the Captain Joe's station. This incentive had the foreseeable result of substantially harming Manumitted's fuel sales.

24.     At the time of conveyance of the Property to Manumitted, the Parties to the Settlement Documents were all aware of the existence of environmental contamination to the Property that existed prior to Manumitted's occupancy of the Property and, therefore, was Tesoro's responsibility.

25.     The environmental contamination was disclosed in a Phase 1 Assessment prepared by Gilfilian Engineering & Environmental Testing, Inc. of Anchorage, Alaska ("Gilfilian Phase 1").

26.     In light of the known contamination, Manumitted's purchase of the Property was conditioned upon execution of the Indemnification Agreement whereby, among other things, Tesoro agreed to indemnify Manumitted and Olds for any liability relating to contamination existing prior to Manumitted's occupancy of the Property in 1995.

27.     The Indemnification Agreement contemplated Tesoro's reasonable, good-faith cleanup of the Property, specifically reciting that "Further ground water monitoring and periodic environmental work plans with respect to the Property have been or are being proposed by Tesoro and approved by the State of Alaska, Department of Environmental Conservation ('environmental work plans') to address the Pre-existing Known Contamination." Tesoro acknowledged its obligation to formulate and perform appropriate environmental work plans.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

AMENDED COMPLAINT                                    MANUMITTED COMPANIES, INC. v. TESORO ALASKA
                                                                                    COMPANY,
Page 7 of 33                                                                      A05-185 CIV

28.     Rather than quickly removing the contaminated soil, Tesoro attempted remediation using a protracted, gradual microbial process during which Tesoro knew the Property would remain burdened by environmental problems.

29.     In conjunction with the execution of the Settlement Documents, Tesoro agreed to abide by any environmental remediation work required by the State of Alaska, Department of Environmental Conservation ("State DEC").

30.     However, Tesoro has failed to clean up the pre-existing known contamination identified in the Indemnification Agreement, pursuant to work plan(s) approved by the State DEC.

31.     A 2005 work plan approved by the State DEC required Tesoro to add ground water treatment  to the scope of remediation activities already required by the State DEC.

32.     Tesoro has not met the terms of the 2005 work plan.

33.     The Dealer Agreement recognized that its branding terms likely created a franchisor-franchisee relationship and it provided for termination upon the occurrence of circumstances pursuant to which a franchise may be terminated under the Petroleum Marketing Practices Act (15 U.S.C. § 2801 *et seq.*).

34.     The Dealer Agreement provided Manumitted the right to use Tesoro's trademark, brand, trade name and other Tesoro symbols; prohibited the sale of non-Tesoro products under Tesoro's name; prescribed operating and maintenance standards and procedures; allowed Tesoro to offer supplementary staff training; provided for Tesoro's installation and erection of initial signage and trademarks; provided for the joint

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

upkeep of Tesoro symbols; contained a right of first refusal upon sale and otherwise established a business relationship typical of a franchisor-franchisee agreement.

35.    At the commencement of the Dealer Agreement, Manumitted received the following services/benefits from Tesoro:

    a.    Payment terms - 30 days.

    b.    Tesoro sign contractors maintained all signage, light bulb replacement, minor touch up painting, etc.

    c.    Tesoro employee visited site several times per year to do minor maintenance.

    d.    Tesoro co-oped advertising, 50 – 50.

    e.    Tesoro had an attractively low rate on credit card transactions.

    f.    Tesoro had only one color and signage scheme state wide (blue, gold, orange, red).

36.    Subsequent to the execution of the April 1999 Dealer Agreement, Tesoro began withdrawing specific services and benefits originally provided to Manumitted, including the following:

    a.    1999 - Tesoro reduces payment terms from 30 to 10 days

    b.    2000 - Tesoro establishes a new brand (teal color with sunburst), and withdraws support for old brand.  Only new convenience stores with expected high volumes are eligible for new brand.  Tesoro diminishes or withdraws support for old trade dress.  Manumitted is unable to find adequate trade dress material with which to maintain the highest level of appearance.

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA COMPANY,
A05-185 CIV

   c. 2000 - Tesoro discontinues sign contractors and sign maintenance and lighting maintenance for Manumitted's station as had been provided.

   d. 2000 - Tesoro discontinues co-op advertising.

   e. 2001 - Tesoro increases credit card fees.

   f. 2002 - Tesoro discontinues employee maintenance calls for Manumitted.

