Douglas C. Berry
*Admitted Pro Hac Vice*
K. Michael Fandel
*Admitted Pro Hac Vice*
Graham & Dunn PC
Pier 70, Suite 300
2801 Alaskan Way
Seattle, WA  98121
Tel:  206.624.8300
Fax: 206. 340-9599

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| MANUMITTED COMPANIES, INC., | )  No. A05-185CV (JKS) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TESORO ALASKA COMPANY, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

**DEFENDANT TESORO ALASKA COMPANY'S MOTION FOR PARTIAL SUMMARY**

**JUDGMENT**

Defendant Tesoro Alaska Company, through its attorneys, respectfully submits this motion for partial summary judgment, pursuant to Rule 56, Fed. R. Civ. P.  Tesoro seeks summary judgment on plaintiff's Robinson-Patman Act, duty of good faith and fair dealing, and Unfair Claims Practices Act claims, because those claims are so lacking in merit that they should be dismissed as a matter of law.

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 1

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

## I.    INTRODUCTION

It has been said that no good deeds go unpunished.  That is certainly true with this lawsuit, where Tesoro Alaska Company is being sued by a former distributor and dealer whose failing business Tesoro bailed out no fewer than three times, before that business finally collapsed.

Plaintiff Manumitted Company could not make a successful go of its Tesoro branded station in Valdez, despite the economic opportunities presented in 1989 by the Exxon Valdez incident, nor after Tesoro waived nearly $700,000 in debt and deferred $1.6 million more to help Manumitted reorganize in bankruptcy in 1991, nor in 1995 when Tesoro assisted Manumitted to restructure both its burgeoning debt and its struggling business, and not even in 1999 when Tesoro forgave yet another default of Manumitted's payment obligations and provided the insolvent dealer with an additional $700,000 in debt relief.   By 2003, Manumitted was insolvent again, and when Tesoro finally declined to extend further credit, Manumitted simply began purchasing non-Tesoro fuel and selling it under Tesoro's brand, until Manumitted's owner disengaged from the business in late 2003, and finally closed the station's doors in early 2004.

Despite having been kept afloat for well over a decade by Tesoro, Manumitted now claims to have been the victim of an effort to put it out of business.  The fact of the matter is that Manumitted never maintained a viable operation, and all Tesoro got for its repeated good faith efforts to help make the business viable is millions of dollars in unpaid debt, and a lawsuit thrown into the bargain.

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 2

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

## II.    FACTUAL BACKGROUND

**A.    Cast Of Characters – The Parties And Other Relevant Players.**

Tesoro Alaska Company ("**Tesoro**") has operated a refinery in Nikiski on the Kenai Peninsula since 1969.  From crude originating from the Cook Inlet, North Slope, and, more recently, some foreign oil fields, the refinery produces, among other products, jet fuel (roughly 40% of jet fuel used at the Ted Stevens International Airport is produced at the Kenai refinery), diesel, and gasoline.  Some motor fuel (diesel and gasoline) produced at the Kenai refinery is sold on an unbranded basis, but a significant percentage is sold for ultimate resale in Alaska through Tesoro's approximately 100 branded Tesoro service stations.  (Declaration of Don Groscost, "Groscost Dec." at ¶4).

Some of Tesoro's Alaska service stations (principally in the Anchorage area) are operated by Tesoro directly.  (*Id*. at ¶5)  The majority of service stations, however, are operated by independent dealers.  (*Id*.)  Tesoro distributes its motor fuels to these independent service stations in two distinct ways.  The lion's share of retail stations are supplied through independent wholesalers or jobbers under a Distributor Agreement between Tesoro and the jobber.  (*Id*. at ¶6)  Jobbers are generally responsible for recruiting, marketing to, and contracting with their own network of retail dealers.  (*Id*. at ¶8)  They are also generally responsible for the cost of transporting fuel from the relevant Tesoro terminal to the dealer, for the credit risks associated with the jobber's sale of motor fuel to their dealers, and for monitoring and enforcing compliance with its agreements with its dealers and with Tesoro's general brand standards.  (*Id*.)  In contrast to dealers supplied by jobbers, Tesoro also sells directly to a few Alaska dealers under a Dealer Agreement.  (*Id*. at ¶5)

Plaintiff Manumitted Companies, Inc. originally did business under the name Harbor Fuel Co.; it changed its name to Manumitted in 1999.  For ease of reference, in this motion we refer to both Harbor Fuel Co. and Manumitted Companies as "**Manumitted**."  Manumitted has

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 3

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1  at all times, or at least at all times relevant to this case, been operated by Benjamin Olds

2  ("**Olds**").  (Deposition of Benjamin Olds ("Olds Dep.") at 193:9-194:6, attached as Exhibit A to

3  Declaration of Douglas C. Berry, "Berry Dec.,").

4       In February 1986, Manumitted entered into a Distributor Agreement with Tesoro.[1]  (Olds

5  Dep. at 193:9-13; Exhibit B to Berry Dec.).  This Distributor Agreement did not grant

6  Manumitted any exclusive territory.  (Olds Dep. at 203:2-7; Exhibit B to Berry Dec. at ¶5), but it

7  did grant to Manumitted the right to enter into branded dealer relationships with dealers; indeed,

8  the Distributor Agreement "encourage[d] Distributor to establish as many Tesoro branded

9  operations as Distributor, in the sole exercise of good business judgment, can effectively

10  manage."  (Exhibit B to Berry Dec. at ¶15(d)).  Under this Distributor Agreement, Manumitted

11  eventually established a network of dealers from Valdez to the Glennallen area.  (Olds Dep. at

12  200:2-201:22).  One of these dealer outlets was actually a retail service station that Manumitted

13  itself operated in Valdez.  This station was across the street from a Chevron station and auto

14  repair shop that operated under the name New Town Chevron.  Eventually, in 1995, Manumitted

15  would cease operations from its original site in Valdez, and take over the operation of the New

16  Town Chevron, which it thereafter operated as a Tesoro service station and auto repair shop.[2]

17       **Service Oil & Gas**, like Manumitted (or at least, like Manumitted was) is a Tesoro

18  distributor.  It entered into a Distributor Agreement substantially similar to Manumitted's in

19  1988.  Unlike Manumitted, however, Service Oil & Gas, at least initially, served as a distributor

20

21  [1] Manumitted also become involved in a number of other business operations other than its Tesoro
branded distributor business. These included a booming business, a propane distribution business, and

22  home heating oil distributor business.  (Olds Dep. at 21:12-24:10)

23  [2] The New Town Chevron had been operated by the Chaffin family, which also operated another service
station in town, the Big Wheel Texaco. (Deposition of Robin Chaffin ("Chaffin Dep.") at 10:6-16,

24  attached as Exhibit J to Berry Dec.).  Robert Chaffin, who had operated the New Town Chevron agreed to
continue to manage the station after Manumitted began to operate it 1995.  (*Id.* at 10:14-21).  Mr. Chaffin

25  left Manumitted in January 2001. (*Id.* at 10:14-23).

