UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| MANUMITTED COMPANIES, INC., ) | No. A05-185CV (JKS) |
| Plaintiff, ) | |
| vs. ) | |
| TESORO ALASKA COMPANY, ) | |
| Defendant. ) | |

**DECLARATION OF DON GROSCOST**

I, Don Groscost, declare as follows:

1.  I am Vice President, Wholesale Marketing. In such capacity, I am responsible for all wholesale marketing and distribution in Alaska, Washington, and Oregon. I have been with Tesoro since 1998.

2.  Tesoro has operated a refinery in Nikiski since 1969. My understating is that the refinery was built largely to take advantage of crude oil from the Cook Inlet oil field. Traditionally, it has refined a variety of products using Cook Inlet and North Slope crudes, though in recent years the refinery has also used foreign crudes.

3.  The Nikiski refinery produces a variety of products, including jet fuel (it is one of the principal suppliers of jet at the Anchorage airport), diesel, and gasoline.

4.  Gasoline produced at the Nikiski refinery is distributed in Alaska, though Tesoro does export some gasoline and other products produced at the Nikiski refinery to Washington

DECLARATION OF DON GROSCOST -- 1
No. A05-185CV (JKS)

m35414-814277_2.doc

State. Some of this gasoline is sold in Alaska on an unbranded basis, but a significant portion is sold for ultimate resale in Alaska through Tesoro's approximately 100 branded Tesoro service stations.[1] All gasoline sold to Manumitted and to Service Oil & Gas originated in Alaska. In fact, all sales were made from Anchorage. All Tesoro branded gasoline was delivered to Service Oil & Gas from Tesoro's terminal in Anchorage (and then transported by Service Oil & Gas to its dealers). All gasoline sold to Manumitted (at least since 1999 when it ceased to be a jobber) was delivered to Manumitted's facility in Valdez.

5. Some Tesoro retail outlets (mostly in the Anchorage area) are owned and operated directly by Tesoro. Most Tesoro service stations, however, are operated by independent dealers. A few of the independent dealers operate under a dealership agreement with Tesoro under which Tesoro requires the dealer to purchase gasoline directly from Tesoro, and to resell at retail Tesoro's branded gasoline from a specified site using Tesoro's trademarks and trade dress.

6. Most of Tesoro's Alaska retail dealers have no direct, or contractual, relationship with Tesoro. Instead, these dealers are supplied by independent jobbers or wholesalers. Tesoro's contractual relationship is with the jobber, who is authorized under its distributor agreement to resell Tesoro gasoline to a network of dealers that are established by the jobber. Tesoro has no relationship with the jobber's dealers (unless the jobber itself is operating the retail station).

7. Manumitted (when it was doing business as Harbor Fuels) was a Tesoro jobber. Service Oil & Gas was (and remains) a Tesoro Jobber based in Glennallen, though Service Oil & Gas was recently acquired by another company. At least until recently, Service Oil & Gas operated under a distributor agreement entered into in 1988 that was substantially identical to

---

[1] All gasoline produced at the Nikiski refinery is unbranded gasoline. Tesoro, like other companies, turns unbranded gasolines to branded gasolines by adding and mixing the product with additives at the distribution terminal, which for all gasoline involved in this case was Anchorage. Product is shipped from the Nikiski refinery to the Anchorage terminal through a pipeline.

DECLARATION OF DON GROSCOST -- 2

No. A05-185CV (JKS)

m35414-814277_2.doc

Tesoro's distributor agreement with Manumitted. Both agreements encouraged the jobber to build as large of network of branded dealers as they were capable of handling. Both agreements required the jobber to obtain Tesoro's consent before adding a new dealer (though Tesoro could not unreasonably withhold its consent), but neither agreement expressly required the jobber to seek or obtain Tesoro's permission if the jobber or the jobber's dealer desired to upgrade or improve a dealer's retail site. The only requirement imposed under both agreements was that the site must comply with Tesoro's trademark and brand standards. As jobbers, both Manumitted and Service Oil & Gas established a network of Tesoro dealers, though Service Oil's eventually covered a wider territory, covering an area from Valdez to Anchorage and to near Fairbanks.

8. Tesoro's 3-prong distribution system of branded gasoline (through company operated sites, through independent direct dealers, and through independent jobbers) is not unique to Tesoro and is typical in the industry, though arguable Tesoro has tended to rely more on jobbers to establish and supply retail facilities than some other oil companies. The important point for present purposes is that Tesoro has relied on jobbers to perform jobs or functions usually performed by the oil company in a direct dealer relationship. Among other things, the jobber is generally responsible for locating and marketing to prospective dealers and dealers, for providing assistance to its dealers, for the credit risks associated with sales of gasoline to the dealer, for monitoring and enforcing the dealer's compliance with Tesoro's brand standards and the terms of the jobber's dealer agreement; and for arranging for transportation of products from the terminal to the dealer's location (and all environmental, personnel, and liability risks associated with the handling of the products after they leave the terminal); and, in many cases, for maintaining an adequate inventory of products for the jobber's dealers.

