Frederick J. Odsen
ABA No. 7906043
Carl J.D. Bauman
ABA No. 7310038
Hughes Bauman Pfiffner Gorski & Seedorf, LLC
3900 C Street, Suite 1001
Anchorage, AK  99503
Telephone Number:    (907) 274-7522
Facsimile Number:     (907) 263-8320

Attorneys for Defendant Tesoro Alaska Company

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

MANUMITTED COMPANIES, INC.,

                Plaintiff,

vs.

TESORO ALASKA COMPANY,

                Defendant.

Case No. A05-185CV.(TMB)

### AFFIDAVIT OF FREDERICK J. ODSEN

STATE OF ALASKA       :
                         : ss.
THIRD JUDICIAL DISTRICT  :

        Frederick J. Odsen, being first duly sworn upon his oath, deposes and states

as follows:

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

1.    I am an attorney at law admitted to practice in the State of Alaska and a member of the law firm of Hughes Bauman Pfiffner Gorski & Seedorf, LLC.

2.    The law firm was first retained in about January, 1991 to assist Tesoro Alaska Petroleum Company, now known as Tesoro Alaska Company ("Tesoro"), with regard to obligations owed to Tesoro by Harbor Fuel Co., Inc., now known as Manumitted Companies, Inc. ("Manumitted"). I have been involved with the case since it started in our office and have personal knowledge of the matters set forth herein.

3.    Much of the early history of the relationship between Tesoro and Manumitted is discussed in pleadings filed in conjunction with Manumitted's first Chapter 11 bankruptcy proceeding filed on or about October 8, 1991 in the Bankruptcy Court for the District of Alaska in a case styled In re: Harbor Fuel Co., Inc., a/k/a Wolverine Gas & Oil, Case No. A-91-00815 (HAR) (the "Harbor Fuel bankruptcy").[1] Manumitted was represented in the Harbor Fuel bankruptcy principally by Mr. Michael Mills.

4.    Manumitted owns a now closed gasoline service station and operates a vessel booming business in Valdez. At the time of the Harbor Fuel bankruptcy, it operated a gasoline and fuel sales business in Valdez. The Exxon Valdez oil spill in 1989 had an enormous impact on Manumitted's fuel and gasoline sales business which caused

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

---

[1] The Court will recall that Manumitted is currently involved in a second Chapter 11 bankruptcy proceeding now pending before the Bankruptcy Court for the District of Alaska in a case filed on or about November 29, 2004 and styled In re: Manumitted Companies, Inc., Case No. A04-01318-DMD.

- 2 -

Manumitted's sales to suddenly and dramatically expand along with the level of the unpaid debt it incurred and owed to Tesoro.

        5.     The debtor's Disclosure Statement dated March 13, 1992 prepared by the debtor itself in the <u>Harbor Fuel</u> bankruptcy described the situation as follows:

> Harbor Fuel, as a distributor of Tesoro product, was in prime position to take advantage of the huge marketing opportunity created by the Exxon related cleanup vessel requirements. Harbor Fuel's credit level with Tesoro quickly rose into the millions of dollars.
>
> In the spring of 1989, when the Exxon-Valdez oil spill occurred, Harbor Fuel was a company that had historically distributed approximately 3,000,000 gallons per year of product. The Exxon-Valdez oil spill was a monumental event affecting the Valdez area. The pace of business activity to accommodate the cleanup effort was overwhelming. Harbor Fuel distributed approximately 18,000,000 gallons of product in 1989. Harbor Fuel went from about 12 employees in 1988 to upwards of 60 employees in 1989.
>
> In the spring and summer of 1989, Harbor Fuel's computer system overloaded and faltered on many occasions, and eventually completely failed. Harbor Fuel lost not only valuable records but also the ability to continue efficiently and thoroughly proceeding its ongoing sales and receivables to customers.
>
> Harbor Fuel's credit level with Tesoro which, as stated above, was in the range of $300,000 at the beginning of the oil spill, escalated quickly. At the end of 1989, Harbor Fuel's debt level with Tesoro was approximately $1,800,000. At the end of 1990, the debt level was $3,500,000. It was in late 1990 that Tesoro stepped up its efforts to collect the debt owed by Harbor Fuel.

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

> In mid-1990, Harbor Fuel discovered that the computer crash that had occurred during the Exxon-Valdez oil spill had drastically affected the company's processing and collection of accounts receivable. It became evident that large amounts of product that had been sold had either not been properly billed or had been initially billed and the records lost. The problem was so significant that Coopers & Lybrand, accountants for Harbor Fuel, initially refused to recognize any of the accounts receivable in this category.
>
> In late 1990, Harbor Fuel embarked on an effort to reconstruct its accounts receivable from the oil spill time frame in order to determine how much money it was owed that had not been collected. Tesoro participated in this account reconstruct effort. The account reconstruct effort took until the summer of 1991 to complete. When the reconstruction was finished, approximately $1.7 million of accounts receivable had been identified that related to the oil spill time frame (spring 1989 through summer 1990).

