## MUTUAL RELEASE AGREEMENT

WHEREAS this Mutual Release Agreement (hereinafter Agreement") is made and entered into by and among **TESORO ALASKA COMPANY** ("Tesoro"); **HARBOR FUEL CO., INC.**, also known as Harbor Fuel Company, Inc., also doing business as Wolverine Gas and Oil, an Alaska corporation ("Harbor Fuel"), and **BENJAMIN H. OLDS** ("Olds"); and

WHEREAS Tesoro, Harbor Fuel, and Olds have executed a certain Settlement and Conveyance Agreement dated April 23, 1999 ("Settlement and Conveyance Agreement") pertaining to the settlement and resolution of certain lending and contractual relationships by and between Tesoro on the one hand, and Harbor Fuel and Olds on the other hand; and

WHEREAS Paragraph 14(c) of the Settlement and Conveyance Agreement provides for the execution of a mutual release upon the closing of the Settlement and Conveyance Agreement;

NOW THEREFORE in consideration of the mutual promises hereinafter set forth, contained in the Settlement and Conveyance Agreement, and other good and valuable consideration, the receipt of which is hereby acknowledged, the parties agree as follows:

1. <u>Correctness of Recitals</u>. The recitals set forth hereinabove are incorporated herein by reference and made a part of this Settlement Agreement and Mutual Release.

2. <u>Release Provisions</u>. The parties to this Settlement Agreement and Mutual Release, except as provided hereinbelow in this Paragraph 2, do hereby release and forever discharge each other and any parent organization(s) (including but not limited to Tesoro Petroleum Corporation), affiliates, subsidiaries, employees, servants, agents, officers, directors, attorneys, insurers, bonding companies, successors in interest and assigns from any and all actions, causes of action, suits, controversies, demands, obligations, rights, costs,

Mutual Release Agreement
Page 1

Exhibit F
Page 1 of 8

TAC - 102019

contribution, indemnity, claims, and damages of every kind and nature, accrued, accruing or to accrue in the future that are now known or unknown, whether based on contract, statutory or common law or otherwise, and which arise from, relate to, or which are in any way connected to any relationship between the parties, including but not limited to any lending relationship or contractual relationship arising from (a) that certain Tesoro Alaska Petroleum Company Distributor Agreement dated February 26, 1986 between Harbor Fuel Co., Inc. and Tesoro Alaska Petroleum Company, or (b) that certain Tesoro Alaska Petroleum Company Unleaded Gasoline Compliance Agreement (Distributor) dated February 26, 1986 between such parties, or the existence, performance, modification, extension, maturity, or termination of any of those agreements, or (c) the pre-existing matters settled or resolved in the Settlement and Conveyance Agreement or the conveyances of any assets to Tesoro or its nominee pursuant to the Settlement and Conveyance Agreement or otherwise. Nothing herein contained, however, shall be deemed to release any of the respective obligations of Tesoro, Harbor Fuel or Olds under the terms of the Settlement and Conveyance Agreement and all of the documents and agreements executed in conjunction therewith, including but not limited to the following documents and agreements: (a) the Dealer Agreement and the exhibits thereto attached as Exhibit E to the Settlement and Conveyance Agreement, (b) the Guaranty attached as Exhibit F to the Settlement and Conveyance Agreement, (c) the Lease Termination Agreement attached as Exhibit G to the Settlement and Conveyance Agreement, (d) the Valdez Tesoro Station Note attached as Exhibit H to the Settlement and Conveyance Agreement, and the associated Deed of Trust, Security Agreement and UCC-1 Financing Statements, and (e) the Mutual Hazardous Materials Indemnity Agreement (Valdez Tesoro Station) attached as Exhibit K to the Settlement and Conveyance Agreement ("Associated Agreements").

      3.   <u>Costs and Attorneys Fees</u>. The parties to this Agreement agree to bear their own costs, attorneys' fees, and expenses resulting from or in any way connected with

the preparation and review of this Agreement, the Settlement and Conveyance Agreement and the Associated Agreements.

