## **MUTUAL HAZARDOUS MATERIALS INDEMNITY AGREEMENT**

THIS HAZARDOUS MATERIALS INDEMNITY AGREEMENT ("Agreement") is made as of April 23, 1999, by and between **Harbor Fuel Co., Inc.** ("Harbor Fuel"), and **Tesoro Alaska Company**, a Delaware corporation ("Tesoro").

### R E C I T A L S:

A. Harbor Fuel is the owner of the real property located in the Valdez Recording District, Third Judicial District, State of Alaska, located on the southwest corner of Meals Avenue Egan Drive in Valdez, Alaska 99501, as more particularly described in Exhibit "A" attached hereto and made a part hereof (said real property, together with all improvements now or hereafter located thereon (the "Improvements"), being herein collectively called the "Property").

B. Tesoro is prepared to make, and Harbor Fuel and Olds will accept, a loan in the amount of FIVE HUNDRED SEVENTY THOUSAND NINE HUNDRED FOURTEEN DOLLARS AND 92/100THS DOLLARS ($570,914.92) (the "Loan") secured by, among other things, a deed of trust from Harbor Fuel for the benefit of Tesoro which will encumber the Property (said deed of trust, together with all supplements, amendments, modifications and consolidations thereof being herein collectively called the "Deed of Trust").

C. Harbor Fuel formerly leased the Property from Tesoro pursuant to a certain Distributor Lease Agreement dated May 31, 1995 ("Distributor Lease Agreement Date") by and between Harbor Fuel as lessee and Tesoro as lessor.

D. Harbor Fuel, Benjamin H. Olds ("Olds"), and Tesoro have entered into a certain Settlement and Conveyance Agreement dated April 23, 1999 ("Settlement and Conveyance Agreement") pursuant to which Tesoro has conveyed the Property to Harbor Fuel, subject, however, to the terms of the Loan and the Deed of Trust.

E. As a condition to making the Loan, Tesoro requires Harbor Fuel to provide certain indemnities concerning existing and future Hazardous Materials.

F. As a condition of entering into the Settlement and Conveyance Agreement and the Loan, and in light of the fact that Tesoro owned the Property prior to its conveyance to Harbor Fuel, Harbor Fuel and Olds require that Tesoro provide Harbor Fuel and Olds certain indemnities concerning existing and future Hazardous Materials.

G. Tesoro has provided Harbor Fuel and Olds with a certain Phase I Environmental Site Assessment dated March 10, 1999 covering the Property prepared

by Gilfilian Engineering & Environmental Testing, Inc. of Anchorage, Alaska ("Phase I Assessment").

I. There exists on the Property: (1) certain soil and ground water contamination from Hazardous Materials associated with the former underground storage tank piping and dispenser system which occurred prior to the Distributor Lease Agreement Date ("Pre-existing Known Contamination"). It is unknown whether any other soil and/or ground water contamination from Hazardous Materials existed on the property (Pre-existing Unknown Contamination) prior to the Distribution Lease Agreement dated May 31, 1995. The term "Pre-existing Contamination" shall be deemed to include either or both of Pre-existing Unknown Contamination and Pre-Existing Known Contamination. Further ground water monitoring and periodic environmental work plans with respect to the Property have been or are being proposed by Tesoro and approved by the State of Alaska, Department of Environmental Conservation ("environmental work plans") to address the Pre-existing Known Contamination.

NOW, THEREFORE, in consideration of the promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Harbor Fuel, Olds and Tesoro hereby agree as follows:

1. <u>INCORPORATION OF RECITALS</u>: The recitals of this Agreement are incorporated herein and constitute a part hereof.