 37. In late 2002, Tesoro agreed with SOG to authorize the expansion of the Captain Joe's station ("2002 Expansion Agreement").  Under the expansion plan, the Captain Joe's station would receive the new teal/sunburst logo, covered pumps, and a convenience store.  After an internal analysis in accordance with its AFE  (i.e., authorization for expenditure) policy, Tesoro approved the expansion plans and agreed to financially support the expansion.  The expansion and re-imaging could not have occurred without Tesoro's consent.  In fact, construction on the project was halted for several months while Tesoro considered the proposal.  The Captain Joe's station will hereinafter be referred to as the "New Tesoro Station."

 38. The upgraded and re-imaged New Tesoro Station featured signs with a new company logo that matched Tesoro's then current advertising materials, unlike the outdated logo that continued to exist at Manumitted's station.

 39. Tesoro contributed to this expansion and "re-imaging" of the New Tesoro Station, including upgraded signage and trade dress, by providing SOG a quarterly cash rebate of $.015 per gallon of fuel sold by the New Tesoro Station over a four year period until SOG was fully reimbursed for the up-front outlay of $54,723 it provided the New

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

Tesoro Station. Tesoro conditioned this rebate to SOG on the New Tesoro Station agreeing to be a Tesoro branded dealer for 10 years and remaining in compliance with all Tesoro branding requirements.

40.     In evaluating and authorizing this expenditure, Tesoro estimated that it would receive an extremely high internal rate of return.

41.     Tesoro did not offer Manumitted an opportunity to upgrade its current location with the new signage, or convenience store format – Manumitted's station thus looked old and out-of-date when contrasted with the expanded and re-imaged New Tesoro Station virtually next door.

42.     The New Tesoro Station bought its fuel from SOG, and because of SOG's incentive discount from Tesoro, was able to purchase branded Tesoro fuels from SOG at a lower price than Manumitted paid to Tesoro under the terms of its Dealer Agreement with Tesoro. Manumitted was virtually never able to sell at a price lower price than that offered by the New Tesoro Station.

43.     Under the terms of the Settlement Documents, Manumitted was unable to operate its station as anything other than a Tesoro branded station. With the opening of the expanded and re-imaged New Tesoro Station two blocks away, Manumitted's enterprise value as a Tesoro branded station was immediately harmed and was quickly destroyed. Manumitted had been able to compete and remain in business from 1999 forward, even though the New Tesoro Station would consistently undercut Manumitted's pump price, because it offered full mechanics services and a car wash (as well as other amenities used by RVs). However, this relative advantage was eliminated with the New Tesoro Station expansion, and the combination of lower prices and a superior image

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

combined to change the marketplace and doom Manumitted.  This result was foreseeable to Tesoro.

44.    As a result of the closing of the Manumitted service station retail prices of gas and diesel have risen in the Valdez market, and reflect profit margins significantly higher than when the Manumitted station operated.  The closing of the Manumitted station not only has harmed Manumitted, but also customers in Valdez.

45.    Manumitted generated revenues in excess of $1.8 million (and several years in excess of $2.0 million) from 1995 forward until the impacts of Tesoro's changing business terms and the competing station began to impact Manumitted's business in 2003.

46.    During the years following the opening of the expanded and re-imaged New Tesoro Station in the spring of 2003, Manumitted's revenue decreased dramatically.  Net operating income for Manumitted's service station also declined dramatically as a direct result of the New Tesoro Station's expansion and re-imaging.

47.    Tesoro designated SOG to deliver the fuels Manumitted purchased directly from Tesoro, which gave SOG intimate knowledge of Manumitted's day-to-day business operations and fuel volumes.

48.    As Manumitted's operating income diminished, and it suffered cash flow difficulties, Tesoro placed Manumitted on COD.  Tesoro refused to sell Manumitted loads smaller than a full tanker and denied Manumitted the opportunity to obtain smaller loads from Petro Star or others, even though SOG provided smaller loads of fuel for the New Tesoro Station.  Manumitted became unable, by late 2003, to pay cash up front for tanker loads of fuel as Tesoro required.  In January of 2004, Manumitted closed its

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

Tesoro service station due to Tesoro's cancellation of the Dealer Agreement and continuing losses.

49.    From April of 1999 through March of 2004, Manumitted remained current on its Promissory Note obligations to Tesoro, in spite of Tesoro's actions that breached its duties to  Manumitted and harmed Manumitted's business.

50.    On or about July 1, 2004, Tesoro initiated a foreclosure action against the Property.

51.    In early 2004, Manumitted entered into discussions with Petro Star to sell its service station.  By May 2004, Manumitted and Petro Star had agreed on the sales price for the station which would have fully satisfied all amounts owed to Tesoro.[3]  The offer was conditioned upon Petro Star's review of the environmental condition of the Property.