26  DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 4

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

for both Chevron and Tesoro products.  (Olds Dep. At 202:20-203:1).  Based in Glennallen, it, like Manumitted, also established a network of Tesoro dealers, though Service Oil's network would eventually cover a broader geographic range, from Valdez to Anchorage and to Fairbanks. (Groscost Dec. at ¶7).  In late 1992 or early 1993, Service Oil established a Tesoro dealer relationship with a Valdez service station that did business as **Captain Joe's**.  The owners of Captain Joe's also operated a recreational vehicle park next to, and in conjunction with, the service station, which was located a few blocks from Manumitted's retail station.  Though Captain Joe's was buying from a wholesaler (Service Oil & Gas), and Manumitted was buying directly from Tesoro, Captain Joe's became the price leader in Valdez.  (Olds Dep. at 243:10-23).  Indeed, within a year of first operating as Service Oil's dealer, Olds estimated that Captain Joe's had captured a significant portion of the retail market in Valdez.  (Olds Dep. at 227:15-228:24; Exhibit C to Berry Dec.).

**B.    1991: In Debt to Tesoro, Manumitted files for Bankruptcy, and Tesoro Helps Manumitted to Reorganize.**

Manumitted's Tesoro distributor business never did take off.  By the end of 1989, Manumitted owed Tesoro approximately $1.8 million for fuel it had purchased; by the end of 1990, Manumitted owed Tesoro approximately $3.5 million.  (Affidavit of Fredrick J. Odsen ("Odsen Aff.") at ¶5).  The company filed a Chapter 11 bankruptcy proceeding in October 8, 1991, owing Tesoro more than $3.5 million for fuel purchases it had presumably sold but had not paid Tesoro for.  (*Id. at* ¶6)

As part of a settlement included in Manumitted's plan of reorganization in the bankruptcy proceedings, Tesoro effectively wrote off $700,000.  (Odsen Aff. at ¶¶10-11).  Under the plan, Manumitted agreed to pay a portion of the remaining debt on or before September 30, 1992, and the remainder was to be paid off over time pursuant to two separate secured promissory notes: one for $1 million that called for amortizing interest over ten years, but with a

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 5

No. A05-185CV (JKS)

M35414-820590

balloon payment at the end of five years; and the second for $600,000 would be due and payable on or before June 30, 1994. (*Id*. at ¶9) The plan also called for Manumitted to seek to sell the distributorship business to pay off the debt. (*Id*.) Apparently that is something Olds, Manumitted's president, attempted to do, but was unsuccessful. (Olds Dep. at 191:17-25). Tesoro allowed Manumitted to continue operating under the Distributor Agreement.

**C.    1995: Tesoro Assists Manumitted Again by Restructuring Manumitted's Debt to Tesoro and Helping Manumitted Acquire a New Retail Service Station Site in Valdez.**

As noted, one of the promissory notes executed by Manumitted was due on June 30, 1994. Manumitted defaulted on this obligation. (Odsen Aff. at ¶13). Olds, however, devised a plan to improve cash flow from Manumitted's operations, which he presented to Tesoro.

In 1995 Olds learned that the New Town Chevron, the gasoline station/auto repair business across the street from Manumitted's Valdez retail Tesoro station, was for sale.[3] (Olds Dep. at 239:10-15). Olds viewed the chance to acquire the station as an opportunity to eliminate a competitor (New Town Chevron), and to compromise another (Captain Joe's). As Olds noted in one of several letters to Tesoro seeking assistance for the acquisition:

> The number of in town retail locations will be reduced from three to two by the proposed acquisition. In addition I believe that there is a good chance that if the acquisition takes place, that [Manumitted] will become the distributor for Captain Joe's within a short period of time for the following reasons:

> Captain Joe's is now branded Tesoro.

_____

[3] Though the circumstances are less than clear, at least to Tesoro, it appears this station was not in fact operated by Manumitted, but by one of Manumitted's original shareholders, who operated the station under an unwritten dealer agreement with Manumitted. (Olds Dep. at 231:17-232:17). At the time, Manumitted was in the process of reacquiring the station because the dealer/former shareholder, Ken Damm, owed Manumitted for gasoline. (Olds Dep. at 232:23-233:18). Manumitted did reacquire the site, but Damm has claimed he was squeezed out so Manumitted could acquire (or because it acquired) the New Town Chevron, and has asserted a claim for $250,000 in Manumitted's bankruptcy proceedings.

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 6

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

One of the owner's of Captain Joe's has just purchased one of the two auto parts supply stores in Valdez.

Newtown is the only auto repair facility in Valdez and therefore the largest single purchaser of auto parts in Valdez. [Manumitted] also maintains a large fleet of vehicles. Neither Harbor or Newtown currently trade at this auto parts store. It seems reasonable that a mutually advantageous business arrangement can be negotiated so that Harbor can supply branded product to Captain Joe's, and Captain Joe's can supply auto parts to [Manumitted]/Newtown. If so the likelihood of future price wars would be greatly reduced.

(Exhibit D to Berry Dec.; Olds Dep. at 241:7-242:3). Manumitted, however, did not have the money (or credit) to acquire the station. Olds managed to persuade Tesoro to do it for him. (Olds Dep. at 240:1-4; 253:10-17). He also persuaded Tesoro to forgive Manumitted's default on the note that was due in June 1994, and to restructure Manumitted's debt by consolidating the outstanding balance of Manumitted's two notes and combining the debt to a single note that would be due on January 1, 1998. (Odsen Aff. at ¶¶13-14)

In May 1995, Tesoro paid $550,000 to acquire the New Town Chevron from the Chaffin family for Olds and Manumitted. (Chaffin Dep. at 18:9-19:2; Exhibit K to Berry Dec.). Under the purchase and sale agreement, Tesoro agreed to assume responsibility for environmental contamination to the property, including the contamination from a spill that had taken place while the facility was owned and operated by the Chaffins. (Chaffin Dep. at 19:3-7). Following the acquisition, Tesoro provided and paid to install its Traditional Tesoro Alaska trade dress at the facility; it also paid for capital improvements to the facility, including new dispensers, new fuel lines, and corrosion protection for the facility's fuel tanks. (Olds Dep. at 255:7-256:11). Tesoro then leased the facility to Manumitted under a lease that granted Manumitted the option to purchase the property. (Olds Dep. at 257:9-18). Under the lease, all lease payments would be applied to the purchase price should Manumitted exercise its option.

By gaining control of the Chaffin's site, Manumitted was able to eliminate the New Town Chevron as a retail competitor. It was unable, however, to sell the old station site (as Olds

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 7

No. A05-185CV (JKS)

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

had hoped to do to pay off debt). Manumitted's distributorship was also unable to secure Captain Joe's business, which continued to receive its gasoline from Service Oil & Gas. Indeed, in 2003, the owners of Captain Joe's made improvements to their gas station, which Manumitted claims resulted in additional fuel sales by Captain Joe's (and purchases from Service Oil & Gas) that reduced Manumitted's market share. These improvements by the owners of Captain Joe's provide the lynchpin of Manumitted's claim that Tesoro violated a duty of good faith and its claim that Tesoro violated the Alaska Unfair Trade Practices and Consumer protection Act. The facts relating to this are therefore discussed below in connection with Tesoro's analysis of these claims.