9. With respect to gasoline sold to both direct dealers and jobbers, Tesoro has no control over how they price, or how a jobber's dealer prices. In fact, Tesoro does not receive information from jobbers as to how they price to their dealers. Thus, for instance, Tesoro does

DECLARATION OF DON GROSCOST -- 3
No. A05-185CV (JKS)

m35414-814277_2.doc

not know how Service Oil & Gas priced to Captain Joe's, whether at any time it elected to cut or reduce its profit margins on its sales to Captain Joe's, and consequently, Tesoro does not know or have any information relating to how much or how little Captain Joe's may have elected to mark up its retail prices (*i.e.*, whether Captain Joe's elected to sell its gasoline at retail for very little mark-up, using gasoline as a loss leader for sales of goods and services at its convenience store and recreational vehicle park). I do know that if at any time Manumitted was concerned about Captain Joe's retail pricing, I did not hear of any complaints from Mr. Olds or any of his employees.

10. It is my understanding that in this case Manumitted has claimed that Tesoro treated Service Oil & Gas or its dealer, Captain Joe's, better than it treated Manumitted and that is particularly so with respect to the sale of trade dress items to Service Oil & Gas that were used at Captain Joe's. That simply is not so.

11. The owners of Captain Joe's made improvements to their facility, and I understand this project was completed in the Spring of 2003. With respect to this project, Service Oil & Gas asked us to supply signage and other trade dress for the project at Tesoro's cost, something that Tesoro had often done up to this point in Alaska. Tesoro was then operating under very tight capital budget, however, and we refused to give the requested trade dress items to Service Oil & Gas. Service Oil & Gas protested, arguing that Captain Joe's would rebrand to another company that would provide the trade dress. We refused to provide the trade dress, and insisted that Service Oil & Gas purchase it from us, and cover the cost of installation. We did, however, agree to reimburse Service Oil & Gas for the cost of the trade dress items sold to Service Oil & Gas so long as Captain Joe's remained a dealer in good standing by paying a quarterly rebate for four years equal to one and a half cents of each gallon of Tesoro fuel Service Oil & Gas sold to the Captain Joe's. The total rebates could not exceed $54,724, and Service Oil & Gas could not claim more than $13,681 in rebates in any year.

DECLARATION OF DON GROSCOST -- 4

No. A05-185CV (JKS)

m35414-814277_2.doc

12. The trade dress sold to Service Oil & Gas was not the traditional Tesoro Alaska trade dress. At the time, we did not have the necessary traditional Alaska trade dress in stock, and did not want to have to buy trade dress for the project. We did have some trade dress left over from a project in California, and sold this trade dress to Service Oil & Gas. This trade dress incorporated Tesoro's modified look, a look we are beginning to implement in all areas in which Tesoro does business. At the time, Captain Joe's became just the third independent dealer in Alaska to utilize the modified trade dress. Even now, there are still very few independent retail sites that utilize the modified trade dress. We have not required dealers and jobbers to change their trade dress. The plan is to introduce the modified trade dress over time as new dealer sites are added or improved requiring trade dress installation. Still, any dealer or jobber, can have the modified trade dress if they want it. There just simply has not been a demand for the modified trade dress from existing Alaska dealers, who prefer the traditional trade dress Alaska consumers are used to, and who have no real interest in incurring the costs of installing new trade dress unless they have to. I know of no request from Manumitted for the modified trade dress and no complaints while Manumitted was a dealer regarding Captain Joe's use of the modified trade dress. Certainly, had Manumitted wanted the new trade dress, we would have sold it to him, likely on the same terms as provided to Service Oil & Gas.

13. At least by the fall of 2003, it was obvious that Manumitted was again having severe financial difficulties. Because its bank had returned payment for some product loads, Manumitted was placed on COD, requiring it to pay before any load would be delivered. It actually stopped buying gasoline from Tesoro in mid-September of 2003. That is when we learned that Manumitted was actually buying unbranded gasoline from another company, and selling it in his station as Tesoro gasoline. A warning letter was drafted by Tesoro to Mr. Olds in November 2003 which I signed, a copy of which is attached as Exhibit A. Shortly thereafter, we were informed by the Alaska Department of Environmental Conservation that we could not

DECLARATION OF DON GROSCOST -- 5
No. A05-185CV (JKS)

m35414-814277_2.doc

deliver fuel to Manumitted's tanks because Manumitted had not obtained a necessary tank test. Manumitted continued to sell gasoline from his station, however, just not Tesoro gasoline. Manumitted defaulted on his promissory note to Tesoro and on May 28, 2004. Tesoro sent a termination notice to Manumitted under the PMPA which I signed. A copy of that is attached as Exhibit B.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 10TH day of January, 2007.

_____
Don Groscost

DECLARATION OF DON GROSCOST -- 6
No. A05-185CV (JKS)

m35414-814277_2.doc

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing DECLARATION OF DONALD GROSCOST was filed and served via the Court's ECF system on the 19th day of January, 2007 to:

Michael R. Mills
Wendy Leukuma
Dorsey & Whitney LLP
1031 W. 4th Avenue, Suite 600
Anchorage, AK 99501
mills.mike@dorsey.com
leukuma.wendy@dorsey.com

Dated this 19th day of January, 2007.

        /s/ Douglas C. Berry
        Douglas C. Berry

DECLARATION OF DON GROSCOST -- 7
No. A05-185CV (JKS)

M35414-814277_2