Debtor's Disclosure Statement dated March 13, 1992, pp. 9 and 10.

6.    At the time of the filing of the <u>Harbor Fuel</u> bankruptcy, Manumitted was in default in its obligations to Tesoro and owed Tesoro approximately $3,508,000.

7.    The treatment of the $3,508,000 obligation owed by Manumitted to Tesoro was negotiated in the context of a settlement conference before Bankruptcy Judge MacDonald and evidenced by a Memorandum Agreement Regarding Settlement of Litigation and Debt dated on or about March 3, 1992 and attached as Exhibit C to the Debtor's Plan of Reorganization dated March 13, 1992 in the <u>Harbor Fuel</u> bankruptcy (the "1992 Memorandum Agreement").

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

- 4 -

8.    The treatment of the obligations owed to Tesoro set forth in the 1992 Memorandum Agreement was incorporated into the Debtor's Plan of Reorganization dated March 13, 1992 which was ultimately confirmed by the Bankruptcy Court.

9.    Of the total $3,508,000 indebtedness owed to Tesoro, $2,800,000 of it was treated as a secured claim designated as Class 3 in the Harbor Fuel bankruptcy plan. The debtor's plan describes the Tesoro Class 3 payment obligation, in pertinent part, as follows:

> B.    Class 3:    The Allowed Noninsider Secured Claim of Tesoro will be treated as fully set forth in the Memorandum Agreement Regarding Settlement of Litigation and Debt attached hereto as Exhibit C and incorporated herein in full. The principal terms of the treatment are as follows:
>
> 1. Harbor Fuel will be required to pay Tesoro $1,200,000 on or before September 30, 1992.
>
> 2. Harbor Fuel will execute a $1,000,000 Note in favor of Tesoro on which interest accrues from April 1, 1992 at the rate of 6.5% per annum for two years and six months. Thereafter, or upon sale of Harbor Fuel and assumption of the Note, the interest rate shall float at the prime rate of interest as announced by National Bank of Alaska. The Note will be amortized over 10 years, with the required monthly payments beginning on November 1, 1992 and continuing each month thereafter, with a five (5) year balloon. The Note will be assumable on the reasonable consent of Tesoro.
>
> 3. Harbor Fuel will execute a $600,000 Note with interest accruing at the prime rate of interest as announced by the National Bank of Alaska beginning on April 1, 1992. Interest shall be adjusted on a semiannual basis. The Note, plus accrued interest, is due and payable upon the sale of the business or June 30, 1994, whichever occurs first.

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

> 4. Harbor Fuel is required to actively market the business for sale with a projected sale date of no later than June 30, 1993. As long as Harbor Fuel has actively marketed the business, Tesoro will grant Harbor Fuel a 12-month extension of this deadline.

Debtor's Plan of Reorganization dated March 13, 1992, pp. 6 and 7.

10.    The $708,000 unsecured debt owed Tesoro was, however, separately classified as Class 8. The treatment of that $708,000 unsecured debt was as follows: "The Allowed Noninsider Claim of Tesoro in the amount of $708,000 will be paid 1/10 of 1%, or $70.80 on the Effective Date." Debtor's Plan of Reorganization dated March 13, 1992, p. 11.

11.    The Effective Date of the <u>Harbor Fuel</u> bankruptcy was provided to be thirty days after the confirmation of the plan. To my knowledge, in accordance with that plan, Tesoro received the sum of $70.80 in payment under the plan of its $708,000 unsecured claim.

12.    Manumitted and Tesoro next undertook a modification of the obligations owed by Manumitted and Tesoro on or about November 1, 1995 when they entered into a certain Loan Modification Agreement dated November 1, 1995 and an Amended and Restated Promissory Note dated November 1, 1995 in the stated amount of $1,157,544.65 (the "Amended and Restated Promissory Note").

13.    The $600,000 obligation under the Debtor's Plan of Reorganization dated March 13, 1992 in the Harbor Fuel bankruptcy matured on June 30, 1994, but

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

Manumitted failed to pay the amount remaining due and payable under the $600,000 note upon its maturity on June 30, 1994.  As of approximately March 1, 1995 the balance remaining due under the $600,000 obligation was approximately $361,911.17.   The balance owed under the $1,000,000 obligation under the Debtor's Plan of Reorganization dated March 13, 1992 as of March 1, 1995 was approximately $855,672.55.  The Loan Modification Agreement provided for the execution of the Amended and Restated Promissory Note in the stated amount of $1,157,544.65 (which reflected the aggregate balance then due and payable with respect to the $1,000,000 Promissory Note plus the $600,000 Promissory Note executed in conjunction with the Harbor Fuel bankruptcy), Loan Modification Agreement dated November 1, 1995, Recital paragraph 9.   The Amended and Restated Promissory Note modified the repayment terms of the Harbor Fuel bankruptcy plan and provided for a stream of payments (with higher payments in the summer months) and an ultimate maturity date of January 1, 1998.