4. <u>Covenant Against Further Action</u>. The parties covenant and agree that except as to any action needed to enforce the terms of this Agreement, the Settlement and Conveyance Agreement and the Associated Agreements or any rights set forth herein or associated with any of the foregoing, they will not, either by themselves or in concert with others, or by virtue of past, current or future arbitral, contractual or judicial proceedings of any kind whatsoever, make or cause to be made, acquiesce in or assist in the bringing of any further action for damages or compensation of any kind, character or description, for damages accrued, accruing or hereafter to accrue, whether by assignment or otherwise, for, because of, on account of, or in any manner connected with, arising from or growing out of the matters released herein.

5. <u>No Admissions of Wrongdoing or Liability</u>. Nothing herein shall be deemed to be an admission of liability, illegality, impropriety, breach of contract or responsibility by the parties to this Agreement, the same being expressly and unequivocally denied.

6. <u>Scope of Matters Released</u>. The parties to this Agreement represent that they are familiar with the decision of the Alaska Supreme Court in <u>Witt v. Watkins</u>, 579 P.2d 1065 (Alaska 1978), but state that they nevertheless intend that this Agreement shall discharge each of the parties from liability for damages caused or enhanced or aggravated or contributed to by any of the parties, whether such damage is subsequently discovered or is different in degree or kind than is now alleged, known, anticipated, or expected. It is specifically understood and agreed by and among the parties that the mutual covenants herein contained and in the Settlement and Conveyance Agreement are undertaken in order to obtain the release fully, finally, and completely from whatever claims, known or unknown, may now or hereafter result from the matters arising from, relating to, or in any way

connected with the relationship between the parties prior to the date hereof subject to the limitations herein set forth.

7. <u>Voluntary Agreement</u>. It is acknowledged by the parties to this Agreement that they are familiar with the Alaska Supreme Court decision in <u>Totem Marine T. & B. v. Alyeska Pipeline, et al.</u>, 584 P.2d 15 (Alaska 1978), and they specifically acknowledge freedom of choice and represent that they understand that they do not need to agree to the terms of this Agreement and they further acknowledge the availability of other reasonable alternatives and adequate remedies but have nonetheless freely, voluntarily, and intelligently chosen not to pursue the same for purposes of making with each other a full and final compromise, adjustment, and settlement of any and all claims, disputed or otherwise, arising out of or in any way connected with the matters released hereinabove.

8. <u>Scope of Parties Released</u>. All parties acknowledge that they are familiar with the decision of the Alaska Supreme Court in <u>Young v. State</u>, 455 P.2d 889 (Alaska 1969), which stands for the general proposition that a release of liability as to one party does not release other possible jointly liable parties unless such other possibly liable parties are specifically named in the release. All parties hereby waive any and all protections afforded by said decision and represent that it is their intent and desire to fully release all individuals, firms or corporations who could at any future date be possible defendants in any action arising out of any claims that could be asserted against such parties, subject to the limitations herein set forth. Further, nothing herein contained shall be deemed to waive any rights or claims of Tesoro or Harbor Fuel against any accounts receivable obligors, account debtors or other parties owing money or obligations to Harbor Fuel that are retained by Harbor Fuel or assigned to Tesoro under the terms of the Settlement and Conveyance Agreement. In addition, nothing herein contained shall be deemed to waive any rights or claims of Tesoro, Harbor Fuel or Olds against any third party potentially responsible parties

under applicable law with reference to any claims for environmental contamination of any of the properties covered by the Settlement and Conveyance Agreement.

9. <u>Capacity</u>. The parties to this Agreement state, allege, and aver that they are legally capable and have the full legal capacity to make and to execute this Settlement Agreement and Mutual Release. The parties to this Agreement warrant that they have the authority to execute this Agreement and have not assigned or transferred any claims that are within the scope of this Agreement to any third parties.

10. <u>No Reliance on Representations</u>. The parties to this Agreement acknowledge that no promise or inducement which is not herein expressed has been made, and in executing this Agreement are not relying on any statement or representation made by the other party or its representatives concerning the nature of any damages or legal liability therefor.