2. <u>DEFINITIONS</u>:

2.1 As used herein, the term "Hazardous Materials" shall include, but not be limited to, any substance, chemical, material or waste, (A) the presence of which causes or threatens to cause a nuisance or trespass of any kind; or (B) which is or becomes regulated by any local governmental authority, the State of Alaska, or the United States of America, because of its toxic, flammable, corrosive, reactive, carcinogenic, mutagenic, infectious, radioactive, or other hazardous property, or because of its effect on the environment, natural resources or human health and safety; or (C) which is now or hereafter defined or listed as "hazardous substances," "hazardous materials," "toxic substances," "toxic or hazardous substances," "oil," "petroleum," "carcinogen," "pollutant," "contaminant," "asbestos," "asbestos containing materials, " "asbestos materials" or "waste," in any federal, state or local laws, rules or regulations (whether now existing or hereafter enacted or promulgated) including, without limitation, the Federal Water Pollution Control Act (33 U.S.C. §§ 1251, et seq.), Hazardous Materials Transportation Act (49 U.S.C. §§ 1801, et seq.), Resource Conservation and Recovery Act (42 U.S.C. §§ 6901, et seq.), Safe Drinking Water Act (42 U.S.C. §§ 3000(f), et seq.), Toxic Substances Control Act (15 U.S.C §§ 2601, et seq., Clean Air Act (42 U.S.C. §§ 7401, et seq.), Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. §§ 9601, et seq.), United States Department of Transportation Hazardous Materials Table (49 CFR 172.101),

Mutual Hazardous Materials Indemnity Agreement    2

TAC - 102028

Exhibit I
Page 2 of 12

Environmental Conservation, Alaska Stat. § 46.03.010 et seq., Water Pollution Control and Waste Disposal, Alaska Stat. § 46.03.050 et seq., Underground Storage Tank Systems, Alaska Stat. § 46.03.360 et seq., Oil and Hazardous Substance Pollution Control, Alaska Stat. § 46.04.010 et seq., Oil and Hazardous Substance Releases, AS 46.08.005 et seq., Hazardous Substance Release Control, Alaska Stat. § 46.09.010 et seq., and Prohibited Acts and Penalties, Alaska Stat. § 46.03.710 et seq., all as heretofore and hereafter amended, or any judicial or administrative interpretation of such laws, rules or regulations.

2.2    As used in this Agreement, the term "release" shall mean any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping or disposing into the environment, including, without limitation, migration or continuing migration into, onto, or through air, soil, surface water, or groundwater.

3.    REPRESENTATIONS AND COVENANTS: Harbor Fuel and Olds represent and warrant that there are no Hazardous Materials being generated, stored or otherwise used or held on, under or about the Property, or being transported to, from or across the Property, by Harbor Fuel or Olds or any other person, and Harbor Fuel and Olds shall at no time permit the same, except for "Permitted Materials" as hereinafter defined. As used in this Agreement, the term "laws" includes, without limitation, (a) any federal, state or local statute, code, ordinance, regulation or guideline, (b) any decree, permit, order, consent or directive issued by any court or governmental authority, and (c) the common law of the State of Alaska and of any other applicable jurisdiction; and the term "Permitted Materials" shall mean (i) reasonable amounts of gasoline, and oil or other vehicle lubricants lawfully stored in the vehicles and equipment used on the Property, (ii) reasonable amounts of fertilizers, herbicides and/or pesticides, and ordinary, everyday painting and cleaning supplies lawfully used only in the ordinary course of completing and maintaining the buildings, landscaping and improvements on the Property, (iii) standard building components and materials which are properly and lawfully installed in or incorporated into the Improvements and may lawfully remain therein in accordance with the laws, rules and regulations referred to in Recital E above ("Applicable Laws"), taking into account the nature, purpose and intended use and occupancy thereof; and (iv) gasoline, diesel fuel, motor oil, propane and lubricants stored on the Property for sale and strictly in accordance with all Applicable Laws; provided that in all cases all such components, materials, substances and other items referred to in clauses (i) through (iv), above, are so stored, transported, used, installed, incorporated and disposed of, in accordance with all Applicable Laws, and are not released into the environment.