52.    In response to Petro Star's due diligence on the environmental condition of the Property, on February 2, 2004, Manumitted requested documents from Tesoro identifying its environmental clean up activities as required by the State.  The following was Tesoro's response:

a.    A portion of the documents requested were received over two months later.  A second request for the missing documents was made, and those documents were not provided until approximately one month after that.

b.    The additional documents provided by Tesoro were still not complete in responses to Manumitted's request.

---

[3] Petro Star is a business affiliated with the Arctic Slope Regional Corporation ("ASRC").

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

> c.    Manumitted specifically requested a copy of the State DEC's approval letter on Tesoro's 2004 work plan.  This document was not received until the litigation was commenced.

53.    Tesoro recognized that the Petro Star sale could not proceed without Tesoro's cooperation regarding its environmental clean up obligation on the Property. The delays in obtaining the requested environmental disclosures from Tesoro delayed the Petro Star diligence period into the summer and fall of 2004.  Had Tesoro exercised good faith in cooperating with Manumitted a sale to Petro Star would have likely occurred. Tesoro's motivation was likely to eliminate the entry of a non-Tesoro branded dealer into the downtown Valdez market.

54.    On or about July 16, 2004, while Manumitted continued to attempt the sale to Petro Star, Tesoro served Manumitted with a Notice of Default and Sale of the Property, indicating an outstanding balance on Tesoro's Promissory Note in the amount of $446,108.60, plus interest and attorneys' fees.  The foreclosure sale was scheduled for October 14, 2004.

55.    On or about September 3, 2004, Manumitted sent a letter to Tesoro requesting that Tesoro (1) agree that the existing Indemnification Agreement could be assigned to Petro Star in order to facilitate a sale to Petro Star, or (2) agree to execute a new Indemnification Agreement substituting Petro Star for Manumitted.

56.    On or about September 8, 2004, almost immediately, Tesoro advised Manumitted that it would not agree to either request, even though there would have been no change whatsoever with respect to Tesoro's obligations.

AMENDED COMPLAINT

MANUMITTED COMPANIES, INC. v. TESORO ALASKA COMPANY,

A05-185 CIV

57.    On or about September 21, 2004, Petro Star advised Manumitted that it was no longer interested in purchasing the Property.

58.    Manumitted and Tesoro entered into negotiations to sell the property to Tesoro to  resolve their disputes; however, a deal was not achieved.

59.    Manumitted filed for Chapter 11 protection on November 29, 2004, in order to stop Tesoro's foreclosure sale which would have deprived Manumitted of equity in the Property of at least $200,000.

**FIRST CAUSE OF ACTION**
**(Breach of Contract -Dealer Agreement)**

60.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

61.    Paragraph 4 of the Dealer Agreement provides that "Tesoro hereby grants to Dealer the right to use Tesoro's trademark, brand, trade name, and other Tesoro symbols to identify Station as a 'Tesoro' station and to identify and advertise at Station for the sale of Tesoro products."

62.    Tesoro failed to provide Manumitted the opportunity to display current "Tesoro" signage from  approximately 2000 forward.

63.    Manumitted's signage consisted of an old logo and color scheme that did not match current advertising by Tesoro.  From approximately 2000, Tesoro stopped supporting its old logo components, so that Manumitted was unable to maintain in top commercial condition even the older logo and trade dress it possessed.  This old signage caused Manumitted's station to appear old and outdated, particularly after the expanded

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

and upgraded New Tesoro Station two blocks away was opened in early 2003, resulting in a swift decline in Manumitted's business.

64.    Tesoro's actions in changing the services and benefits it offered to Manumitted through its course of dealings, as described above, constitute a breach of the Dealer Agreement that harmed Manumitted.

65.    Tesoro's actions (or inactions) (a) in approving and facilitating an expanded and re-imaged competing Tesoro station two blocks from Manumitted's station, (b) in providing cash incentives to its distributor that enabled the competing station consistently to undersell Manumitted's station, and (c) in providing financial support for the expansion and re-imaging, all constitute breaches of the Dealer Agreement that led to the destruction of Manumitted's business.

66.    All of Tesoro's breaches of the Dealer Agreement damaged Manumitted and ultimately destroyed Manumitted's business.  The amount of damages will be proven at trial.