**D.    1998:  Manumitted Again Defaults on Its Obligations to Tesoro, and the Parties Negotiate For More Than a Year to Resolve Manumitted's Debt to Tesoro.**

The amended promissory note (which represented the unpaid amount still due Tesoro from Manumitted's original 1991 bankruptcy) came due in January 1998. (Odsen Aff. at ¶16). Manumitted defaulted on the note, and by January 1998, it had amassed a new debt to Tesoro for unpaid fuel purchases of approximately $1.5 million. (Odsen Aff. at ¶¶16-17; *see,* Settlement and Conveyance Agreement, Exhibit A to Odsen Aff. at ¶8).

Tesoro declared Manumitted in default in February, 1998, and thereafter, Manumitted and its counsel, and Tesoro, and its counsel, began a long period of negotiations regarding a work out plan for Manumitted's debt. (Odsen Aff. at ¶17; Olds Dep. at 283:20-284:3; 286:7-23). These negotiations lasted for approximately one year, involving the exchange of various drafts of settlement documents between counsel, resulting eventually, in the execution of a series of related and voluminous agreements dated April 23, 1999 between Manumitted, Olds, Tesoro, and Service Oil & Gas. (Odsen Aff. at ¶18).

These Agreements are far too extensive and voluminous to summarize in any detail here. In essence, however, under or as a result of these Agreements:

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 8

No. A05-185CV (JKS)

M35414-820590

- Tesoro released Manumitted of its debt, and each party released the other of any claim arising before the date of the agreements;

- Manumitted relinquished its Tesoro distributor business and its propane distribution businesses. These assets were sold, either directly or through Tesoro, to Service Oil & Gas.[4]  Manumitted also entered into a separate Covenant Not to Compete with Service Oil & Gas.

- Tesoro conveyed to Manumitted ownership of the Valdez retail site it was operating under a lease with Tesoro (the former New Town Chevron site).  Manumitted agreed to operate this site as a branded Tesoro location under a new Dealer Agreement with Tesoro, and Tesoro agreed to indemnify Manumitted from any environmental liability for any contamination existing before April 1999 (*i.e.* contamination occurring by New Town Chevron or by Manumitted under its lease/purchase agreement with Tesoro); this indemnity was not assignable or transferable by Manumitted.

- Manumitted entered into a new Promissory Note of $570,914.92.  This amount represented the outstanding balance under the 1995 amended promissory note, and thus represented the outstanding balance of the debt Manumitted still owed Tesoro from Manumitted's original bankruptcy.  The new Note was secured by a deed of trust on the Valdez retail site, and by Olds' personal guaranty.

(Odsen Aff. at ¶18; *See, e.g.,* Exhibit A to Odsen Aff. (Settlement and Conveyance Agreement); Exhibit E to Berry Dec. (Dealer Agreement); Exhibit F to Berry Dec. (Mutual Release Agreement); Exhibit G to Berry Dec. (Lease Termination Agreement); Exhibit H to Berry Dec., (Deed of Trust and Assignment of Rents); Exhibit I to Berry Dec. (Mutual Hazardous Materials Indemnity Agreement); and Exhibit B to Odsen Aff. (Covenant Not to Compete).

---

[4] As a result of the transfer of assets and the forgiveness of debt, Manumitted realized several hundreds of thousands of dollars of "debt relief income" (*i.e.,* the amount by which the amount of the debt forgiven exceeded the value of the assets transferred).  (Olds Dep. at 296:14-297:5;  367:3-13).  To avoid paying taxes on the debt relief income, Manumitted authorized and booked a deferred compensation debt of $765,000 to Olds.  (*Id.* at 366:20-367:13).

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 9

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

**E.    2003: Tesoro Terminates Its Dealer Agreement With Manumitted After Manumitted Is Caught Buying Unbranded Gasoline and Selling It to Its Customers as Tesoro Branded Motor Fuel.**

By the Fall of 2003, Manumitted was again short of cash.  Payments to Tesoro for fuel payments were returned by Manumitted's bank for insufficient funds, and Manumitted was placed on COD, requiring Manumitted to pay Tesoro for fuel before Tesoro would deliver it to Manumitted.  (Groscost Dec. at ¶13).  Manumitted actually stopped buying gasoline from Tesoro in September 2003.  (*Id.*).  Soon thereafter, Tesoro was barred under Alaska law from delivering fuel to Manumitted's facility in any event, since Manumitted had not paid as of January 1, 2003 its annual tank registration fees with the Alaska Department of Environmental Conservation, and had failed to complete a third-party inspection of its underground storage tanks by October 2003.  (*See,* Letter from Alaska Attorney General's Office to Manumitted Companies, Exhibit L to Berry Dec.

This did not stop Manumitted from selling gasoline at its station, however.  Sometime in 2003, it began to buy on credit non-Tesoro gasoline from a third party, though it continued to represent and to sell this motor fuel to the public as Tesoro branded motor fuel.  (Olds Dep. at 218:11-219:3).  Such conduct was in direct violation of the Dealer Agreement, which required Manumitted to purchase motor fuel only from Tesoro, and prohibited Manumitted from "selling under Tesoro's brand any products other than Tesoro products, or any mixture or adulteration of any Tesoro products with each other or with any other product or material.  (Exhibit E to Berry Dec. at ¶4; *see also,* ¶22(a)).  Manumitted's misbranding resulted in a warning letter from Tesoro to Manumitted on November 13, 2003.  (Groscost Dec. at ¶13; Exhibit A to Groscost Dec.).  With Manumitted having ceased to purchase gasoline from Tesoro, and now in default of its obligations to Tesoro under its Promissory Note, Tesoro terminated its Dealer Agreement with

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 10

No. A05-185CV (JKS)

M35414-820590

Manumitted by notice dated May 28, 2004 based on Manumitted's misbranding of motor fuels.[5] (Groscost Dec. at ¶13, Exhibit B to Groscost Dec.). Tesoro initiated foreclosure proceedings on its deed of trust for the Valdez station. (Odsen Aff. at ¶23)

**F.    Manumitted Again Files For Bankruptcy, and Files the Instant Lawsuit Against Tesoro.**

On November 29, 2004, Manumitted again filed for Chapter 11 protection. (Odsen Aff. at ¶23)  Manumitted filed the instant action against Tesoro on August 4, 2005.  In its initial complaint, and again in a recent amended pleading, Manumitted has asserted numerous claims based on many separate legal theories.

While Tesoro regards all of Manumitted's vague and conclusory claims as meritless, there are simply too many claims, covering too many issues, to deal with in a single dispositive motion. Tesoro therefore plans to address each (or at least most) of Manumitted's claims in bite-sized motions.  The instant motion addresses three of Manumitted's claims:  (1) That Tesoro violated the Robinson Patman Act by allegedly selling gasoline to Service Oil & Gas for less than it sold it to Manumitted's Valdez service station; (2) That Tesoro violated the implied covenant of good faith by not stopping the owners of Captain Joe's from making improvements to their service station and recreational vehicle park in 2003; and (3) That Tesoro violated Alaska's Unfair Trade Practices and Consumer Protection Act by allowing Captain Joes to use trade dress other than Tesoro's traditional Tesoro Alaska trade dress as part of its 2003 project.