14.    My understanding is that the Amended and Restated Promissory Note fundamentally involved a restructuring of the remaining obligations from Manumitted's 1992 bankruptcy reorganization plan including the $600,000 Promissory Note and the $1,000,000 Promissory Note executed in conjunction with that plan.

15.    Although I was not involved in the purchase or lease transaction, my understanding is that the service station that is the subject to this litigation was acquired by Tesoro on or about June 1, 1995 and leased to Manumitted pursuant to a certain

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

Distributor Lease Agreement dated May 31, 1995. *See* Settlement and Conveyance Agreement, referred to below, Recital B(14), p. 5.

16.    When the Amended and Restated Promissory Note matured on or about January 1, 1998, Manumitted defaulted.  In addition, at or about that time according to my understanding, Manumitted had fallen into arrears with regard to its obligations to Tesoro for additional product sold to Manumitted by Tesoro after confirmation of the <u>Harbor Fuel</u> bankruptcy plan, and under the terms of the pertinent Tesoro Alaska Petroleum Company Distributor Agreement dated February 26, 1986 (the "1986 Distributor Agreement").  <u>See</u> Settlement and Conveyance Agreement referred to below, Recital B(7) and B(8), p. 4 and Recitals B(16) and B(17), p. 6, stipulating as to the balances owed and to the effect that the Amended and Restated Promissory Note and the 1986 Distributor Agreement were in default.

17.    Beginning in the late spring or summer of 1998 and continuing until April, 1999, Tesoro and Manumitted engaged in negotiations pertaining to the resolution of the obligation owed to Tesoro under the Amended and Restated Promissory Note (which had a balance as of April 22, 1999 of approximately $570,914.92) and the amount due and payable under the 1986 Distributor Agreement (the "1999 unpaid product balance"), which had a balance as of April 22, 1999 of approximately $1,580,888.63. <u>See</u> Settlement and Conveyance Agreement, referred to below, Recital (B)(7) and (8), p. 4.

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

18.     The agreements that were ultimately worked out and agreed upon were reflected in a certain Settlement and Conveyance Agreement dated April 23, 1999, a copy of which is attached hereto as Exhibit A (the "Settlement and Conveyance Agreement") and agreements referenced therein.

19.     I was materially involved in the drafting of the Settlement and Conveyance Agreement as counsel for Tesoro. Manumitted was represented with regard to the matter principally by James H. McCollum and Michael Mills who were at the time both employed by the law firm of Bankston & McCollum. The terms of the transaction were discussed in exchanges of correspondence and later e-mails beginning in approximately June, 1998. Beginning in approximately mid-November 1998, there were a number of redlined or marked drafts of the Settlement and Conveyance Agreement and related documents and other correspondence prepared and exchanged by my office and Bankston & McCollum related to the terms of the Settlement and Conveyance Agreement.

20.     Manumitted's interests were represented by Mr. Mills and Mr. McCollum in the preparation of the Settlement and Conveyance Agreement, just as they had been (principally by Mr. Mills) with regard to the Harbor Fuel bankruptcy and the Memorandum Agreement Regarding Settlement of Litigation and Debt back in 1992.

21.     The terms of the Settlement and Conveyance Agreement obviously speak for themselves, but I wish to point out certain features thereof:

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

- 9 -

(a)    Manumitted conveyed certain real property and personal property including tangible and intangible business assets to Tesoro in payment of the $570,914.92 balance owed under the Amended and Restated Promissory Note and the $1,580,888.63, 1999 unpaid product balance and Tesoro agreed not to seek any deficiency balance against Manumitted with respect thereto (Settlement and Conveyance Agreement, paragraphs 1 and 4).

(b)    A new Dealer Agreement was executed by Manumitted and Tesoro (Settlement and Conveyance Agreement, paragraph 9(b)).

(c)    A new Guaranty was provided Tesoro by Manumitted's principal, Mr. Olds (Settlement and Conveyance Agreement, paragraph 9(c)).

(d)    Tesoro agreed to terminate a lease between it as lessor and Manumitted as lessee that had been undertaken on or about May 31, 1995 (see Settlement and Conveyance Agreement, Recital B(14)), with regard to the service station that is the subject of this litigation, and to convey that station (sometimes referred to as the "New Station Property") to Manumitted in consideration of a Promissory Note in the stated amount of $570,914.92 (the "New Valdez Tesoro Station Promissory Note"). See Settlement and Conveyance Agreement, paragraph 9(d). The New Valdez Tesoro Station Promissory Note was secured by a first Deed of Trust on the New Station Property executed in conjunction with the Settlement and Conveyance Agreement.