11. <u>Integration</u>. The parties to this Agreement hereby represent and warrant that they have had an opportunity to review this Agreement with their legal counsel and that they fully understand the terms of this Agreement. The parties to this Agreement are fully aware of the rule of construction that an agreement is more strictly construed against the draftsman, but agree that this rule shall not apply in any interpretation of this Agreement. As between the parties to this Agreement, this Agreement, the Settlement and Conveyance Agreement, the exhibits thereto and the Associated Agreements taken together represent an integration of and supersede all prior representations, understandings and agreements touching upon or in any way concerning the subject matter of this Agreement. The parties to this Agreement hereby release any right that they may now have or hereafter acquire to reform, rescind, modify, or set aside this Agreement for any mutual or unilateral mistake or otherwise. The risk of any such uncertainty or mistake is assumed by the parties to this Agreement in consideration of the mutual promises as set forth hereinabove for the purpose

Mutual Release Agreement

Page 5


Exhibit F
Page 5 of 8

TAC - 102023

of making a full and final compromise and settlement of any and all claims, disputed or otherwise, arising out of the matters released herein.

17. <u>Partial Invalidity</u>. Should any portion of this Agreement be determined by a court of law to be illegal, void or otherwise invalid, the remainder of the Agreement shall remain in full force and effect and shall continue to bind the parties to this Agreement. This Agreement is governed by the laws of the State of Alaska and any dispute arising hereunder shall be resolved in and by the United States District Court for the District of Alaska or the Superior Court for the State of Alaska, Third Judicial District.

18. <u>Counterparts</u>. This Agreement Release may be executed in any number of counterparts, each of which when so executed and delivered shall be an original; but such counterparts shall together constitute but one and the same instrument.

TESORO ALASKA COMPANY

Dated: April 23, 1999      By: [signature]

Title: PRESIDENT

HARBOR FUEL CO., INC.,

Dated: April 23, 1999      By: [signature]

Title: President

Dated: April 23, 1999      [signature]
Benjamin H. Olds

Mutual Release Agreement

Page 6

Exhibit F
Page 6 of 8

TAC - 102024

STATE OF ALASKA       } ss.
THIRD JUDICIAL DISTRICT }

      THIS IS TO CERTIFY that on the __23rd__ day of __April__, 1999, before me, the undersigned, a Notary Public in and for the State of Alaska, personally appeared Stephen M. Ricks, President of **TESORO ALASKA COMPANY**, known to me and to me known to be the individual named in and who executed the foregoing document, and he acknowledged to me that he was authorized by authority granted him in the Bylaws or by resolution of the Board of Directors of said corporation for the uses and purposes therein set forth.

      WITNESS my hand and notarial seal the day and year first hereinabove written.

[OFFICIAL SEAL — STATE OF ALASKA — D.J. WEBB — NOTARY PUBLIC]

NOTARY PUBLIC in and for Alaska
My Commission Expires: __1/22/2001__

STATE OF ALASKA       } ss.
THIRD JUDICIAL DISTRICT }

      THIS IS TO CERTIFY that on the 23rd day of __April__, 1999, before me, the undersigned, a Notary Public in and for the State of Alaska, personally appeared Benjamin H. Olds, President of **HARBOR FUEL CO., INC.**, known to me and to me known to be the individual named in and who executed the foregoing document, and he acknowledged to me that he was authorized by authority granted him in the Bylaws or by resolution of the Board of Directors of said corporation for the uses and purposes therein set forth.

      WITNESS my hand and notarial seal the day and year first hereinabove written.

[OFFICIAL SEAL — STATE OF ALASKA — D.J. WEBB — NOTARY PUBLIC]

NOTARY PUBLIC in and for Alaska
My Commission Expires: 1/22/2001

Exhibit F
Page 7 of 8

Mutual Release Agreement

TAC - 102025

STATE OF ALASKA

THIRD JUDICIAL DISTRICT

ss.

THIS IS TO CERTIFY that on the 23rd day of April, 1999, before me, the undersigned, a Notary Public in and for the State of Alaska, personally appeared **BENJAMIN H. OLDS**, known to me and to me known to be the individual named in and who executed the foregoing document, and he acknowledged to me that he signed and sealed the same as his free and voluntary act for the uses and purposes therein stated.

WITNESS my hand and notarial seal the day and year first hereinabove written.

101328

OFFICIAL SEAL
STATE OF ALASKA
D.J. WEBB
NOTARY PUBLIC

NOTARY PUBLIC in and for Alaska
My Commission Expires: 1/22/2001