4.    HARBOR FUEL AND OLDS' DUTIES: Harbor Fuel covenants and agrees:

4.1    In the event that any Hazardous Materials, except for (a) Permitted Materials, or (b) Pre-existing Contamination existing on the Property as of the

Mutual Hazardous Materials Indemnity Agreement    3

TAC - 102029

Exhibit L
Page 3 of 12

Distributor Lease Agreement Date, are hereafter found or otherwise exist on, under or about the Property, to take all necessary and appropriate actions and to spend all necessary sums to cause the same to be cleaned up and immediately removed (and Tesoro shall in no event be liable or responsible for any costs or expenses incurred in so doing).

4.2     At all times to observe, satisfy the requirements of, and maintain the Property in strict compliance with, all Applicable Laws.

4.3     In connection with Section 4.1 above, to comply with the terms of any and all orders of federal, state or local governmental agencies with respect to such cleanup, remediation, or other response action (except to the extent Tesoro has agreed pursuant to Section 5.2 below to indemnify and hold Harbor Fuel and Olds harmless of and from liability for Pre-existing Contamination.

4.4     To take all reasonable and due precautions to prevent the occurrence of a release of Hazardous Materials into or through soil, surface water or groundwater in all operations and activities of Harbor Fuel, its agents, independent contractors, employees, tenants and invitees, and to take reasonable actions to protect the Property against any unauthorized entry by other parties or the occurrence of any such releases by unauthorized means.

4.5     To promptly notify Tesoro of the occurrence of a release or threat of a release of Hazardous Materials on the Property, or of the discovery of any such release or threat, provided that such notification will not create any obligation on the part of Tesoro to take any action with respect to the release, or threat of a release.

5.      **INDEMNITY:**

5.1     Harbor Fuel covenants and agrees, at its sole cost and expense, to indemnify, protect, defend, hold and save Tesoro harmless against and from (and forever release Tesoro of and from) any and all damages, losses, liabilities, obligations, penalties, fines, claims, punitive damages or expenses, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including, without limitation, attorneys' and experts' fees and disbursements) which may at any time be imposed upon, incurred by or asserted or awarded against Tesoro and arising from or out of or in any way connected with:

(a)     Except  as provided in Section 5.2 below, any release, use, generation, storage, or disposal of any Hazardous Materials by or on behalf of Harbor Fuel, its officers, directors, employees, contractors or agents, on, in, under or affecting all or any portion of the Property or any surrounding areas or surrounding properties that occurred after the Distributor Lease Agreement Date or that occurs in the future;

(b) Except as provided in Section 5.2 below, any violation or alleged violation of any Applicable Laws related to the use, generation, discharge, release, storage, disposal or transportation of Hazardous Materials by or on behalf of Harbor Fuel, its officers, directors, employees, contractors, or agents, on, in, under or affecting all or any portion of the Property or surrounding areas or surrounding properties, or the transportation of any such Hazardous Materials by or on behalf of Harbor Fuel, its officers, directors, employees, contractors, or agents to or from the Property or surrounding areas or properties that occurred after the Distributor Lease Agreement Date or that occurs in the future;

(c) The breach of this Agreement by Harbor Fuel, the enforcement of this Agreement by Tesoro, or the assertion by Harbor Fuel of any defense to its obligations hereunder; or

(d) The falsehood or incorrectness of any of the representations made by Harbor Fuel herein.

5.2 Subject to the provisions of Section 5.4 below, Tesoro covenants and agrees, at its sole cost and expense, to indemnify, protect, defend, hold and save Harbor Fuel harmless against and from (and forever releases Harbor Fuel of and from) any and all damages, losses, liabilities, obligations, penalties, fines, claims, punitive damages or expenses, litigation, demands, defenses, judgments, suits, proceedings, costs, disbursements or expenses of any kind or of any nature whatsoever (including, without limitation, attorneys' and experts' fees and disbursements) which may at any time be imposed upon, incurred by or asserted or awarded against Harbor Fuel and arising from or out of or in any way connected with:

(a) Any Pre-existing Contamination including but not limited to any presence, release, use, generation, storage, or disposal of any Hazardous Materials on, in under or affecting all or any portion of the Property or any surrounding areas or surrounding properties that occurred prior to the Distributor Lease Agreement Date;

(b) Any violation or alleged violation of any Applicable Laws related to the use, generation, discharge, release, storage, disposal or transportation of Hazardous Materials on, in, under or affecting all or any portion of the Property or surrounding areas or surrounding properties, or the transportation of any such Hazardous Materials to or from the Property or surrounding areas or properties that occurred prior to the Distributor Lease Agreement Date;

(c) Any obligation to propound or perform any existing or future environmental work plan with respect to the Property; or

(d) The breach of this Agreement by Tesoro, the enforcement of this Agreement by Harbor Fuel, or the assertion by Tesoro of any defense to its obligations hereunder.

5.3 Subject to the provisions of Section 5.4 below, in all such cases 5.1(a) through (d) and 5.2 (a) through (d) above, the indemnity and defense obligation set forth above shall apply whether or not any of such matters arise before or after foreclosure of the Deed of Trust or other taking of title to all or any portion of the Property by Tesoro, and shall include, without limitation of the general scope of the indemnity and defense obligation set forth above:

(a) Costs incurred in cleanup, removal, remediation or other response action with respect to any and all Hazardous Materials from all or any portion of the Property or any surrounding areas or surrounding properties;

(b) Costs incurred to take necessary precautions to protect against the release of Hazardous Materials on, in, under or affecting the Property into the air, any body of water, any other public domain, or any surrounding areas or surrounding properties;

(c) Costs incurred to comply, in connection with all or any portion of the Property or any surrounding areas or surrounding properties, with all Applicable Laws; and

(d) Costs or damages (including any punitive damages) arising from or out of any claim, action, suit or proceeding for personal injury (including, without limitation, sickness, emotional distress, disease or death), tangible or intangible property damage, compensation for lost wages, business income, profits, or other economic loss, damage to the natural resources or the environment, nuisance, pollution, contamination, leak, spill, release or other adverse effect on the environment.

Except as provided in Section 5.4 below, the rights of any party indemnified under this Agreement shall be in addition to all rights of such party under any Applicable Laws and under the Deed of Trust and any other documents or instruments evidencing, securing or relating to the Loan (the Deed of Trust and such other documents or instruments, as amended, modified, extended, renewed or replaced from time to time, being herein collectively called the "Loan Documents"), and payments by Harbor Fuel or Olds under this Agreement shall not reduce the obligations and liabilities of Harbor Fuel or Olds or any guarantor of the Loan under any of the Loan Documents.

5.4 Notwithstanding any provision of this Agreement, the obligations of Tesoro under this Agreement and Tesoro's obligations to Harbor Fuel and Olds, if any, under any Applicable Laws to environmentally remediate the Property, are expressly limited as follows:

(a) All of Tesoro's obligations to Harbor Fuel or Olds hereunder with respect to the Property shall terminate and shall be of no further force and effect upon the receipt by Tesoro from the State of Alaska Department of Environmental Conservation of a no further action letter in a form reasonably acceptable to Tesoro and Harbor Fuel ("no further action letter") to the effect that no further environmental remediation of any Pre-existing Contamination of the Property is or shall be required in order to own or operate the Property or Other Properties with respect to (1) the Property, as a service station selling petroleum products including, without limitation, gasoline, diesel or propane. The parties expressly agree that Tesoro shall not be obligated to environmentally remediate any Pre-existing Contamination of the Property so as to allow the Property to be used for a purpose other than such a service station, including but not limited to any purpose that might require a more rigorous level of remediation then is required to operate the Property as a service station. In the event that any such no further action letter with respect to the Property is issued but thereafter revoked by the Department of Environmental Conservation based upon the discovery of unremediated Pre-existing Contamination, then in such an event, Tesoro's obligations hereunder shall continue until a subsequent no further action letter reasonably acceptable to Tesoro and Harbor Fuel with respect to such Pre-existing Contamination is received by Tesoro.