### SECOND CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

67.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

68.    All contracts, including a franchisor/franchisee relationship, entered into within the State of Alaska, and within the Ninth Circuit, contain an implied covenant of good faith and fair dealing.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

69.     Despite any language to the contrary in the Dealer Agreement or any other of the Settlement Documents, the relationship between Tesoro and Manumitted was a franchisor/franchisee relationship.

70.     As a franchisor, and particularly in light of the Settlement Agreement in which Manumitted was enticed to transfer its Fuel Distribution Business to Tesoro and SOG and was left with the only service station, Tesoro had a fiduciary duty to Manumitted to support its business in good faith.

71.     Both (a) Tesoro's gradual withdrawal of services and benefits to Manumitted, and (b) its approval of, and payment for, the expansion and re-imaging of the New Tesoro Station approximately two blocks from Manumitted's station was a breach of Tesoro's duty of good faith and fair dealing with Manumitted.

72.     It was foreseeable, and Tesoro knew, that the competing Tesoro station would damage Manumitted and ultimately destroy Manumitted's business.

73.     Tesoro's entry into the Settlement Agreement on terms which it knew could be undercut by SOG and the New Tesoro Station, due to the 1999 discounting agreement Tesoro entered into concurrently with SOG, deprived Manumitted of the benefit of the Settlement Agreement and constituted a breach of Tesoro's duty of good faith and fair dealing.

74.     Under the terms of the Indemnification Agreement, Tesoro had a duty of good faith and fair dealing to remediate its assumed environmental liability with regards to the Property.  Approximately seven years had elapsed since Tesoro assumed liability for the pre-existing contamination to the Property, which on knowledge and belief

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

occupies an area roughly 20 feet square and eight feet deep.  Despite this lengthy period, Tesoro has not fully remediated the Property.

75.    Tesoro's refusal to provide information to Manumitted regarding the environmental remediation in early 2004, so that Manumitted could negotiate a sale of the Property, and Tesoro's unreasonable refusal to extend the Indemnity Agreement to Petro Star, which prevented Manumitted from selling the Property, constitute violations of Tesoro's duty of good faith and fair dealing.

76.    As a result of Tesoro's breach of its implied covenant of good faith and fair dealing, Manumitted was damaged, its business destroyed, and its attempt to mitigate its damages was prevented.  The amount of damages will  be proven at trial.

**THIRD CAUSE OF ACTION**
**(Intentional Interference with Business Opportunity)**

77.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

78.    Upon learning of Manumitted's potential sale of its station to Petro Star, Tesoro had a duty to provide timely assistance to Manumitted when it received Manumitted's request for documentation detailing environmental remediation efforts that were Tesoro's sole responsibility.

79.    Despite this duty, Tesoro failed to respond timely to Manumitted's requests.  Tesoro knew that failing to provide timely environmental information would inhibit and perhaps prevent Manumitted's potential sale to Petro Star.  Tesoro delayed responding despite knowing of the negative and damaging impact on Manumitted, and

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

despite the fact that the sale of the station to Petro Star would have benefited Tesoro by allowing Manumitted to satisfy all outstanding indebtedness to Tesoro.

80.     Tesoro's delay in providing the documents requested by Manumitted, and Tesoro's unreasonable refusal to extend the Indemnity Agreement to Petro Star, constitute intentional interferences with Manumitted's attempt to sell its business to Petro Star and mitigate its damages.

81.     As a result of Tesoro's intentional interference with Manumitted's sale of the Property to Petro Star, Manumitted  was damaged and a beneficial sale opportunity was lost.  The amount of damages will be proven at trial.

### FOURTH CAUSE OF ACTION
### (Breach of Contract -  Indemnification Agreement)

82.     Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

83.     Pursuant to the terms of the Indemnification Agreement, Tesoro had a duty to comply with the State of Alaska DEC directives regarding remediation of the Property regardless of who owned the Property.

84.     Tesoro was obligated to take certain actions with regards to remediation of the Property pursuant to a 2005 work plan approved by the State DEC, regardless of who owned the Property.

85.     Contrary to the reasonable work plans and good-faith cleanup clearly contemplated by the Indemnification Agreement, Tesoro's protracted process of remediation produced no environmental closure, which prevented Manumitted from

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

selling the station or refinancing the station because of the continuing environmental problems.  This effectively held Manumitted hostage.

86.    Tesoro's failure to complete the remediation effort in a timely fashion, and to comply with the 2005 work plan, constitute breaches of the Indemnification Agreement.

87.    Tesoro's unwarranted refusal to agree that the benefits of the Indemnification Agreement could be offered to Petro Star to facilitate a sale of the Property, which would not have altered Tesoro's duties to the State of Alaska DEC in any way, constitutes a breach of the Indemnification Agreement.