---

[5] Misbranding is not only a violation of the Dealer Agreement, it is also grounds for termination of the Agreement under the Petroleum Marketing Practices Act, which authorizes termination for "willful adulteration, mislabeling or misbranding of motor fuels or other trademark violations by the franchisee." 15 U.S.C. §2802(c)(10).  *See, Chevron v. Martin V. Finn*, 851 F.2d 12227 (9th Cir. 1988); *Wisser Co., Inc. v. Mobil Oil Corp.*, 730 F.2d 54 (2nd Cir. 1984); *Texaco Puerto Rico, Inc. v. Medina*, 834 F.2d 242 (1st Cir. 1987); *JFC Investors, Ltd. v. Gulf Products*, 608 F. Supp. 1136 (W.D.N.C. 1985).

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 11

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1

2

### III. LEGAL ARGUMENT

**A.    Manumitted's Robinson Patman Act Is Without Merit And Should Be Dismissed.**

3    Manumitted claims that Tesoro's gasoline sales to Manumitted violated Section 2(a) of

4    the Clayton Act, as amended by the Robinson Patman Act, 15 U.S.C. §13(a).[6]  Manumitted's

5    complaint alleges that Tesoro sold gasoline to Manumitted at higher prices than it charged

6    Service Oil & Gas (Amended Complaint at ¶102), but plaintiff's claim rests on the unstated, but

7    nonetheless essential, assumptions that (1) any price advantage provided to Service Oil & Gas

8    was not a proper "functional discount;"[7] (2) that Service Oil & Gas in fact passed on its

9    discounts to its customer, Captain Joe's and Tesoro had knowledge that this was the case;[8] and

10

11    [6] Section 2(a) of the Robinson Patman Act, 15 U.S.C. §13(a), provides in relevant part as follows:

12    It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or any of the purchases involved in such discrimination are in commerce, where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or prevent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: . . .

13

14

15

16

17    [7] After 1999, Manumitted and Service Oil & Gas did not directly compete with each other.  Rather, Manumitted was a retailer and Service Oil & Gas was a wholesaler (jobber) that performed various functions that Manumitted no longer performed.  (*See,* Groscost Dec. at ¶¶4, 7).  A manufacturer is generally permitted to use price differentials, or functional discounts, to compensate certain classes of buyers for the distribution services they perform.  *FTC v. Morton Salt Co.,* 334 U.S. 37, 43-44 (1948).  "For this reason, goods may generally be sold to wholesalers at a lower price than that charged to retailers."  *Hasbrouck v. Texaco, Inc.,* 842 F.2d 1034, 1039 (9th Cir. 1987), *modified and aff'd,* 496 U.S. 543 (1990).  A price differential given to a wholesaler is only improper if the plaintiff can prove that discount given is a subterfuge; that is, that the amount of the discount is not roughly comparable to the value or cost of the services performed by the wholesaler.  *Hasbrouck v. Texaco,* 496 U.S. at 560-61. Manumitted bears the burden of proving the absence of a lawful "functional discount."  XIV H. Hovenkamp, ANTITRUST LAW ¶2333 at 124 (2nd ed. 2006).

18

19

20

21

22

23    [8] Manumitted's claim is commonly referred to as a "third-line" claim, where the plaintiff does not directly compete with the favored customer (Service Oil & Gas), but alleges that it competes with the customer of the favored customer (Captain Joe's).  XIV H. Hovenkamp, ANTITRUST LAW ¶2334 at 126.  Though third-line Robinson Patman cases are rare, the gravamen of the claim is that the wholesaler has obtained an unlawful discount that is passed on to the retailer that competes with the plaintiff, causing competitive injury.  *Id.*  In such cases, however, the price causing the alleged injury is not charged by the defendant,

24

25

26

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 12

No. A05-185CV (JKS)

M35414-820590

(3) Manumitted was unable to compete with Captain Joe's because of the disparity between the price Manumitted paid Tesoro and the price Captain Joe's paid to Service Oil & Gas for gasoline. Manumitted cannot support any of these essential assumptions with admissible evidence.

Manumitted's Robinson Patman claim is flawed for another reason as well. To maintain a claim under the Robinson Patman Act, Manumitted must satisfy the Act's stringent "in commerce." requirement. *Gulf Oil Corp .v. Copp Paving Co.,* 419 U.S. 186 (1974); *McCallum v. City of Athens, Ga.*, 976 F.2d 649, 657-58 (11th Cir.1992); *Littlejohn v. Shell Oil Co.*, 483 F.2d 1140, 1144 (5th Cir.1973) (*en banc*) ("The language of the Act-requiring discriminatory sales be 'in commerce'-is far narrower in scope than the 'effect on commerce' test applicable under the Sherman Antitrust Act."). To satisfy this requirement, Manumitted must prove that at least one of the allegedly discriminatory sales made to Service Oil & Gas actually crossed a state boundary:

> In *Gulf Oil Corp. v. Copp Paving Co.,* 419 U.S. 186 (1974), the Supreme Court reconfirmed that the goods in at least one of the sales being compared to establish a price discrimination must cross a state line. This is a threshold requirement to meet the jurisdictional mandate of the in commerce clause in Section 2(a) . . .
>
> Thus, where the seller and its customers in the compared sales are all situated in the same state, the seller generally cannot be liable under Section 2(a). Accordingly, a multiplant manufacturer is free of liability in cases where all of the compared sales are made to customers in the same state as the manufacturer's supplying plant. It does not matter that the manufacturer's other plants or noncompared sales are involved in interstate transactions; the sales used to

but by the defendant's customer. As such, to prevail in such a case, the plaintiff must prove that the defendant had some reason to know that its lower wholesale prices were being passed on to the competing retailer. *Id.* at 128; *Standard Oil Col. v. FTC,* 41 FTC 263 (1945), *modified & aff'd,* 173 F.2d 210 (7th Cir. 1949), *rev'd on other grounds,* 340 U.S. 231 (1951); *Standard Oil Co. v. Perkins,* 395 U.S. 642, 649 (1969). Here, there is no evidence that any discount given to Service Oil & Gas was actually passed on to Captain Joe's. It is in any event clear that Tesoro had no knowledge what prices Service Oil & Gas was charging to Captain Joe's. (Groscost Dec. at ¶9).

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 13

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

establish the in commerce requirement must be the same sales challenged as discriminatory.