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

- 10 -

(e)    Mr. Olds and Manumitted executed a certain Covenant Not to Compete dated April 23, 1999, a copy of which is attached hereto as Exhibit B (Settlement and Conveyance Agreement, paragraph 9(e)).

(f)    Tesoro and Manumitted executed a certain Mutual Hazardous Materials Indemnity Agreement (Settlement and Conveyance Agreement, paragraph 9(f)).

(g)    Part of the real property conveyed by Manumitted to Tesoro pursuant to the Settlement and Conveyance Agreement was certain real property in the Valdez Recording District described as Lot 2A, Block 32A of the Replat of Blocks 32 and 39, South Portion of Mineral Creek Subdivision, identified in the Settlement and Conveyance Agreement as the "Old Station Property."   (Settlement and Conveyance Agreement, Recital B(5), p. 4).

(h)    Paragraph 17 of the Settlement and Conveyance Agreement provides as follows:

> <u>Covenant Against Competing Tesoro Retail Service Station at Old Station Property</u>.  Lender agrees that it will not construct or operate a Tesoro retail service station on the Old Station Property so long as Borrower or Guarantor or their heirs and assigns are (1) actively operating the Valdez Tesoro Station as a Tesoro branded retail fuel dealer or distributor and (b) are in full compliance with any agreements between any such parties and Tesoro Alaska Company or its successors and assigns.

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

22.    Certain of the assets acquired by Tesoro from Manumitted in consideration of the terms of the Settlement and Conveyance Agreement were sold and conveyed by Tesoro to Service Oil & Gas, Inc., a Tesoro branded fuel distributor based in Glennallen.  While Manumitted was not a party to the Asset Purchase Agreement dated April 23, 1999 between Tesoro and Service Oil & Gas, Inc., Manumitted was aware of its existence.  The Asset Purchase Agreement between Tesoro and Service Oil & Gas, Inc., along with an associated Indemnity Escrow Agreement dated April 23, 1999 between Tesoro, Service Oil & Gas, Inc. and First American Title of Alaska, were specifically referred to in paragraph 5(b) on page 11 of the Settlement and Conveyance Agreement. Further, under the terms of the Settlement and Conveyance Agreement, Tesoro had the right to have Manumitted convey Manumitted's assets to a nominee or to itself convey those assets to a nominee of Tesoro's choice (Settlement and Conveyance Agreement, paragraph 1, page 6 and paragraph 3, page 9.)  The last sentence of paragraph 3 provides as follows:  "Borrower [Manumitted[ and Guarantor [Mr. Ben Olds] acknowledge that Lender [Tesoro] intends that immediately upon or coincident with Closing, the Real Property, Personal Property and Intangible Property (or some leasehold or other interest therein) may be conveyed free and clear of any interest of Borrower or Guarantor to Lender's Nominee."

23.    Tesoro advised in approximately late April, 2004 that Manumitted had breached its obligations under the New Valdez Tesoro Station Promissory Note in

HUGHES BAUMAN PFEFFNER
GORSKI & SEEDORF, LLC
ATTORNEYS AT LAW
3900 C STREET
SUITE 1001
ANCHORAGE, ALASKA 99503
(907) 274-7522
(907) 263-8320 FAX

the stated amount of $570,914.92 and the Deed of Trust thereby secured as well as its

obligations under the new Dealer Agreement. Tesoro caused a Notice of Default and

Sale, a copy of which is attached hereto as Exhibit C to be recorded in the Valdez

Recording District on or about July 7, 2004, setting a non-judicial foreclosure sale on

October 14, 2004. That foreclosure sale has, of course, been stayed under § 362 of the

Bankruptcy Code owing to the filing of Manumitted's latest Chapter 11 bankruptcy

petition.

DATED at Anchorage, Alaska, this 16th day of January, 2007.

Frederick L. Odsen

SWORN TO AND SUBSCRIBED before me this 16th day of January,

2007.

OFFICIAL SEAL
State of Alaska
PATRICIA A. BRICE
NOTARY PUBLIC
My Commission Expires: April 9, 2007

Notary Public in and for Alaska

My Commission Expires: 4-9-2007

254690

- 13 -

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing AFFIDAVIT OF FREDERICK J. ODSEN was filed and served via the Court's ECF system on the 19th day of January, 2007 to:

Michael R. Mills
Wendy Leukuma
Dorsey & Whitney LLP
1031 W. 4th Avenue, Suite 600
Anchorage, AK 99501
mills.mike@dorsey.com
leukuma.wendy@dorsey.com

Dated this 19th day of January, 2007.

/s/ Douglas C. Berry
Douglas C. Berry