(b) The Phase I Assessment notes the existence of a car wash facility on the Property and raises the possibility that Harbor Fuel or Olds, or their successors, might be required in the future by the Department of Environmental Conservation or the City of Valdez to install a water treatment or recycling system. Nothing herein contained shall be construed to obligate Tesoro to construct or install any such water treatment or recycling system on the Property for purposes of the car wash.

(c) The indemnity provisions undertaken by Tesoro and Harbor Fuel under this Agreement inure solely to the benefit of Harbor Fuel and Tesoro respectively and shall not extend to or inure to the benefit of any purchaser or subsequent owner or lessee of the Property, or to any successor or assign of Harbor Fuel or Tesoro.

(d) Harbor Fuel and Tesoro shall reasonably cooperate with the other and Harbor Fuel shall grant Tesoro reasonable access to the Property for the purpose of allowing Tesoro and its agents to discharge Tesoro's obligations hereunder including but not limited to formulating and performing appropriate environmental work plans.

6. DEFAULT: Should any party giving indemnification hereunder at any time default in or fail to perform or observe any of its obligations or agreements under this Agreement, the party indemnified hereunder shall have the right, but not the duty, without limitation upon any of such party's rights pursuant to this Agreement, to perform the same, and the party giving indemnification hereunder agrees to pay to the

Mutual Hazardous Materials Indemnity Agreement    7

party indemnified hereunder, on demand, all costs and expenses incurred by the party indemnified hereunder in connection therewith, including, without limitation, all attorneys' fees, together with interest from the date of expenditure at the rate of interest specified in that certain Promissory Note ("Promissory Note") of even date herewith executed by Harbor Fuel in favor of Tesoro evidencing the Loan.

The party giving indemnification hereunder hereby indemnifies the party indemnified hereunder and agrees to protect, defend and hold the party indemnified hereunder harmless from and against any loss incurred by or liability imposed on the party indemnified hereunder by reason of (x) the party giving indemnity's failure to perform or observe any of its obligations or agreements under this Agreement, or (y) any of its representations under this Agreement having been incorrect, including, without limitation, any and all attorneys' fees and costs incurred in connection therewith.

7. **NO IMPAIRMENT**: The rights and obligations of Harbor Fuel and of Tesoro under this Agreement and the laws and regulations referenced above shall in no way be limited or impaired by, and Harbor Fuel and Tesoro hereby consent to and agree to be bound by, any amendment or modification of the provisions of the Loan Documents. In addition, the rights and obligations of Harbor Fuel and Tesoro under this Agreement and Applicable Laws shall in no way be limited or impaired by:

7.1 Any extensions of time for performance required by any of the Loan Documents;

7.2 Any sale, assignment or foreclosure of the Deed of Trust or other Loan Documents or any sale or transfer of all or part of the Property;

7.3 Any provisions in any of the Loan Documents limiting Tesoro's recourse with respect to any person or entity (including, without limitation, Harbor Fuel or Olds) otherwise liable to Tesoro;

7.4 The accuracy or inaccuracy of the representations and warranties made by Harbor Fuel or Olds under any of the Loan Documents;

7.5 The release of Harbor Fuel or Olds or any other person from performance or observance of any of the agreements, covenants, terms, or conditions contained in any of the Loan Documents by operation of law, Tesoro's voluntary act, or otherwise;

7.6 The release or substitution in whole or in part of any security for the repayment of the Loan; or

7.7 The repayment of the Loan, the reconveyance of the Deed of Trust and the termination of any other Loan Documents; and in such case, whether with or without notice to Harbor Fuel or Olds and with or without consideration.

Notwithstanding anything contained herein or in any other document or agreement which may be construed to the contrary, the performance of Harbor Fuel's obligations under this Agreement and the laws and regulations referenced above shall not be secured by the Deed of Trust or any other Loan Documents, or be subject to AS 34.20.100 or any other anti-deficiency laws, one-action laws, or laws requiring a secured lender to exhaust remedies against security prior to recovering a deficiency.