88.    As a result of Tesoro's breach of the Indemnification Agreement, Manumitted was damaged and a beneficial sale opportunity was lost.  The amount of damages will be proven at trial.

## FIFTH CAUSE OF ACTION
### (Violations of the Unfair Trade Practices and Consumer Protection Act)

89.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

90.    Under AS 45.50.471(a), the Alaska Unfair Trade Practices and Consumer Protection Act (the "UTP Act"), unfair or deceptive acts in the conduct of trade or business are unlawful.  Many of Tesoro's actions (or inactions) described in the paragraphs above constitute violations of the UTP Act, under, inter alia, sections AS 45.50.471(a) and AS 45.50.471(b)(3), (11), (12), (14), and (25).[4]

---

[4]  The Alaska Supreme Court has concluded that the provisions of the Unfair Trade Practices and Consumer Protection Act apply to commercial transactions as well as consumer transactions.  *W. Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.,* 101 P.3d 1047

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

91.    Tesoro's withdrawal of services and benefits to Manumitted, and Tesoro's approval of and payment of funds (through SOG) to assist in the development of the expanded and re-imaged New Tesoro Station two blocks from Manumitted's station, acts that deprived Manumitted of the benefits of the Settlement Agreement, were deceptive, unfair, offensive to public policy and constitute unfair trade practices.

92.    Tesoro's entry into the Settlement Agreement on terms which it knew could (and likely would) be undercut by the discount incentives granted to SOG contemporaneously (which would inure to the benefit of the New Tesoro Station), was unfair, deceptive, offensive to public policy and constitutes unfair trade practices. Tesoro's failure to disclose to Manumitted its new discount incentive arrangement with SOG and the likely detrimental effects on Manumitted's promised benefits under the Settlement Agreement was misleading, unfair, offensive to public policy, damaging to Manumitted and to Valdez consumers and constituted unfair trade practices, at minimum, under AS 45.50.471(a) and (b)(12).

93.    Tesoro's actions in creating a chronic price differential between two branded Tesoro dealers within two blocks of each other that foreseeably would deprive Manumitted of the benefit of its bargain under the Settlement Agreement (Manumitted was induced to transfer its large Fuel Distribution Business to SOG and be left with only its service station), was unethical, unethical, offensive to public policy and constitutes unfair trade practices, at minimum, under AS 45.50.471(a) and (b)(14).

---

(Alaska 2004).  Unfair trade practices need not have been previously defined as such. Practices that tend to deceive may be deceptive, and a practice may be unfair for a wide variety of reasons including whether it is immoral, unethical, oppressive, or unscrupulous, offends public policy, or harms competitors.  *State v. O'Neill Investigations*, 609 P.2d 520, 535 (further cite omitted).

MANUMITTED COMPANIES, INC. v. TESORO ALASKA COMPANY,

A05-185 CIV

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

94.    Tesoro's failure to deal in good faith with leaseholder Manumitted while negotiating the termination of Manumitted's lease agreement by, among other things, concealing its separate 1999 SOG discounting agreement constitutes a violation of the Alaska Gasoline Products Leasing Act and thus constitutes unfair trade practices.

95.    Tesoro's delay in providing environmental information and its refusal to consent to  the reasonable assignment of the Indemnity Agreement was deceptive, oppressive, unfair, offensive to public policy, harmful to Manumitted and harmed consumers by depriving them of competition and, for all these reasons, constitutes unfair trade practices.

96.    Tesoro's misrepresentations to Olds about the beneficial business outcome for Olds as a result of entering the Settlement Agreement were misleading, unfair, deceptive and constitute unfair trade practices.

97.    Tesoro's actions in forcing Manumitted to utilize older trade dress material for its station while supporting and funding the expansion, upgrading and reimaging of the New Tesoro Station with newer symbols and logos had the foreseeable impact of deceiving the public, and foreseeably led potential customers to question whether Manumitted's station with older symbols and trade dress was selling gas of similar quality or was in danger of shut down, thus causing confusion in violation of AS 45.50.471(a), (b)(3) and (b)(11).

98.    Violations under the UTP Act entitle Manumitted to treble damages against Tesoro under AS 45.50.531(a).

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

99.    As a result of Tesoro's violations of the UTP Act, Manumitted has been damaged and its business destroyed.  The amount of damages, including actual attorneys' fees, will be  proven at trial.