1 ABA SECTION OF ANTITRUST LAW, ANTITRUST DEVELOPMENTS 456-57 (5th ed. 2002) at 456-57.[9]

Here, Manumitted simply cannot satisfy this "in commerce" requirement. Tesoro produces gasoline from its Kenai refinery, and all of its sales to both Manumitted and Service Oil & Gas originated from Anchorage. (Groscost Dec. at ¶4). With respect to sales to Service Oil & Gas, Service Oil & Gas took delivery of all gasoline at the terminal in Anchorage, and, with respect to sales to Manumitted, all gasoline was shipped directly to Valdez from Anchorage. (Id.). Manumitted's president, Ben Olds, has testified that he has no reason to believe that any gasoline sold to either Manumitted or Service Oil & Gas was not produced in Alaska and sold from Alaska. (Olds Dep. at 321:10-21). Indeed, Manumitted's Dealer Agreement with Tesoro itself contemplated that all sales to Manumitted would originate from Alaska, providing in part as follows:

> Tesoro is an independent refiner of a wide variety of high quality petroleum products <u>at its refining facilities located in the state of Alaska</u>. <u>As an in-state refiner</u> Tesoro is uniquely qualified to provide the citizens of Alaska with a dependable supply of quality products.

(Dealer Agreement §1, Exhibit E to Berry Dec.) (Emphasis added).

Tesoro did not unlawfully discriminate in the prices it charged Manumitted and Service Oil & Gas for gasoline. But even if Tesoro had provided advantageous pricing to Service Oil & Gas, Tesoro did not, as a matter of law, violate the Robinson Patman Act because Manumitted

---

[9] *See also, Charlie's Towing & Recovery, Inc. v. Jefferson County,* 183 F.3d 524 (6th Cir. 1999); *Coastal Fuels of Puerto Rico, Inc. v. Caribbean Petroleum Corp.,* 79 F.3rd 182, 189 (1st Cir.) *cert. denied,* 519 U.S. 927 (1996) ("For a transaction to qualify, the product at issue must physically cross a state boundary in either the sale to the favored buyer or the sale to the buyer allegedly discriminated against."); *Bacon v. Texaco, Inc.,* 503 F.2d 946, 948 (5th Cir. 1974); *Chawla v. Shell Oil Col.,* 75 F. Supp.2d 626, 646 (S.D. Tex. 1999); *Taggart v. Rutledge,* 657 F. Supp. 1420, 1438-40 (D. Mont. 1987) *aff'd without opinion,* 852 F.2d 1290 (9th Cir. 1988); *Able Sales Company, Inc. v. Compania de Azucar de Puerto Rico,* 406 F.3d 56 (1st Cir. 2005).

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 14

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

cannot demonstrate that any sale either to Service Oil & Gas or to Manumitted was "in commerce." The fact that all Tesoro's sales to Manumitted and Service Oil & Gas originated from and ended in Alaska necessarily means that Manumitted's Robinson Patman Act claim must be dismissed.

**B.    Manumitted's Claims That Tesoro Violated A Duty Of Good Faith In Connection With The Improvements Made To Captain Joe's Are Without Merit.**

In the Spring of 2003, the owners of Captain Joe's completed a number of improvements to their gasoline stations and RV park. These improvements included a new convenience store, new gasoline pumps and tanks, a new canopy over the new gasoline island, and other improvements to the RV park facilities. (Declaration of Jeff Evans ("Evans Dec.") at ¶5). Tesoro had no involvement with this project. (*Id.*; Groscost Dec. at ¶11) It had no direct relationship with Captain Joe's; instead its relationship was with its gasoline supplier, Service Oil & Gas, and, under Tesoro's contract with Service Oil & Gas, Tesoro had no right to tell Service Oil & Gas that any of its dealers could not improve their facilities. (Groscost Dec. ¶¶6-7). Tesoro's only involvement with the project was that it sold to Service Oil & Gas the trade dress items that Service Oil & Gas provided to the facility.[10] (*Id.* at ¶11; Evans Dec. at ¶6).

Tesoro was then in the early stages of introducing a non-traditional trade dress for its branded facilities.[11] Because Tesoro did not have in stock any of its traditional Tesoro Alaska

---

[10] Traditionally, Tesoro had supplied the trade dress to a jobber's dealers, as it had done for Manumitted when it opened its new facility in Valdez and for other of its dealer facilities when Manumitted was a jobber. (Olds Dep. at 208:4-209:7; 255:7-256:4). However, because Tesoro was experiencing its own cash crunch in 2003, for the Captain Joe's facility, it required Service Oil & Gas to purchase these trade dress items. (Groscost Dec. at ¶11). It did, however, agree to reimburse Service Oil & Gas for the cost of the trade dress items so long as Captain Joe's remained a dealer in good standing by paying a capped quarterly rebate for four years equal to one and a half cents of each gallon of Tesoro fuel Service Oil & Gas sold to Captain Joe's. The total rebates could not exceed $54,724, and Service Oil & Gas could not claim more than $13,681 in rebates during any calendar year. (*Id.*).

[11] Traditionally, Tesoro has used a unique Tesoro Alaska look that still is used at most independent dealer facilities in Alaska. The following picture depicts a current example of the Tesoro Alaska trade dress

---

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 15

No. A05-185CV (JKS)

M35414-820590

trade dress items (and did not want to pay for the production of new items), it sold Service Oil & Gas items incorporating the non-traditional trade dress left over from a project in California. (Groscost Dec. ¶12). The pictures below show the Captain Joe's fueling facilities before and after the improvements were completed in April 2003:



Captain Joe's Before 2003



(*See* Declaration of Don Reese ("Reese Dec.") at ¶4). Tesoro's long term plan is to have a common look for all Tesoro branded outlets, whether in Alaska or in the other States in which Tesoro does business, but Tesoro has been slow to implement the change in Alaska because of Alaska consumers' familiarity with the traditional trade dress and the millions Tesoro has spent over the years to promote its traditional look. (*Id.* at ¶5).

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 16

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

Captain Joe's After April 2003

(Evans Dec. at ¶3). Had Manumitted desired the non-traditional trade dress for its facility, Tesoro would have made it available to Manumitted on the same terms Tesoro provided it to Service Oil & Gas. (Groscost Dec. at ¶12). Manumitted, however, made no request to re-image his facility, or even any complaint regarding Captain Joe's use of the non-traditional trade dress. (Groscost Dec. at ¶12; Evans Dec. at ¶2; Olds Dep. at 173:8-174:14). This was hardly surprising. Only _three_ of Tesoro's independent dealers in Alaska used the modified style of trade dress as of 2003 (including Captain Joe's), and the number is not appreciably greater now – the total is only four as of January 1, 2007. (Reese Dec. at ¶6). This is largely because Tesoro's jobbers and dealers do not want to incur the capital cost to change or because they would rather utilize the traditional trade dress that is more familiar to Alaska consumers. (Groscost Dec. at ¶12)

Manumitted claims that Tesoro violated a duty of good faith by allowing Captain Joe's to make improvements to its facility, and by allowing Captain Joe's to utilize Tesoro's modified

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 17

No. A05-185CV (JKS)

M35414-820590

form of trade dress.  This theory assumes that the improved Captain Joe's became a more effective competitor, and that the duty of good faith required Tesoro to protect Manumitted from additional competition, even if doing so came at the expense of Captain Joe's or Service Oil & Gas or in derogation of Tesoro's contractual obligations to Service Oil & Gas.