8. **WAIVERS:** Harbor Fuel waive any right or claim of right to cause a marshaling of either such party's assets or to cause Tesoro to proceed against any of the security for the Loan before proceeding under this Agreement against Harbor Fuel, Harbor Fuel having agreed that any payments required to be made hereunder shall become due on demand; and Harbor Fuel expressly waives and relinquish all rights and remedies (including any rights of subrogation) accorded by applicable law to Harbor Fuel until all amounts due to Tesoro under the Loan Documents or this agreement are satisfied. Without limiting the foregoing, Harbor Fuel acknowledges, in accordance with AS 34.20.160(b), that Harbor Fuel is personally obligated and fully liable for the amount due under the Promissory Note and under this Agreement. Tesoro has the right to sue on the Promissory Note or this Agreement and obtain a personal judgment against the Harbor Fuel for satisfaction of the amount due under the Promissory Note or this Agreement, or both, either before or after a judicial foreclosure of the Deed of Trust under AS 09.45.170-09.45.220. Further, Olds has personally guaranteed all of Harbor Fuel's obligations under the Promissory Note.

9. **DELAY:** No delay on Tesoro's part in exercising any right, power or privilege under any of the Loan Documents shall operate as a waiver of any such privilege, power or right.

10. **RELEASES:** Harbor Fuel or Olds, or any other party liable upon or in respect of this Agreement or the Loan, or under applicable law, may be relieved of such liability by Tesoro without affecting the liability of any party not so released.

11. **COUNTERPARTS:** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original.

12. **NOTICES:** All notices or requests required or permitted under this Agreement shall be in writing; shall be personally delivered or sent by certified mail, return receipt requested, postage prepaid; shall be deemed given when so delivered or mailed, irrespective of whether such notice or request is actually received by the addressee, and shall be sent to the parties at the addresses set forth below:

If to Harbor Fuel:
P.O. Box 336
Valdez, AK 99686
Fax: 907-835-5328

If to Tesoro:
Tesoro Alaska Company
3230 C Street
Anchorage, AK 99503
Fax: 907-561-6085

Either party may change the address to which notices shall be sent by notice to the other party.

13. AMENDMENT: No provision of this Agreement may be changed, waived, discharged or terminated orally, by telephone or by any other means except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

14. SURVIVAL: It is expressly intended that this Agreement survive the payment and satisfaction of the Loan, the foreclosure of the Deed of Trust (whether judicially or by exercise of the power of sale), or any deed in lieu or other acquisition of the Property or any other portion thereof by Tesoro.

15. GOVERNING LAW; VENUE: This Agreement shall be interpreted under Alaska law. Jurisdiction and venue shall be appropriate in any state court within the Third Judicial District of the State of Alaska at Anchorage, or the federal courts located in the District of Alaska, at Tesoro's election. Harbor Fuel waives any right Harbor Fuel may have to assert the doctrine of forum nonconveniens or to object to such venue and hereby consents to any court-ordered relief.

16. JOINT AND SEVERAL: The obligations herein are joint and several on the part of all persons executing this Agreement as parties giving indemnification hereunder.

IN WITNESS WHEREOF, Harbor Fuel, and Tesoro have caused this Agreement to be executed as of the date first written above.

HARBOR FUEL CO., INC., also doing business as Wolverine Gas and Oil

DATED: April 23, 1999

By: _____
Its: _____

Mutual Hazardous Materials Indemnity Agreement       10

TAC - 102036

Exhibit I
Page 10 of 12

TESORO ALASKA COMPANY

By: *[signature]*
Title: PRESIDENT

94647.02

## EXHIBIT "A"

## LEGAL DESCRIPTION OF PROPERTY

The Land referred to is described as follows:

Lot 1A, Block 33, Mineral Creek Subdivision, South Portion according to the official plat thereof, filed under Plat Number 93-10, Records of the Valdez Recording District, Third Judicial District, State of Alaska.