## SIXTH CAUSE OF ACTION
### (Price Discrimination – Violation of Robinson-Patman Act)

100.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

101.    On knowledge and belief, Tesoro sold fuels to Manumitted and the New Tesoro Station within the flow of interstate commerce.

102.    It is believed the New Tesoro Station was offered  like grade and quality gasoline at a consistently lower price than that paid by Manumitted from 1999 forward, as a result of the price discount provided SOG.  Because of this price discrimination, Manumitted was forced to sell its gasoline at a higher price than the New Tesoro Station.

103.    Due to this price discrimination by Tesoro, Manumitted could not compete with the lower prices offered at the New Tesoro Station and it lost customers and profits because of the discriminatory prices which the New Tesoro Station used to lower its resale price or otherwise solicit business.  Manumitted has been injured in its business or property as a result of this price discrimination.

104.    As a result of this price differential over time, competition has been substantially injured and there was a tendency to create a monopoly in Tesoro and the sale of gasoline in downtown Valdez.

105.    Tesoro's price discrimination is a violation under the Robinson-Patman Act, 15 U.S.C. § 13(a).

DORSEY & WHITNEY LLP
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

106.    Violations under the Robinson-Patman Act entitle Manumitted to treble damages, costs and attorney's fees under 15 U.S.C. §15.

107.    As a result of Tesoro's violation of the Robinson-Patman Act, Manumitted was injured in its business or property.  The amount of damages will be proven at trial.

### SEVENTH CAUSE OF ACTION
### (Federal and Alaska Monopoly)

108.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

109.    Tesoro's relevant business activities are within interstate commerce.

110.    For the purposes of all Sherman Act and related state claims herein, the relevant geographic market consists of downtown Valdez.  A price differential consistently exists between the downtown area and the Valdez outskirts; the downtown area is the locus of the summer RV trade that is critical for the commercial success of any downtown  service station, in part because of the close proximity of the area's RV parks; the level of volumes sold exceeds that sold in Valdez outskirts by orders of magnitude; and for many years the Valdez outskirts contained only a single "cardlock" pump station dispensing fuel to credit card users.  The relevant product market consists of the retail sale of gasoline and diesel fuel.  The retail sale of gasoline and diesel fuel has no substitutes.

111.    As a result of the 1994 demise of the Valdez Chevron branded station and Tesoro's re-branding of that station, Tesoro became the only supplier of gasoline and diesel fuel in the downtown Valdez area, establishing a monopoly by controlling 100% of the relevant market.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

112.    Under the Sherman Act, 15 U.S.C. § 2, and under AS 45.50.564, it is illegal to willfully acquire or maintain monopoly power through anticompetitive, predatory or exclusionary practices.

113.    Tesoro willfully maintained monopoly power by obstructing the sale of the Manumitted service station to Petro Star.

114.    Tesoro failed to provide the environmental information requested by Petro Star, knowing that by so doing it would prevent the sale process from going forward.

115.    Tesoro unreasonably refused to permit assignment of the Indemnity Agreement to Petro Star.

116.    Tesoro's actions excluded Petro Star from the Valdez market, willfully maintaining its monopoly, harming the public by restricting competition and permitting higher prices, and directly harming Manumitted by excluding a new market entrant from leasing and purchasing the Manumitted station.

117.    Tesoro's actions resulted in the closing of the Manumitted station, willfully maintaining monopoly in the Valdez market by further reducing competition in that market and permitting Tesoro and/or SOG to raise retail prices in that market and increase profit margins.

118.    The New Tesoro Station now is the only service station in the downtown Valdez market; no new entrants have replaced Manumitted.

119.    Violations of 15 U.S.C. § 2 and AS 45.50.564 entitle Manumitted to treble damages, costs and attorney's fees under 15 U.S.C. § 15.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

120.   As a result of Tesoro's violation of the Sherman Act by willfully maintaining its monopoly, Manumitted was injured in its business or property.  The amount of damages will be proven at trial.

### EIGHTH CAUSE OF ACTION
### (Federal and Alaska Conspiracy to Monopolize)

121.   Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

122.   On knowledge and belief, in late-2002 Tesoro and SOG knowingly entered one or more agreements or arrangements to facilitate the development of the New Tesoro Station into the dominant gas station in Valdez (as previously described, the "2002 expansion agreement"), with new lighting, signage and trade dress paid for by Tesoro, a new mini-mart, and the ability, due to the 1999 SOG discounting agreement, to undersell Manumitted under any circumstance.