It is a universally recognized principle of contract law that the duty of good faith and fair dealing cannot be applied to over-ride the express terms of a contract.  *See, e.g., Ramsey v. City of Sand Point*, 936 P.2d 126 (Alaska 1997) (Duty of good faith cannot be interpreted to prohibit what is expressly permitted by the parties' contract); *Casey v. Semco Energy, Inc..,* 92 P.3d 379 (Alaska 2004) (The covenant of good faith and fair dealing will not create a duty where one does not exist, does not allow a court to rewrite the parties' contract, and cannot be interpreted to permit what is expressly prohibited by the contract).  The fundamental problem with Manumitted's good faith claim, however, is that it is at odds with the express terms of its contracts with Tesoro.  By their express terms, the 1999 contracts between Manumitted and Tesoro did not protect Manumitted from competition from Captain Joe's, and did not restrict Tesoro from selling its products to any party in any area.

Specifically, Section 6 of Manumitted's 1999 Dealer Agreement provides in part as follows:

> Nothing in this Agreement shall be construed as a grant of any exclusive territory to [Manumitted] for the marketing of any Tesoro products, or as a restriction upon the right of Tesoro to market its products to any purchasers in any area.

(Dealer Agreement, Exhibit E to Berry Dec. at §6).  Of course, Captain Joe's existed as a retailer of Tesoro motor fuels and as a competitor of Manumitted's in Valdez <u>before</u> Manumitted began operating its new Valdez service station in 1995, and <u>before</u> it entered into the Dealer Agreement in 1999.  Olds certainly understood that §6 of the Dealer Agreement did not in any way restrict Tesoro from expanding operations in Valdez, and for this reason he attempted to negotiate

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 18

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

additional territorial protection as part of its 1999 agreements with Tesoro. (Olds Dep. at 331:12-22; 303:1-307:7). At its request, Manumitted was able to negotiate a limited territorial protection in Section 17 of the parties' Settlement and Conveyance Agreement, which prevents Tesoro from constructing or operating a Tesoro retail service station, but only across the street on Manumitted's former Valdez facility.[12] (Exhibit A to Odsen Aff. at §17). Manumitted sought greater territorial protection in its negotiations with Tesoro, but simply was unable to achieve any further contractual concessions. (Olds Dep. at 303:1-307:7).

The increased competition Manumitted allegedly faced from the improved Captain Joe's was not the result of any decision Tesoro made, and, other than to sell trade dress to Service Oil & Gas, Tesoro had no involvement whatsoever in the project. Indeed, Tesoro had no contractual relationship with Captain Joe's, and under its contract with Service Oil & Gas, it had no contractual right to prevent Service Oil & Gas (or any of its dealers) from making capital improvements to any dealer facility. (Groscost Dec. at ¶7). And there is nothing of record to suggest Captain Joe's would not have made its improvements had it not received the non-traditional Tesoro trade dress from Service Oil & Gas (in fact, Tesoro sold the non-traditional trade dress to Service Oil & Gas only because it did not have in stock the appropriate traditional trade dress). (Groscost Dec. at ¶12; Evans Dec. at ¶7). And there is certainly nothing of record to suggest Captain Joe's would not have made its improvements quite apart from whether it

---

[12] Section 17 provides:

> 17. Covenant Against Competing Tesoro Retail Service Station at Old Station Property. [Tesoro] agrees that it will not construct or operate a Tesoro retail service station on the Old Station Property so long as [Manumitted] or [Olds] . . . are (1) actively operating the Valdez Tesoro Station as a Tesoro branded retail fuel dealer or distributor and (b) [sic] are in full compliance with any agreements between any such parties and Tesoro Alaska Company or its successors and assigns.

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 19

No. A05-185CV (JKS)

GRAHAM & DUNN PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

received Tesoro's trade dress of any style, and that it would not have been as competitive had it done business under another brand.

Nonetheless, even had Tesoro actively promoted and assisted the Captain Joe's development, Manumitted's contracts with Tesoro did not protect Manumitted from competition from any Tesoro dealer (other than across the street at Manumitted's former facility), and expressly allowed Tesoro to establish new outlets in any area. There have been numerous claims by franchisees and dealers claiming that the implied covenant of good faith prevents their franchisor or manufacturer from competing with their outlets. The weight of authority is overwhelming that a franchisor or manufacturer does not violate the implied duty of good faith as a matter of law where, as here, the franchise or dealership agreement does not grant the plaintiff an exclusive territory and, especially, reserves to the franchisor or manufacturer the right to sell anywhere. *See, e.g., Domed Stadium Hotel, Inc. v. Holiday Inns, Inc.,* 732 F.2d 480 (5th Cir. 1984) (Where franchise agreement allowed franchisor to construct and operate a new hotel anywhere, franchisor did not violate duty of good faith by converting a hotel near plaintiff's hotel to a Holiday Inn hotel; a party cannot violate the duty of good faith by exercising a contractual right); *John Keenan Company, Inc. v. Norrell Corp.,* 2001 U.S. Dist. LEXIS, Bus Franchise Guide (CCH) ¶12,148 (E.D. La. 2001) (Franchisor did not violate duty of good faith by opening competing outlet under a different name in plaintiff's territory because franchise agreement's exclusivity provision applied only to outlets operated under the Norrell name; the franchisor could not violate the duty of good faith by exercising a contractual right).; *Cook v. Little Caesar's Enterprises, Inc.,* 972 F. Supp. 400, 409 (E.D. Mich. 1997) (where agreement expressly reserved franchisor's right to grant franchises outside of one-mile exclusive territory, location of franchises outside of one-mile radius could not violate the duty of good faith and fair dealing); *Payne v. McDonald's Corp.*, 957 F. Supp. 749, 757-58 (D. Md. 1997) (where franchise

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 20

No. A05-185CV (JKS)

M35414-820590

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

agreement provided no territorial protection to franchisee, opening of new franchises could not violate duty of good faith and fair dealing); *Barnes v. Burger King Corp.*, 932 F. Supp. 1420, 1440 (S.D. Fla. 1996) (where franchise agreement expressly allowed franchisor to open new restaurants, exercise of that right could not violate duty of good faith and fair dealing); *SuperValu Stores, Inc. v. D-Mart Food Stores, Inc.*, 431 N.W.2d 721, 725-26 (Wis. App.) (where agreement expressly authorized franchisor to grant new franchises without restriction, such grants could not breach duty of good faith and fair dealing), *review denied*, 436 N.W.2d 29 (1988); *Patel v. Dunkin' Donuts of America, Inc.*, 496 N.E.2d 1159, 1160-61 (Ill. App. 1986) (Where agreement authorized franchisor to grant new franchises anywhere at its discretion, exercise of that authority could not breach duty of good faith and fair dealing); *Clark v. America's Favorite Chicken Co.*, 110 F.3d 295, 297-98 (5th Cir. 1997) (Where franchise agreement authorized franchisor to open competing franchises under different name, such action could not violate duty of good faith and fair dealing); *Goodyear Tire & Rubber Co. v. Whiteman Tire Co.*, 86 Wash. App. 732, 935 P.2d 628 (Div. III 1997), *review denied*, 133 Wash.2d 1033 (1998) (Where dealership agreement did not grant exclusive territory to dealer and reserved to the manufacturer the right to establish new outlets anywhere, the manufacturer did not violate duty of good faith as a matter of law.  Further, the dealer could not have reasonably relied on assurances from the manufacturer that it would not compete with the dealer where the assurances were contrary to the language of the dealership agreement); *Vicorp Restaurants, Inc. v. Village Inn Pancake House of Albuquerque, Inc.,* Bus Franchise Guide (CCH) ¶10,994 (D. N.M. 1996) (Citing the numerous franchise cases that have rejected good faith franchise encroachment claims, the court held that the implied covenant of good faith could not be employed to nullify or contradict the express terms of a contract or to inject substantive terms into the parties' agreement, and thus the franchisor was free to establish additional outlets adjacent to the franchisee's exclusive territory).