123.   The 2002 expansion agreement, in light of the 1999 SOG discounting agreement, constitutes a conspiracy to establish SOG's sole retail station customer as the single dominant service station in Valdez, effect the demise of the  Manumitted station, and maintain monopoly power.

124.   Tesoro and SOG acted on that conspiracy by maintaining a wide differential between SOG's, and Manumitted's, respective wholesale purchase prices from Tesoro, providing for the New Tesoro Station to always meet or beat Manumitted's retail gasoline sales price, and by jointly facilitating the upgrade and new imaging of the New Tesoro Station.  The conspiracy is further evidenced by the fact that Manumitted was never able to undersell the New Tesoro Station.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

125.    This arrangement was, as to Manumitted, predatory.  SOG acted with Tesoro to enhance or maintain Tesoro's monopoly conspiracy to maintain a monopoly in Tesoro.  The conspiracy by Tesoro and SOG quickly eliminated Manumitted's service station from the Valdez market and replaced it with a single, dominant Tesoro-branded station backed by, and obtaining its products from, SOG.

126.    Manumitted was directly injured as a result of this conspiracy to maintain a monopoly, losing its ability to compete in the Valdez market and ultimately losing its business.

127.    Violations of 15 U.S.C. § 2 and AS 45.50.564 entitle Manumitted to treble damages, costs and attorney's fees under 15 U.S.C. § 15.

128.    As a result of the above conspiracy by Tesoro and SOG, Manumitted was injured in its business or its property.  The amount of damages will be proven at trial.

### NINTH CAUSE OF ACTION
### (Federal and Alaska Unreasonable Restraint of Trade)

129.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

130.    On knowledge and belief, the concerted action evidenced by the 1999 discounting agreement and the 2002 expansion agreement between Tesoro and SOG (and other agreements that may be discovered) sought to effect an ongoing differential between the retail prices charged by the Manumitted station and those charged by the New Tesoro Station.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

131.    Concerted action to control prices, establish a price spread or effectively fix a price differential constitutes an illegal restraint of trade under the *per se* or rule of reason doctrines.

132.    The intent of the concerted action was to establish the New Tesoro Station as the single dominant station in the downtown Valdez market, thus substantially harming competition.

133.    Tesoro and SOG could not have failed to understand the effects of their agreements on Manumitted.

134.    The action was effective and competition was injured.  The New Tesoro Station now has no competition since the elimination of Manumitted's station.

135.    On knowledge and belief, the New Tesoro Station has raised retail prices and established substantially higher profit margins as a result of the elimination of Manumitted, substantially harming the public without any competitive benefit.

136.    Violations of 15 U.S.C. § 1 and AS 45.50.562 entitle Manumitted to treble damages, costs and attorney's fees under 15 U.S.C. § 15 and AS 45.50.576.

137.    As a result of the above conspiracy by Tesoro and SOG, Manumitted was injured in its business or its property.  The amount of damages will be proven at trial.

### TENTH CAUSE OF ACTION
### (Wrongful Foreclosure)

138.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

MANUMITTED COMPANIES, INC. v. TESORO ALASKA
COMPANY,
A05-185 CIV

139.    Tesoro's breach of the Distributor Agreement, breach of duty of good faith and fair dealing, interference with business opportunity predictably harmed Manumitted and destroyed its business.

140.    It was foreseeable that Tesoro's actions (or inactions) would eventually cause Manumitted to default on its obligations to Tesoro, which were avoided until March, 2004.

141.    After destroying Manumitted's business and forcing a default, Tesoro then sought to foreclose on the Property precisely at a time when Tesoro knew Manumitted had a pending sale of its Property to Petro Star, a competitor of Tesoro.

142.    Tesoro's foreclosure action under these circumstances, by which Tesoro sought to obtain any remaining equity in the Property for its benefit, and prevent the entrance of a competitor into the downtown Valdez marketplace, constitutes a wrongful foreclosure that has damaged Manumitted.  The amount of damages will be proven at trial.

### ELEVENTH CAUSE OF ACTION
### (Recoupement)

143.    Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

144.    Tesoro has asserted a claim of at least $446,108 against Manumitted related to the Promissory Note obligation.

145.    The Settlement Documents executed in April of 1999, including the Promissory Note, are integrated documents.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

146.   Manumitted asserts the right to recoup its damages against any and all amounts determined to be owed to Tesoro under the Settlement Documents.

## TWELFTH CAUSE OF ACTION
### (Offset)

147.   Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

148.   Tesoro has asserted a claim of at least $446,108 against Manumitted related to the Promissory Note obligation.

149.   The Settlement Documents executed in April of 1999, including the Promissory Note, are integrated documents.

**150.**   Manumitted asserts the right to offset its damages against any and all amounts determined to be owed to Tesoro under the Settlement Documents.