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 21

No. A05-185CV (JKS)

M35414-820590

These cases from other jurisdictions are all consistent with Alaska law.  Alaska, like most all other jurisdictions, recognizes that the covenant of good faith and fair dealing is implied in all contracts in Alaska.  *Ellingstad v. State, Dep't of Natural Res.*, 979 P.2d 1000, 1009 (Alaska 1999).  However, the covenant of good faith does not create an enforceable legal duty to be nice or to behave decently.  *United Airlines, Inc. v. Good Taste, Inc*., 982 P.2d 1259 (Alaska 1999.) It does not itself create a duty where one does not exist.  *Casey v. Semco Energy, Inc..,* 92 P.3d 379 (Alaska 2004).  And it does not allow a court to rewrite the parties' contract. *Id.*  Rather, the implied covenant of good faith exists only to effectuate, but not to alter, the parties' reasonable contractual expectations.  *Era Aviation, Inc. v. Seekins*, 973 P.2d 1137 (Alaska 1999).  As such, the implied covenant cannot override the express terms of the parties' contract.  *United Airlines, Inc. v. Good Taste, Inc*., 982 P.2d 1259 (Alaska 1999).  It therefore cannot prohibit what is expressly permitted by the contract, nor can it prohibit what the contract expressly permits. *Casey v. Semco*, *supra.*; *Ramsey v. City of Sand Point, supra.; Era Aviation, Inc, supra.*

Here, Manumitted's contracts with Tesoro gave it no protection from competition from Tesoro or from any Tesoro dealer, other than from competition at Manumitted's former location. At worst Tesoro has done no more than exercise its right to sell its products to anyone in any area other than at the location Manumitted formerly operated as a Tesoro station.  The duty of good faith cannot be applied to over-ride that express authorization.  Even if Tesoro took an active role in making Captain Joe's a more effective competitor (which it did not), its conduct, consistent with the express terms of its extensively negotiated contracts with Manumitted, cannot constitute a violation of the duty of good faith as a matter of law.  Manumitted claims that Tesoro breached the duty of good faith by aiding the establishment of an improved and more competitive Captain Joe's service station should be dismissed.

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 22

No. A05-185CV (JKS)

M35414-820590

**C.    Tesoro Did Not Violate the Alaska Unfair Trade Practices And Consumer Protection Act By "Allowing" Captain Joe's to Use Tesoro's Non-Traditional Trade Dress.**

Manumitted's Complaint claims that Tesoro "forced" Manumitted to utilize Tesoro's traditional Tesoro Alaska trade dress, while "supporting" and allowing Captain Joe's to utilize Tesoro's non-traditional trade dress.   This, Manumitted claims, violated Alaska's Unfair Trade Practices and Consumer Protection Act ("UFTPCA"), AS 45.50.471(a), (b)(3), and (b)(11), which provide as follows:

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful.

(b) The terms "unfair methods of competition" and "unfair or deceptive acts or practices" include, but are not limited to, the following acts:

(3) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services;

(11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and which misleads, deceives or damages a buyer or a competitor in connection with the sale or advertisement of goods or services;

In the first instance, this claim rests on two false factual assumptions: 1) that Manumitted was "required" to use Tesoro's traditional Tesoro Alaska trade dress – the trade dress that Tesoro paid for and installed for Manumitted when Tesoro acquired the facility in 1995, and 2) that use of Tesoro's traditional trade dress caused "potential customers [to] question[ed] whether Manumitted's station with older symbols and trade dress was selling gas of similar quality or was in danger of shut down [sic] . . "  Amended Complaint at ¶97.  Both assumptions are false, or at least wholly unsupported by any evidence.

As earlier discussed, Manumitted was not "required" to use Tesoro's traditional trade dress.  Had Manumitted desired the non-traditional trade dress, it needed only to ask, and it would have been provided the non-traditional trade dress on the same terms as provided to

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 23

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

1   Service Oil & Gas.  Manumitted never asked, and, indeed, never voiced any complaint or

2   concern about Captain Joe's use of the modified, untraditional, Tesoro trade dress.

3        Manumitted's assertion that somehow potential customers viewed its service station and

4   auto repair business less favorably because it was using the traditional trade dress is without any

5   factual support.  The overwhelming majority of Tesoro stations in Alaska were using (and still

6   are using) the traditional trade dress Manumitted was using.  It simply defies common sense to

7   suggest that a potential Tesoro customer would view less favorably a service station that utilizes

8   the trade dress used by most Alaska Tesoro stations and long identified with Tesoro.  Indeed, the

9   concern that customers may not identify the non-traditional trade dress with Tesoro is one of the

10  reasons jobbers and their dealers in Alaska have been slow to switch to Tesoro's non-traditional

11  trade dress.

12       Manumitted's claim is as flawed legally as it is factually.  The sections of the UFTPCA

13  that Manumitted points to are intended to address customer confusion resulting from traditional

14  unfair competition or trademark infringement, where customers are falsely lead to believe that

15  one person's goods or services are supplied by or affiliated with one company because of

16  another persons infringement of or use of a confusingly similar trademark or advertising.  *See*

17  *generally,* 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION,

18  §23 (4th ed.); RESTATEMENT, UNFAIR COMPETITION §§19-27; *Bonito Boats, Inc. v. Thunder*

19  *Craft Boats, Inc.,* 489 U.S. 141 (1989) ("The law of unfair competition has at its roots in the

20  common-law tort of deceit; its general concern is with protecting consumers from confusion as

21  to source.")  Specifically, the UFTPCA is patterned on the Uniform Deceptive Trade Practices

22  Act, and should therefore be construed in light of the Acts purpose -- to prohibit the use of

23  misleading trade identification or false or deceptive advertising related to the source of products

24  or services.  Tesoro has not engaged in any false or deceptive advertising because there is no

25  likelihood of confusion as to the source of the product.  Second, Tesoro's use of the non-

26  DEFENDANT'S MOTION
    FOR PARTIAL SUMMARY JUDGMENT -- 24

    No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

traditional trade dress cannot be misleading because it owns both marks, and as a licensee of the Tesoro trademark, Manumitted has no rights as against the licensor.

With its genesis in the Uniform Act, the Alaska Statute incorporates much of the Act's language,[13] and should be construed in light of the Act's purpose. The drafters of the Uniform Act indicated that the Act applied to deceptive trade practices that can be subdivided into conduct involving either 1) false or deceptive advertising; or 2) misleading trade identification. UNIFORM DECEPTIVE TRADE PRACTICES ACT, PREFATORY NOTE (rev. ed. 1966). False or deceptive advertising relates to conduct that is intended to deceive consumers as to the source of a particular product. Misleading trade identification relates to trademark law and the similarity of related marks.