## THIRTEENTH CAUSE OF ACTION
### (Alaska Gasoline Practices Marketing Act, Federal Petroleum Marketing Practices Act)

151.   Plaintiff hereby incorporates by reference all statements and allegations contained in previous paragraphs of this document.

152.   Prior to execution of the Settlement Documents (and potentially thereafter), Manumitted was a dealer under the Alaska Gasoline Practices Marketing Act ("AGPMA"), AS 45.50.800 *et seq.*

153.   Tesoro violated the AGPMA section (a)(7) by failing to deal with Manumitted, a dealer, in good faith.  Among other things, when Tesoro cross-defaulted

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

Manumitted's service station obligations as a result of its alleged default on its Fuel Distribution Business, and when it then enticed Manumitted to enter into the Settlement Agreement, Tesoro acted in bad faith.

154.    The cross-default was bad faith in and of itself as the service station obligations were not then in default, and Tesoro failed to disclose its contemporaneous parallel 1999 SOG discounting agreement, an arrangement Tesoro knew would harm Manumitted and eventually threaten its existence.

155.    Further, Tesoro engaged in price discrimination among dealers, in violation of section (e), when it entered into the 1999 SOG discounting agreement which provided for a wholesale price spread between Manumitted and SOG such that SOG's retail customer, the New Tesoro Station, would always be able to purchase wholesale fuel at a lower price than that at which Manumitted was able to purchase it, thus substantially lessening competition.  SOG had every incentive to allow the New Tesoro Station to receive cheaper product since the 1999 SOG discounting agreement was premised on SOG increasing sales volumes.

156.    Further, Manumitted reserves the right to argue that it be adjudicated a dealer under the AGMPA for the entire time in question here, regardless of lease or ownership status; Tesoro should not be allowed to utilize violations of the AGMPA to remove that law's protections from a dealer who owns (subject to a deed in favor of the fuel distributor) rather than leases its station.

157.    A violation of AS 45.50.800 et seq. is a *per se* violation of the Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471(b)(25), entitling

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

Manumitted, to the extent it is a dealer under the AGMPA, to an award of treble damages.

158.    Prior to execution of the Settlement Documents (and potentially thereafter), Manumitted was a franchisee under the federal Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. 2801 *et seq.*

159.    Tesoro's cross-default of Manumitted is not a permitted reason for termination of a franchise under 15 U.S.C. 2802(b).  It was not reasonable to terminate the franchise because the payments as to the franchise were current; the cross default stemmed from an obligation under the Fuel Distribution Business.

160.    Violation of the PMPA entitles Manumitted to actual and exemplary damages and an award of attorney's and expert witness fees.

161.    As a result of Tesoro's violations of the AGMPA and the PMPA, Manumitted was damaged and its business destroyed.  The amount of damages will be provded at trial.

WHEREFORE, Plaintiff prays for relief as follows:

1.    For damages in the principal amount of not less than $1,000,000, the exact amount to be proven at trial;

2.    For punitive damages to be proven at trial;

3.    For treble damages as allowed by applicable statute;

4.    For pre-judgment interest at the maximum rate allowable by law;

5.    For post-judgment interest at the maximum rate allowable by law;

6.    For attorney fees and costs in an amount as set by law; and

7.    For such other and further relief as this court deems just and equitable.

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK 99501
(907) 276-4557

DATED this <u>4th</u> day of December, 2006, at Anchorage, Alaska.

DORSEY & WHITNEY LLP
Attorneys for Manumitted Companies, Inc.

By: _____/s/_____ Michael R. Mills
        Michael R. Mills, ABA #8911074
        Wendy Leukuma, ABA#0211048

CERTIFICATE OF SERVICE

This certifies that on December 4, 2006, the following individuals were served via fax:

Frederick J. Odsen
Hughes Bauman Pfiffner Gorski & Seedorf, LLC
3900 C Street, Suite 1001
Anchorage, AK  99503

/s/ Michelle Hanlon-Dehner
CERTIFICATION SIGNATURE

4828-9633-5617\112/4/2006

**DORSEY & WHITNEY LLP**
1031 West 4th Avenue,
Suite 600
Anchorage, AK  99501
(907) 276-4557

AMENDED COMPLAINT

Page 33 of 33

MANUMITTED COMPANIES, INC. v. TESORO ALASKA COMPANY,

A05-185 CIV