First, although the courts have not closely scrutinized "deceptive practices" under Alaska's version of the Uniform Act, other states adopting the Uniform Act's language have discussed the issue. For example, in *Carrington v. Sears, Roebuck & Co.,* 683 P.2d 1220, 1225 (Haw. Ct. App. 1984), the Hawaii Court of Appeals interpreted that state's unfair practices statute, which was also modeled after the Uniform Act. The court held that the "likelihood of confusion" test was determinative of whether a trade practice is deceptive. *Id.* A likelihood of confusion exists when consumers confronted with products or services bearing one label or mark would be likely to assume that the source of the products or services is the same or associated

---

[13] For example, Alaska Stat. § 45.50.471(b)(3), although combining the language of §§ 2(a)(2) and (2)(a)(3) of the Uniform Act, uses identical language to describe likelihood of confusion as an unfair or deceptive act. *See also Western Star Trucks, Inc. v. Big Iron Equip. Serv. Inc.*, 101 P.3d 1047, 1052-53 (Alaska 2004) ("The model legislation mentioned in the [Alaska House Judiciary] committee report is not further identified, but the prohibitions of the [Alaska Unfair Trade Practices Act] closely resemble those in the Uniform Deceptive Trade Practices Act…"). However, the state legislature did not adopt the act in its entirety, changing some sections and adding entirely new ones. *See* Alaska Stat. §45.50.471(b)(11) (changing language from original Uniform Act to require actual confusion or damage for any "other conduct creating a likelihood of confusion."); *See also id.* at (b)(12), (b)(14) (adding deceptive acts not enumerated in the Uniform Act).

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 25

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

with the source of a different product or service identified by a similar mark. *Id.* The court concluded that the there was no deceptive trade practice where there was no likelihood of confusion between two products bearing the same or similar marks. *Id.* Similarly, in *Anderson v. Reward Corp.,* 482 N.W.2d 815, 820 (Minn. Ct. App. 1992), the Minnesota Court of Appeals interpreted that state's statute patterned after the Uniform Act. The court held that a corporate name is deceptively similar to the name of another business only if the similarity tends to deceive the ordinary purchaser as to the identity of the goods such that he is led to believe that he is getting plaintiff's product when he is in fact getting the defendant's product. *Id.*

The UFTPCA also refers to "likelihood of confusion" as the touchstone for deceptive acts. Alaska Stat. § 45.50.471(b)(3), (11). In addition, an Alaskan court addressing the issue would probably define the likelihood of confusion test in the same terms as other courts. *See State v. O'Neill Investigations, Inc.,* 609 P.2d 520, 532 (Alaska 1980) (holding that terms like "unfair or deceptive acts or practices" are not vague because they have a "well defined" meaning in the area of trade regulation). In the present case, there is no likelihood of confusion between the non-traditional trade dress and the traditional trade dress because the difference will not confuse consumers as to the source of the product, since both correctly point to and are used to identify Tesoro gasoline. Consequently, as the non-traditional trade dress cannot create a likelihood to deceive, Manumitted cannot produce evidence of confusion, and the action is frivolous. *See Garrison v. Dixon*, 19 P.3d 1229, 1235 (Alaska 2001)  **Indeed, in this case, the only legitimate claim for a violation is of the UFTPCA belongs to Tesoro based on Manumitted sale of unbranded gasoline using Tesoro's trademarks and trade dress.** *See, e.g., Getty Petroleum Corp. v. Island Transportation Corp.* 878 F.2d 650 (2d Cir. 1988), *cert. denied*, 490 U.S. 1006 (1989) (Dealer's misbranding constituted violation of Lanham Act and unfair competition under New York law justifying punitive damages award).

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 26

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington 98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590

Second, as a franchisee of Tesoro, Manumitted is merely a licensee of the Tesoro mark. A licensee's use of the mark inures to the benefit of the licensor, and the licensee acquires no ownership rights in the mark. 3 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18.52 (4th ed. 2001). Furthermore, "[i]t is clear that use of a mark by a person while such person was a licensee builds up no rights in the mark as against the licensor…" *Id. See also Twentieth Century Fox Film Corp. v. Marvel Enterprises, Inc.,* 277 F.3d 253, 259 (2d Circ. 2002) (affirming dismissal of licensee's claim that the licensor falsely designated the origin of the product because the licensor is the originator of the mark); *Silverstar Enterprises Inc. v. Aday,* 537 F. Supp. 236, 240-241 (S.D.N.Y. 1982) (holding that licensee did not have standing to sue licensor because licensee's interest in the mark arises solely from its contractual relationship with the licensor).

As Manumitted has no ownership rights in the Tesoro mark or trade dress, it does not have standing to bring a claim against Tesoro for infringement. Furthermore, Tesoro has not used the non-traditional trade dress to make false claims to promote a different product. *See Twentieth Century,* 277 F.3d at 259-60. Instead, the non-traditional trade dress is merely promoting the exact same product as before, albeit using different packaging. Consumers (of which Manumitted was not) will receive the same grade and quality of gasoline regardless of whether they purchase it from stations that use the traditional or the non-traditional trade dress. Therefore, consumers cannot be mislead as to the source or origin of the gasoline they purchase, because the source remains the same.

## IV.    CONCLUSION

For the foregoing reasons, each of the following claims should be dismissed: 1) Its claim that Tesoro violated the Robinson Patman Act; 2) its claim that Tesoro violated the implied covenant of good faith in connection with the modifications to and alleged increased competition from, Captain Joe's, and 3) its claim that Tesoro violated Alaska's Unfair Trade Practices and

DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 27

No. A05-185CV (JKS)

M35414-820590

Consumer Protection Act (AS 45.50.471(a), (b)(3), and (b)(11)) by allowing Captain Joe's to use a trade dress different from Manumitted's traditional Tesoro Alaska trade dress.

DATED this 19th day of January, 2007.

GRAHAM & DUNN PC


By /s/ Douglas C. Berry
Douglas C. Berry, WSBA# 12291
Michael Fandel, WSBA#16281
Attorneys for Defendant Tesoro Alaska Company


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing MOTION FOR SUMMARY JUDGMENT was filed and served via the Court's ECF system on the 19th day of January, 2007 to:

Michael R. Mills
Wendy Leukuma
Dorsey & Whitney LLP
1031 W. 4th Avenue, Suite 600
Anchorage, AK 99501
mills.mike@dorsey.com
leukuma.wendy@dorsey.com

Dated this 19th day of January, 2007.

   /s/ Douglas C. Berry
Douglas C. Berry


DEFENDANT'S MOTION
FOR PARTIAL SUMMARY JUDGMENT -- 28

No. A05-185CV (JKS)

**GRAHAM & DUNN** PC
Pier 70, 2801 Alaskan Way ~ Suite 300
Seattle, Washington  98121-1128
(206) 624-8300/Fax: (206) 340-9599

M35414-820590